1                                  The Honorable Ronald B. Leighton

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

HIDDEN HILLS MANAGEMENT, LLC,      No. 3:17-cv-06048-RBL

10

                 Plaintiff,            DEFENDANT'S ANSWER TO
COMPLAINT FOR DECLARATORY
JUDGMENT & INJUNCTIVE RELIEF

11

     v.                          AND COUNTERCLAIMS

12

AMTAX HOLDINGS 114, LLC,

13

                 Defendant.

14

AMTAX HOLDINGS 114, LLC,

15

16

                 Counter-Plaintiff,

17

     v.

18

HIDDEN HILLS MANAGEMENT, LLC,

19

20

                 Counter-Defendant.

21

22

      Pursuant to Rules 8(b) and 81(c)(2) of the Federal Rules of Civil Procedure, Defendant

23

AMTAX Holdings 114, LLC ("AMTAX") hereby answers the Complaint For Declaratory

24

Judgment & Injunctive Relief filed by Plaintiff Hidden Hills Management, LLC ("HHM") on

25

November 14, 2017 in the Superior Court of the State of Washington for Pierce County, and

26

ANSWER AND COUNTERCLAIMS – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1  removed by AMTAX to this Court on December 14, 2017 (the "Complaint").  By this pleading,

2  AMTAX also asserts counterclaims against HHM as set forth below.

3  ## ANSWER TO COMPLAINT

4  1.  AMTAX admits the allegations in the first sentence of Paragraph 1.  Responding

5  to the second sentence of Paragraph 1, AMTAX states that the purpose of Hidden Hills 2001, a

6  Washington Limited Partnership (the "Partnership"), is described in Section 2.3 of the limited

7  partnership agreement governing the Partnership (the "LPA"), and AMTAX denies any

8  characterization of the purpose of the Partnership that is inconsistent with Section 2.3 of the

9  LPA.

10  2.  Responding to Paragraph 2, AMTAX admits that HHM is a Washington limited

11  liability company with its principal place of business in Mercer Island Washington, and that,

12  prior to its removal on November 30, 2017, HHM was the Administrative General Partner of the

13  Partnership.  Except as expressly admitted herein, AMTAX denies each and every allegation

14  contained in Paragraph 2.

15  3.  Responding to Paragraph 3, AMTAX admits that it is an Ohio limited liability

16  company, and that it is the Partnership's Investor Limited Partner.  Except as expressly admitted

17  herein, AMTAX denies each and every allegation contained in Paragraph 3.

18  4.  AMTAX denies the allegations in Paragraph 4, and states that the Partnership's

19  current Special Limited Partner is non-party Tax Credit Holdings III, LLC.

20  5.  AMTAX admits the allegations in Paragraph 5.

21  6.  Paragraph 6 contains legal conclusions and argument to which no response is

22  required, particularly in light of AMTAX's removal to this Court of the action initiated by the

23  Complaint.  To the extent that Paragraph 6 contains factual allegations to which a response is

24  required, AMTAX admits such allegations.

25  7.  Paragraph 7 contains legal conclusions and argument to which no response is

26  required, particularly in light of AMTAX's removal to this Court of the action initiated by the

ANSWER AND COUNTERCLAIMS – 2

1   Complaint.  To the extent that Paragraph 7 contains factual allegations to which a response is

2   required, AMTAX admits such allegations.

3          8.      Paragraph 8 contains legal conclusions and argument to which no response is

4   required, particularly in light of AMTAX's removal to this Court of the action initiated by the

5   Complaint.  To the extent that Paragraph 8 contains factual allegations to which a response is

6   required, AMTAX admits such allegations.

7          9.      AMTAX denies the allegations in the first sentence of Paragraph 9, and further

8   responds that, as explained in detail in AMTAX's counterclaims, HHM improperly seeks by its

9   Complaint to compel AMTAX to sell its interest in the Partnership at a price that is substantially

10  lower than the price HHM would have to pay if it properly exercised its "Option" under Section

11  7.4.J of the LPA.  Responding to the second sentence of Paragraph 9, AMTAX states that

12  Section 7.4.J of the LPA speaks for itself, and denies any characterization inconsistent with its

13  terms.

14         10.     Responding to the first and third sentences of Paragraph 10, AMTAX states that

15  Section 7.4.J of the LPA speaks for itself, and denies any characterization inconsistent with its

16  terms.  AMTAX admits the allegations in the second sentence of Paragraph 10.

17         11.      Responding to the first sentence of Paragraph 11, AMTAX states that Section

18  7.4.J of the LPA speaks for itself, and denies any characterization inconsistent with its terms.

19  Responding to the second sentence of Paragraph 11, AMTAX admits that it received a letter

20  dated March 14, 2017 that purported to notify AMTAX that HHM was exercising its "Option" as

21  provided in Section 7.4.J of the LPA.  Except as expressly admitted herein, AMTAX denies each

22  and every allegation contained in Paragraph 11.

23         12.     Responding to Paragraph 12, AMTAX states that Section 7.4.J of the LPA speaks

24  for itself, and denies any characterization inconsistent with its terms.

25         13.     Responding to the first sentence of Paragraph 13, AMTAX states that Section

26  7.4.J of the LPA speaks for itself, and denies any characterization inconsistent with its terms.

ANSWER AND COUNTERCLAIMS – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   AMTAX admits in response to the remainder of Paragraph 13 that the Hidden Hills Apartment

2   Complex is located in University Place, Washington, but otherwise lacks sufficient knowledge or

3   information to form a belief concerning the truth of any factual allegations contained therein, and

4   on that basis denies such allegations.

5          14.     AMTAX denies the allegations in the first sentence of Paragraph 14.  AMTAX

6   lacks sufficient knowledge or information to form a belief concerning the truth of any factual

7   allegations contained in the remainder of Paragraph 14, and on that basis denies such allegations.

8          15.     AMTAX denies the allegations in Paragraph 15.

9          16.     AMTAX admits the allegations in Paragraph 16.

10         17.     Responding to Paragraph 17, AMTAX admits that CBRE's report dated June 7,

11  2017 valued the Hidden Hills Apartment Complex at $14,050,000, but lacks sufficient

12  knowledge or information to form a belief concerning the basis for CBRE's valuation, which

13  was more than seven million dollars lower than the valuation CBRE provided in a broker's

14  opinion of value ("BOV") that HHM commissioned but subsequently hid from both AMTAX

15  and its own appraiser at CBRE.  Except as expressly admitted herein, AMTAX denies each and

16  every allegation contained in Paragraph 17.

17         18.     AMTAX admits the allegations in Paragraph 18.

18         19.     Responding to the first sentence of Paragraph 19, AMTAX admits that HHM

19  improperly attempted to influence what was supposed to be an independent appraisal process by

20  distracting the appraisers with irrelevant information that purportedly related to environmental

21  contamination, and by hiding material information, including a BOV that CBRE provided at

22  HHM's request, which provided an opinion of the value of the Hidden Hills Apartment Complex

23  that, at its midpoint, was $7,250,000 million (52%) higher than the $14,050,000 value reflected

24  in the CBRE appraisal.  Responding to the second sentence of Paragraph 19, AMTAX admits

25  that it objected to and attempted to prevent HHM's improper efforts to depress the appraised

26  value of the property (and, by extension, the price HHM would have to pay to purchase

ANSWER AND COUNTERCLAIMS – 4

1    AMTAX's interest in the Partnership).  Except as expressly admitted herein, AMTAX denies

2    each and every allegation contained in Paragraph 19.

3            20.     AMTAX denies the allegations in Paragraph 20.

4            21.     AMTAX denies the allegations in Paragraph 21.

5            22.     Responding to Paragraph 22, AMTAX admits that Cushman & Wakefield issued

6    an appraisal report on May 5, 2017 in which it concluded that the value of the Hidden Hills

7    Apartment Complex as of April 28, 2017 was $19,700,000.  Except as expressly admitted herein,

8    AMTAX denies each and every allegation contained in Paragraph 22.

9            23.     AMTAX lacks sufficient knowledge or information to form a belief concerning

10   the truth of any factual allegations contained in Paragraph 23, and on that basis denies them.

11           24.     AMTAX admits the allegations in the first sentence of Paragraph 24.  AMTAX

12   denies the allegations in the second sentence of Paragraph 24.

13           25.     Responding to Paragraph 25, AMTAX admits that HHM provided Colliers

14   International ("Colliers") with certain environmental information, including estimated

15   remediation costs, but denies that the information was accurate or material to a determination of

16   the fair market value of the Hidden Hills Apartment Complex.  Except as expressly admitted

17   herein, AMTAX denies each and every allegation contained in Paragraph 25.

18           26.     Responding to Paragraph 26, AMTAX admits that Colliers issued its appraisal

19   report on or about October 23, 2017.  Except as expressly admitted herein, AMTAX denies each

20   and every allegation contained in Paragraph 26.

21           27.     Responding to Paragraph 27, AMTAX admits that the October 23, 2017 Colliers

22   appraisal report valued the Hidden Hills Apartment Complex at $13,500,000, and purported in

23   reaching that value conclusion to make an "extraordinary assumption" about hypothetical

24   environmental remediation costs totaling more than $3.7 million.  Except as expressly admitted

25   herein, AMTAX denies each and every allegation contained in Paragraph 27.

26

ANSWER AND COUNTERCLAIMS – 5

28.     Responding to Paragraph 28, AMTAX states that Section 7.4.J of the LPA speaks for itself, and denies any characterization inconsistent with its terms.

29.     AMTAX denies the allegations in Paragraph 29.

30.     Responding to Paragraph 30, AMTAX admits that its counsel sent a letter to HHM's counsel on November 3, 2017.  AMTAX states further that the November 3, 2017 letter speaks for itself, and denies any characterization inconsistent with its contents.  Except as expressly admitted herein, AMTAX denies each and every allegation contained in Paragraph 30.

31.     Responding to Paragraph 31, AMTAX admits that HHM has falsely claimed in this action that it is entitled to purchase AMTAX's interest in the Partnership for $531,748.00, but otherwise lacks sufficient knowledge or information to form a belief concerning the truth of any factual allegations contained therein, and on that basis denies such allegations.

32.     AMTAX denies the allegations in Paragraph 32.

33.     AMTAX repeat and incorporate by reference each and every response set forth above.

34.     Paragraph 34 contains legal conclusions and argument to which no response is required.  To the extent that Paragraph 34 contains factual allegations to which a response is required, AMTAX admits such allegations.

35.     Paragraph 35 contains legal conclusions and argument to which no response is required.  To the extent that Paragraph 35 contains factual allegations to which a response is required, AMTAX admits such allegations.

36.     Paragraph 36 is a characterization of HHM's claims and requested relief, to which no response is required.

37.     Paragraph 37 contains legal conclusions and argument to which no response is required.  To the extent that Paragraph 37 contains factual allegations to which a response is required, AMTAX admits such allegations.

ANSWER AND COUNTERCLAIMS – 6

38.     No response is required to the remainder of the Complaint, which sets forth HHM's prayer for relief.  To the extent the remainder of the Complaint contains factual allegations to which a response is required, AMTAX denies each and every such allegation.

## DEFENSES

AMTAX pleads the following separate and distinct defenses without conceding that they bear the burden of proof as to any of these issues.  AMTAX reserves the right to assert additional defenses that discovery indicates are proper.

### FIRST DEFENSE

### (Failure to State a Claim)

1.     HHM's Complaint, and each cause of action alleged therein, fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

### (Claim Barred by Contractual Terms)

2.     HHM's Complaint, and each cause of action alleged therein, is barred, released, waived, or otherwise precluded by the terms of the limited partnership agreement alleged in the Complaint.

### THIRD DEFENSE

### (Estoppel)

3.     HHM's Complaint, and each cause of action alleged therein, is barred in whole or in part by the doctrine of estoppel.

### FOURTH DEFENSE

### (Unclean Hands)

4.     HHM's Complaint, and each cause of action alleged therein, is barred in whole or in part by the doctrine of unclean hands.

ANSWER AND COUNTERCLAIMS – 7

1

**FIFTH DEFENSE**

2

**(Waiver)**

3      5.      HHM's Complaint, and each cause of action alleged therein, is barred in whole or

4  in part by the doctrine of waiver.

5

**SIXTH DEFENSE**

6

**(Prior Breach)**

7      6.      HHM's Complaint, and each cause of action alleged therein, is barred by reason

8  of prior breaches of the limited partnership agreement upon which HHM bases the Complaint.

9      WHEREFORE, having fully answered the allegations in HHM's Complaint, AMTAX

10  requests that the Court enter an order dismissing the Complaint with prejudice and in its entirety,

11  and awarding AMTAX all permissible costs and expenses, as well as such other relief the Court

12  deems just and proper.

13

**COUNTERCLAIMS**

14      For its Counterclaims against Plaintiff Hidden Hills Management, LLC ("HHM"), AMTAX

15  Holdings 114, LLC ("AMTAX") hereby states and alleges the following:

16

**INTRODUCTION**

17      1.      AMTAX is the Investor Limited Partner of Hidden Hills 2001, L.P., a low-income

18  housing tax credit ("LIHTC") limited partnership (the "Partnership") formed exclusively to

19  develop, own, operate, and ultimately dispose of an affordable housing development in

20  University Place, Washington (the "Hidden Hills Apartment Complex").  The Partnership is

21  governed by an Amended and Restated Agreement of Limited Partnership (the "LPA"), which is

22  attached hereto as Exhibit A.  Until November 30, 2017, HHM was a General Partner of the

23  Partnership.

24      2.      AMTAX brings these counterclaims in response to an action HHM initiated on

25  November 14, 2017 that seeks to compel AMTAX to sell its interest in the Partnership at a price

26  that is millions of dollars less than fair market value.  As explained below, HHM's lawsuit is the

ANSWER AND COUNTERCLAIMS – 8

1  culmination of a scheme to improperly influence and, ultimately, to ignore the independent

2  appraisal process that the LPA required the parties to follow in calculating the price HHM must

3  pay to buy AMTAX out of the Partnership.

4        3.     HHM's efforts to artificially depress the appraised value of the Hidden Hills

5  Apartment Complex were undertaken specifically to enrich HHM at the expense of AMTAX and

6  the Partnership, and constituted material breaches of HHM's contractual and fiduciary duties as a

7  General Partner of the Partnership.

8        4.     On the basis of this and other misconduct, on November 30, 2017, AMTAX

9  exercised its right under Section 4.5(A)(iv)(2) of the LPA to remove HHM as a General Partner

10  of the Partnership and designate its affiliate, Saugatuck, LLC, as a replacement General Partner.

11  Although this notice is self-effectuating under the terms of the LPA, AMTAX has not taken any

12  non-judicial action to enforce its removal rights, but instead seeks by these counterclaims, *inter*

13  *alia*, to enforce those rights.  Attached hereto as Exhibit B is AMTAX's November 30, 2017

14  removal notice.

15        5.     On December 14, 2017, AMTAX removed the action that HHM had initiated to

16  this Court.  AMTAX hereby asserts counterclaims for breach of contract and breach of fiduciary

17  duty, and for declaratory relief rejecting HHM's claim and enforcing AMTAX's removal rights

18  under the LPA.

19  **PARTIES**

20        6.     Defendant and Counter-Plaintiff AMTAX, a limited liability company

21  incorporated in Ohio, is the Partnership's Investor Limited Partner.  AMTAX's non-managing

22  member is AMTAX Holdings Corporate Fund (DEL) IV, LLC ("AMTAX Fund"), a limited

23  liability company incorporated in Delaware.  The non-managing member of AMTAX Fund, in

24  turn, is GMACCH Guaranteed TCF IV, LLC ("GMACCH"), a limited liability company

25  incorporated in Delaware.

26

ANSWER AND COUNTERCLAIMS – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

7.     Tax Credit Holdings III, LLC ("TCH"), a limited liability company incorporated in Delaware, is the Partnership's Special Limited Partner.  TCH, a non-party to this lawsuit, is the non-member manager of AMTAX, the managing member of AMTAX Fund, and the sole member of GMACCH.  TCH's sole member is Alden Pacific Holdings, LLC ("Alden Pacific"), a limited liability company incorporated in Delaware.  Alden Pacific's sole member, in turn, is Alden Torch Financial LLC ("Alden Torch"), a limited liability company incorporated in Delaware with its principal place of business in Denver, Colorado.  Alden Torch has five individual members, four of whom are domiciled in Colorado.  The fifth individual member of Alden Torch is domiciled in Massachusetts.

8.     To the extent that AMTAX, AMTAX Fund, GMACCH, TCH, or Alden Pacific has a principal place of business, the principal place of business for each these entities is Denver, Colorado.

9.     Plaintiff and Counter-Defendant HHM is a limited liability company incorporated in the State of Washington with its principal place of business in Mercer Island, Washington.  On information and belief, any members of HHM are incorporated in the State of Washington and maintain their principal places of business in the State of Washington.  Based on a reasonable review of publicly available information, neither HHM nor any of its members is a citizen of Colorado, Delaware, Massachusetts, or Ohio.

**JURISDICTION AND VENUE**

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs, and is between citizens of different States.

11.     These counterclaims seek declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, which grant this Court authority to declare the rights and other legal relations surrounding questions of actual controversy that exist between AMTAX and HHM.

ANSWER AND COUNTERCLAIMS – 10

12.     Venue is proper in the United States District Court for the Western District of Washington under 28 U.S.C. § 1391 because the Hidden Hills Apartment Complex is located in this District, and because the parties have agreed to venue and personal jurisdiction in this District.

## FACTS

### *The LIHTC Program*

13.     Congress passed the LIHTC provisions in Section 42 of the Internal Revenue Code ("Section 42") in order to promote private investment in the development of affordable housing.  Section 42 permits investors who commit capital to developing and operating affordable housing projects to earn tax credits generated by those projects, as well as tax deductions arising out of any depreciation of the investor's capital account and other benefits attendant to their ownership interests.

14.     LIHTC investments are typically structured as a limited partnership between an investor limited partner, who provides the necessary capital, and a general partner, who is responsible for developing and operating the project (and earns substantial fees for doing so).

15.     LIHTC partnership agreements, like the one at issue here, often contain provisions giving the various partners certain rights to affect a disposition of the partnership following the end of the fifteen-year Compliance Period in which the tax credits are fully earned and retained.  These provisions can include options to purchase, forced sale rights, and rights of first refusal.

16.     Partnership agreements for LIHTC partnerships contain provisions designed to protect the limited partners' capital investment.  These provisions expressly spell out that the general partner owes a fiduciary duty to protect the interests of the limited partners and confer on investor limited partners rights to remove general partners based on material breaches of contractual or fiduciary duties.

ANSWER AND COUNTERCLAIMS – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### *The Partnership*

17.     The Partnership is a Washington State LIHTC limited partnership created for the purpose of developing, owning, operating, and ultimately disposing of the Hidden Hills Apartment Complex.  The Partnership and the respective rights and obligations of its partners, including AMTAX and HHM, are governed by the LPA.

18.     As Investor Limited Partner, AMTAX made substantial capital contributions to the Partnership in connection with the development and operation of the Hidden Hills Apartment Complex, and holds an ownership interest in the Partnership that exceeds ninety-nine percent (99%).

19.     Section 7.4.J of the LPA grants the Partnership's Managing General Partner an option during the twenty-four month period following the end of the Compliance Period to purchase the Interest of the Investor Limited Partner (the "Option").

20.     Section 7.4.J further provides:  "In the event the Managing General Partner exercises the Option, it must pay to the Investor Limited Partner the Option Price (as defined herein) in cash. The Option Price shall equal the greater of (i) the fair market value of the Interest, without offset for any lack of control or inability to control management of the Investor Limited Partner, (Fair Market Value shall be determined by two independent MAI appraisers: one selected by the Managing General Partner and one by the Investor Limited Partner.  If such appraisers are unable to agree on the value, they shall jointly appoint a third independent MAI appraiser whose determination shall be final and binding), or (ii) an amount determined by the Partnership Accountants, which is sufficient to pay (a) all outstanding indebtedness secured by the Apartment Complex and (b) distribute to the Investment Company cash proceeds sufficient to enable the Investment Company to pay, on an after tax basis, any taxes projected to be imposed on the Investment Company as a result of the sale pursuant to the Option."

21.     Section 6.2(B) of the LPA provides the method for distributing proceeds from a sale of the Hidden Hills Apartment Complex.

ANSWER AND COUNTERCLAIMS – 12

22.     Section 4.5(A)(iv)(2) of the LPA permits AMTAX, as the Investor Limited Partner, to remove HHM as a General Partner based, *inter alia*, on material violations of the LPA.

23.     Sections 7.4.F and 7.4.G of the LPA impose on HHM fiduciary duties to the Partnership and to AMTAX as Investor Limited Partner.

### *HHM Fails to Observe the Independent Appraisal Process Set Forth in the LPA*

24.     On March 14, 2017, HHM's managing member Catherine Tamaro sent a letter to AMTAX that purported to exercise HHM's Option to purchase AMTAX's interest in the Partnership, thereby triggering the independent appraisal provisions of Section 7.4.J of the LPA.

25.     Ms. Tamaro acknowledged in her March 14, 2017 letter that it would be improper for either party to "instruct its appraiser as to a desired valuation."  Contrary to that very principle, however, Ms. Tamaro insisted in the same letter that "[t]he cost of remediating the property's environmental liability must be included in the valuation."

26.     AMTAX, through its agent Chris Blake, affirmatively objected to HHM's attempt to undermine the independence of the appraisal process by imposing conditions on the valuation, and expressed concern that HHM's actions were intended to depress the appraised value and thereby reduce the price that HHM would have to pay to purchase AMTAX's interest in the Partnership.

27.     AMTAX nevertheless complied with its obligation under Section 7.4.J. of the LPA and obtained an appraisal report from Cushman & Wakefield (the "C&W appraisal"), which assessed the value of the Hidden Hills Apartment Complex at $19,700,000.  Mr. Blake shared the C&W appraisal with Ms. Tamaro by email on May 11, 2017.

28.     The C&W appraisal acknowledged that "the subject is located within the Tacoma Smelter Plume due to the airborne deposition of ash from the former Asarco smokestack in nearby Ruston," and that the appraiser had been provided with a "Phase I Environmental Site

ANSWER AND COUNTERCLAIMS – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   Assessment dated November 28, 2001 prepared by Surveys Inc. of Renton, WA."  The C&W

2   appraisal further stated that "[d]iscussions with brokers active in the Pierce County market

3   indicate that sales of multifamily properties in the subject's general vicinity are not being

4   adversely impacted by the Tacoma Smelter Plume."

5       29.     The conclusions in the C&W appraisal regarding the value of the Hidden Hills

6   Apartment Complex and the lack of any material adverse impact on pricing due to historical

7   environmental contamination were borne out by a broker's opinion of value ("BOV") that HHM

8   commissioned shortly after receiving the C&W appraisal from AMTAX.  Indeed, the BOV that

9   HHM commissioned arrived at a value for the Hidden Hills Apartment Complex that, at its

10  midpoint, was $600,000 *higher* than the appraised value reflected in the C&W appraisal.

11      30.     Rather than simply accepting the C&W appraisal, however, HHM secretly

12  hatched a three-part scheme to depress the fair market value of the Hidden Hills Apartment

13  Complex in order to reduce the price it would have to pay AMTAX for its interest in the

14  Partnership.

15      31.     First, HHM hid the BOV that it had commissioned from its own appraiser, and

16  improperly influenced the appraisal process by purporting to advise its appraiser that potential

17  buyers would need to engage in environmental remediation in order to obtain financing.

18      32.     On June 19, 2017, Ms. Tamaro sent a letter to Mr. Blake, enclosing an appraisal

19  report obtained by HHM from CBRE (the "CBRE report").  Ms. Tamaro acknowledged in her

20  letter that she was attempting to obtain new financing for the property, and that her ability to do

21  so was contingent on environmental remediation that the Partnership was not otherwise obligated

22  to undertake.

23      33.     The CBRE report assessed the value of the Property at $14,050,000.  The CBRE

24  report noted that it had reduced the fair value determination based on the appraiser's claim that

25  "it is likely that a potential buyer would require the site to be cleaned prior to sale."

26

ANSWER AND COUNTERCLAIMS – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

34.     Second, HHM solicited unnecessary environmental reports and irrelevant remediation cost estimates to help HHM achieve its objective of artificially depressing the fair market value of the Hidden Hills Apartment Complex.  HHM, for example, unilaterally commissioned an environmental consulting company to prepare a "Technical Memorandum," dated August 8, 2017 that purported to provide an estimate of environmental remediation costs for the Hidden Hills Apartment Complex totaling $3,760,450, including "a 50 percent contingency of $1,220,150 for unknown or changed conditions."

35.     By soliciting new reports and memoranda on historical environmental issues that the Partnership is under no obligation to address, HHM's actions threaten to have a material adverse impact on the value of the Hidden Hills Apartment Complex to the economic detriment of both AMTAX and the Partnership.

36.     Third, HHM secretly selected and communicated with a third appraiser while falsely assuring AMTAX that it was interested in AMTAX's proposal that the Partnership list the Hidden Hills Apartment Complex for sale in order to let the market determine its fair value. These actions not only confirm HHM's ill intent, but were taken in direct contravention of the procedure set forth in Section 7.4.J of the LPA, which requires the two previously selected appraisers—not HHM—to appoint the third appraiser.

37.     On August 11, 2017, HHM's counsel wrote a letter to AMTAX's counsel stating that Ms. Tamaro would seriously consider AMTAX's request that the Partnership market the Property, and acknowledging that "disclosure and marketing will tell us" the fair market value of the Property.

38.     Despite reassuring AMTAX's counsel on multiple occasions that HHM remained interested in marketing the property in lieu of continuing with the appraisal process, HHM's counsel informed AMTAX's counsel on September 22, 2017 that Ms. Tamaro had taken steps to select a third appraiser without informing AMTAX.

ANSWER AND COUNTERCLAIMS – 15

1    39.    Email correspondence subsequently forwarded to AMTAX confirms that, despite

2  his assurances to the contrary to AMTAX's counsel, HHM's counsel was aware as early as

3  September 6, 2017 that Ms. Tamaro sought to return to the appraisal process.  The email

4  correspondence also confirms that, contrary to the requirement in Section 7.4.J, it was Ms.

5  Tamaro, and *not* the party's respective appraisers, who appointed the third appraiser.

6

7    ### *AMTAX Removes HHM Based on HHM's Breaches of its General Partner Obligations*

8    40.    On October 23, 2017, HHM transmitted a copy of a new appraisal report prepared

9  by Colliers International Valuation and Advisory Services (the "Colliers report"), along with the

10  August 8, 2017 "Technical Memorandum," which is referred to and relied on in the Colliers

11  report.  The Technical Memorandum included a cost estimate of nearly $3.8 million to perform

12  environmental remediation, and the Colliers report deducted that entire amount—including "a 50

13  percent contingency of $1,220,150" based solely on "unknown or changed conditions"—from its

14  fair market value conclusion.  The Colliers report claimed that this deduction was appropriate

15  because, according to the appraiser, "[l]enders would only provide a loan for the subject if either

16  the contamination was remediated by the owner before funding of a loan, or a plan is provided to

17  remediate the site within the first year or two of the loan, or the owner would set up an escrow

18  account and deposit money equivalent to the estimated remediation costs to cover the potential

19  remediation of the contamination."

20    41.    On November 3, 2017, AMTAX's counsel sent a letter to HHM's counsel

21  notifying HHM that AMTAX formally objected to the use of the Colliers report in determining

22  the fair market value of the Property for purposes of Section 7.4.J of the LPA.  AMTAX's

23  objection was based on HHM's improper efforts to influence what is supposed to be an

24  independent appraisal process for its own pecuniary benefit as described above, including but not

25  limited to its secret and unilateral selection of the purported third appraiser in violation of

26  Section 7.4.J of the LPA.

ANSWER AND COUNTERCLAIMS – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

42.     HHM's conduct was intended solely to suppress fair market value in order to reduce the price that HHM would need to pay to divest AMTAX of its interest in the Partnership. Indeed, HHM has not made any commitment to perform the environmental remediation reflected in the Technical Memorandum following its purchase of AMTAX's interest, and a review of the website for the State of Washington's Department of Ecology confirms that HHM has not even placed the Property on the lengthy waiting list for the Voluntary Cleanup Program under which the proposed remediation would supposedly be undertaken.

43.     On November 14, 2017, HHM initiated this action, which seeks to force AMTAX to sell its interest in the Partnership for $531,748.00, a price that is millions of dollars less than what HHM would have to pay under the independent appraisal process contemplated by Section 7.4.J of the LPA.

44.     The Option price that HHM demands in its Complaint is incorrect because it is based on the appraised value in the Colliers report that HHM improperly commissioned and manipulated to its advantage.

45.     The Option Price is also incorrect because HHM did not properly apply the distribution formula set forth in Section 6.2(B) of the LPA.  Indeed, HHM's counsel sent a letter to AMTAX's counsel on December 18, 2017 conceding that the $531,748.00 Option price alleged in HHM's Complaint was based on an erroneous application of the distribution formula, and that AMTAX's interest in the Partnership was worth more than one million dollars.  While this admission does not resolve either the primary dispute over what appraised value should be used to determine the Option price or other disagreements about how the distribution formula in Section 6.2.B operates, HHM presumably will be required to conform its pleading to be consistent with its admission that the Option price alleged in the Complaint was based on a miscalculation.

46.     On November 30, 2017, AMTAX sent a letter notifying HHM that it was exercising its right under Section 4.5(A)(iv)(2) of the LPA to remove HHM as a General Partner

ANSWER AND COUNTERCLAIMS – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   of the Partnership based on material breaches by HHM of its contractual and fiduciary duties that

2   could "reasonably be expected to cause economic detriment to the Partnership or to the Project"

3   (the "Removal Notice").  AMTAX explained in the Removal Notice that HHM had violated

4   Section 7.4.J of the LPA by:  (a) improperly influencing what is supposed to be an independent

5   appraisal process in an effort to depress the appraised value of the Hidden Hills Apartment

6   Complex and thereby reduce the price HHM would have to pay to exercise its Option to

7   purchase AMTAX's interest in the Partnership; and (b) secretly hiring a third appraiser in

8   violation of the selection provisions of Section 7.4.J while falsely representing to AMTAX that it

9   remained interested in AMTAX's proposal to abandon the tainted appraisal process and instead

10  determine fair market value the traditional way (i.e., by listing and marketing the property for

11  sale).  The Removal Notice further stated that HHM compounded its breach by initiating this

12  lawsuit, in which HHM improperly seeks to force AMTAX to sell its interest in the Partnership

13  at a price that even HHM now admits is lower than the price to which AMTAX is contractually

14  entitled.  The Removal Notice designated AMTAX's affiliate Saugatuck, LLC as the

15  Partnership's replacement General Partner.

16          47.      On December 14, 2017, AMTAX removed this action to this Court.

17                               **CLAIMS FOR RELIEF**

18                             **FIRST CLAIM FOR RELIEF**

19                               **(Breach of Contract)**

20          48.      AMTAX realleges and incorporates by reference each and every allegation set

21  forth above.

22          49.      AMTAX and HHM are parties to the LPA.

23          50.      AMTAX has substantially performed its obligations under the LPA.

24          51.      HHM breached the LPA by, among other things:

25

26

ANSWER AND COUNTERCLAIMS – 18

1    (a) improperly influencing the independent appraisal process set forth in Section 7.4.J of

2    the LPA in an effort to depress the appraised value of the Project and thereby reduce the price it

3    would have to pay to purchase AMTAX's interest in the Partnership;

4    (b) secretly hiring a third appraiser in violation of the selection provision of Section 7.4.J

5    while falsely representing to AMTAX that it remained interested in AMTAX's proposal to

6    abandon the tainted appraisal process and instead determine fair market value by listing and

7    marketing the Hidden Hills Apartment Complex for sale; and

8    (c) bringing a lawsuit that improperly seeks to compel AMTAX to sell its interest in the

9    Partnership for a price that HHM now admits is too low and that is millions of dollars lower than

10   the price AMTAX would be entitled to had HHM properly exercised its Option under Section

11   7.4.J.

12        52.    As a direct and proximate result of HHM's conduct, AMTAX has suffered

13   damages and may suffer additional damages in the future.  The exact amount of such damages is

14   presently unknown, but is well in excess of $1 million.

15                            **SECOND CLAIM FOR RELIEF**

16                            **(Breach of Fiduciary Duty)**

17        53.    AMTAX realleges and incorporates by reference each and every allegation set

18   forth above.

19        54.    As a General Partner of the Partnership, HHM owes fiduciary duties to the

20   Partnership and to AMTAX as the Partnership's Investor Limited Partner, including the duties of

21   loyalty, care, good faith, and fair dealing.

22        55.    HHM breached its fiduciary duties to AMTAX and the Partnership by

23   subordinating the interests of the Partnership and AMTAX to its own interests, and by taking

24   action on behalf of the Partnership in order to derive an improper benefit for themselves.

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    56.    As a direct and proximate result of HHM's conduct, AMTAX has suffered

2    damages and may suffer additional damages in the future.  The exact amount of such damages is

3    presently unknown, but is well in excess of $1 million.

4                        **THIRD CLAIM FOR RELIEF**

5                   **(Declaratory Judgment: Option Price)**

6    57.    AMTAX realleges and incorporates by reference each and every allegation set

7    forth above.

8    58.    HHM is a General Partner of the Partnership.

9    59.    AMTAX is the Investor Limited Partner of the Partnership.

10    60.    A dispute has arisen between AMTAX and HHM regarding the price HHM must

11    pay to purchase AMTAX's interest in the Partnership pursuant to Section 7.4.J of the LPA.

12    61.    AMTAX is entitled to a determination that (1) HHM does not have a right to

13    purchase AMTAX's interest in the Partnership for $531,748.00; (2) the appraisal process—

14    including but not limited to HHM's secret selection of Colliers as the third appraiser—was

15    conducted in a manner that was inconsistent with the requirements of Section 7.4.J of the LPA;

16    and (3) the Colliers report is not and cannot be considered the "final and binding" appraisal for

17    purposes of calculating the Option price under Section 7.4.J.

18                        **FOURTH CLAIM FOR RELIEF**

19                     **(Declaratory Judgment: Removal)**

20    62.    AMTAX realleges and incorporates by reference each and every allegation set

21    forth above.

22    63.    HHM is a General Partner of the Partnership.

23    64.    AMTAX is the Investor Limited Partner of the Partnership.

24    65.    A dispute has arisen between AMTAX and HHM regarding AMTAX's removal

25    of HHM as a General Partner of the Partnership in accordance with Section 4.5(a)(iv) of the

26    LPA.

ANSWER AND COUNTERCLAIMS – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

66.     AMTAX is entitled to a determination that HHM has been removed as the Partnership's Administrative General Partner, and is obliged to cooperate fully with the transfer of Administrative General Partner responsibilities to AMTAX's affiliate, Saugatuck, LLC.

### PRAYER FOR RELIEF

WHEREFORE, AMTAX respectfully requests:

1. A declaratory judgment that (1) HHM does not have a right to purchase AMTAX's interest in the Partnership for $531,748.00; (2) the appraisal process—including but not limited to HHM's secret selection of Colliers as the third appraiser—was conducted in a manner that was inconsistent with the requirements of Section 7.4.J of the LPA; and (3) the Colliers report is not and cannot be considered the "final and binding" appraisal for purposes of calculating the Option price under Section 7.4.J.

2. A declaratory judgment that HHM has been removed as a General Partner of the Partnership pursuant to AMTAX's rights under 4.5(A)(iv) of the LPA.

3. Damages in accordance with proof;

4. Interest on the amounts awarded at the legal rate;

5. Costs of the suit herein; and

6. Such other relief as the Court deems just and proper.

ANSWER AND COUNTERCLAIMS – 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2   DATED:  December 21, 2017

By:  /s/ David J Burman
      /s/ Steven D. Merriman

3   David J. Burman, WSBA #10611
    Steven D. Merriman, WSBA #44035
    **Perkins Coie LLP**
4   1201 Third Avenue, Suite 4900
    Seattle, WA  98101-3099
5   Telephone:  206.359.8000
    Facsimile:  206.359.9000
6   Email:  DBurman@perkinscoie.com
             SMerriman@perkinscoie.com
7
    Christopher G. Caldwell (admitted *pro hac vice*)
8   Eric S. Pettit (admitted *pro hac vice*)
    **BOIES SCHILLER FLEXNER LLP**
9   725 S. Figueroa Street, 31st Floor
    Los Angeles, CA 90017-5524
10  Telephone:  (213) 629-9040
    Facsimile:  (213) 629-9022
11  Email:  ccaldwell@bsfllp.com
             epettit@bsfllp.com
12
    Attorneys for Defendant and Counter-Plaintiff
13  AMTAX Holdings 114, LLC
14
15
16
17
18
19
20
21
22
23
24
25
26

ANSWER AND COUNTERCLAIMS – 22

1

**CERTIFICATE OF SERVICE**

2

On December 21, 2017, I caused to be served upon the below named counsel of record, at

3

the address stated below, via the method of service indicated, a true and correct copy of the

4

foregoing document.

5

| David R. Goodnight<br>Rita V. Latsinova<br>J. Scott Pritchard<br>Stoel Rives LLP<br>600 University Street, Suite 3600<br>Seattle, WA 98101<br>Phone: (206) 624-0900<br>Facsimile: (206) 386-7500<br>Email: david.goodnight@stoel.com<br>Email: rita.latsinova@stoel.com<br>Email: scott.pritchard@stoel.com | __X__ Via the Clerk's eFiling Application<br>_____ Via hand delivery<br>_____ Via U.S. Mail, 1st Class,<br>Postage Prepaid<br>_____ Via Overnight Delivery<br>_____ Via Facsimile<br>_____ Via Email |
| --- | --- |

6

7

8

9

10

11

12

I certify under penalty of perjury under the laws of the State of
Washington that the foregoing is true and correct.

13

EXECUTED at Seattle, Washington, on December 21, 2017.

14

15

16

/s/ Steven D. Merriman
Steven D. Merriman

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE – 1