1

The Honorable Ronald B. Leighton

2

3

4

5

6

7    UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8    AT TACOMA

9   HIDDEN HILLS MANAGEMENT, LLC,          No. 3:17-cv-06048-RBL

10              Plaintiff,                   AMTAX HOLDINGS 114, LLC'S FIRST
AMENDED ANSWER TO COMPLAINT
11      v.                                   FOR DECLARATORY JUDGMENT &
INJUNCTIVE RELIEF AND
12   AMTAX HOLDINGS 114, LLC,                COUNTERCLAIMS

13              Defendant.

14

15   AMTAX HOLDINGS 114, LLC,

16

17              Counter-Plaintiff,

18      v.

19   HIDDEN HILLS MANAGEMENT, LLC,

20              Counter-Defendant.

21

22       Pursuant to Rules 8(b) and 81(c)(2) of the Federal Rules of Civil Procedure, Defendant

23   AMTAX Holdings 114, LLC ("AMTAX") hereby answers the Complaint For Declaratory

24   Judgment & Injunctive Relief filed by Plaintiff Hidden Hills Management, LLC ("HHM") on

25   November 14, 2017 in the Superior Court of the State of Washington for Pierce County, and

26

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    removed by AMTAX to this Court on December 14, 2017 (the "Complaint").  By this pleading,

2    AMTAX also asserts counterclaims against HHM as set forth below.

3    **ANSWER TO COMPLAINT**

4          1.      AMTAX admits the allegations in the first sentence of Paragraph 1.  Responding

5    to the second sentence of Paragraph 1, AMTAX states that the purpose of Hidden Hills 2001, a

6    Washington Limited Partnership (the "Partnership"), is described in Section 2.3 of the limited

7    partnership agreement governing the Partnership (the "LPA"), and AMTAX denies any

8    characterization of the purpose of the Partnership that is inconsistent with Section 2.3 of the

9    LPA.

10         2.      Responding to Paragraph 2, AMTAX admits that HHM is a Washington limited

11   liability company with its principal place of business in Mercer Island Washington, and that,

12   prior to its removal on November 30, 2017, HHM was the Administrative General Partner of the

13   Partnership.  Except as expressly admitted herein, AMTAX denies each and every allegation

14   contained in Paragraph 2.

15         3.      Responding to Paragraph 3, AMTAX admits that it is an Ohio limited liability

16   company, and that it is the Partnership's Investor Limited Partner.  Except as expressly admitted

17   herein, AMTAX denies each and every allegation contained in Paragraph 3.

18         4.      AMTAX denies the allegations in Paragraph 4, and states that the Partnership's

19   current Special Limited Partner is non-party Tax Credit Holdings III, LLC.

20         5.      AMTAX admits the allegations in Paragraph 5.

21         6.      Paragraph 6 contains legal conclusions and argument to which no response is

22   required, particularly in light of AMTAX's removal to this Court of the action initiated by the

23   Complaint.  To the extent that Paragraph 6 contains factual allegations to which a response is

24   required, AMTAX admits such allegations.

25         7.      Paragraph 7 contains legal conclusions and argument to which no response is

26   required, particularly in light of AMTAX's removal to this Court of the action initiated by the

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Complaint.  To the extent that Paragraph 7 contains factual allegations to which a response is required, AMTAX admits such allegations.

8.      Paragraph 8 contains legal conclusions and argument to which no response is required, particularly in light of AMTAX's removal to this Court of the action initiated by the Complaint.  To the extent that Paragraph 8 contains factual allegations to which a response is required, AMTAX admits such allegations.

9.      AMTAX denies the allegations in the first sentence of Paragraph 9, and further responds that, as explained in detail in AMTAX's counterclaims, HHM improperly seeks by its Complaint to compel AMTAX to sell its interest in the Partnership at a price that is substantially lower than the price HHM would have to pay if it properly exercised its "Option" under Section 7.4.J of the LPA.  Responding to the second sentence of Paragraph 9, AMTAX states that Section 7.4.J of the LPA speaks for itself, and denies any characterization inconsistent with its terms.

10.      Responding to the first and third sentences of Paragraph 10, AMTAX states that Section 7.4.J of the LPA speaks for itself, and denies any characterization inconsistent with its terms.  AMTAX admits the allegations in the second sentence of Paragraph 10.

11.      Responding to the first sentence of Paragraph 11, AMTAX states that Section 7.4.J of the LPA speaks for itself, and denies any characterization inconsistent with its terms. Responding to the second sentence of Paragraph 11, AMTAX admits that it received a letter dated March 14, 2017 that purported to notify AMTAX that HHM was exercising its "Option" as provided in Section 7.4.J of the LPA.  Except as expressly admitted herein, AMTAX denies each and every allegation contained in Paragraph 11.

12.      Responding to Paragraph 12, AMTAX states that Section 7.4.J of the LPA speaks for itself, and denies any characterization inconsistent with its terms.

13.      Responding to the first sentence of Paragraph 13, AMTAX states that Section 7.4.J of the LPA speaks for itself, and denies any characterization inconsistent with its terms.

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

AMTAX admits in response to the remainder of Paragraph 13 that the Hidden Hills Apartment Complex is located in University Place, Washington, but otherwise lacks sufficient knowledge or information to form a belief concerning the truth of any factual allegations contained therein, and on that basis denies such allegations.

14.     AMTAX denies the allegations in the first sentence of Paragraph 14.  AMTAX lacks sufficient knowledge or information to form a belief concerning the truth of any factual allegations contained in the remainder of Paragraph 14, and on that basis denies such allegations.

15.     AMTAX denies the allegations in Paragraph 15.

16.     AMTAX admits the allegations in Paragraph 16.

17.     Responding to Paragraph 17, AMTAX admits that CBRE's report dated June 7, 2017 valued the Hidden Hills Apartment Complex at $14,050,000, but lacks sufficient knowledge or information to form a belief concerning the basis for CBRE's valuation, which was more than seven million dollars lower than the valuation CBRE provided in a broker's opinion of value ("BOV") that HHM commissioned but subsequently hid from both AMTAX and its own appraiser at CBRE.  Except as expressly admitted herein, AMTAX denies each and every allegation contained in Paragraph 17.

18.     AMTAX admits the allegations in Paragraph 18.

19.     Responding to the first sentence of Paragraph 19, AMTAX admits that HHM improperly attempted to influence what was supposed to be an independent appraisal process by distracting the appraisers with irrelevant information that purportedly related to environmental contamination, and by hiding material information, including a BOV that CBRE provided at HHM's request, which provided an opinion of the value of the Hidden Hills Apartment Complex that, at its midpoint, was $7,250,000 million (52%) higher than the $14,050,000 value reflected in the CBRE appraisal.  Responding to the second sentence of Paragraph 19, AMTAX admits that it objected to and attempted to prevent HHM's improper efforts to depress the appraised value of the property (and, by extension, the price HHM would have to pay to purchase

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   AMTAX's interest in the Partnership).  Except as expressly admitted herein, AMTAX denies

2   each and every allegation contained in Paragraph 19.

3         20.     AMTAX denies the allegations in Paragraph 20.

4         21.     AMTAX denies the allegations in Paragraph 21.

5         22.     Responding to Paragraph 22, AMTAX admits that Cushman & Wakefield issued

6   an appraisal report on May 5, 2017 in which it concluded that the value of the Hidden Hills

7   Apartment Complex as of April 28, 2017 was $19,700,000.  Except as expressly admitted herein,

8   AMTAX denies each and every allegation contained in Paragraph 22.

9         23.     AMTAX lacks sufficient knowledge or information to form a belief concerning

10  the truth of any factual allegations contained in Paragraph 23, and on that basis denies them.

11        24.     AMTAX admits the allegations in the first sentence of Paragraph 24.  AMTAX

12  denies the allegations in the second sentence of Paragraph 24.

13        25.     Responding to Paragraph 25, AMTAX admits that HHM provided Colliers

14  International ("Colliers") with certain environmental information, including estimated

15  remediation costs, but denies that the information was accurate or material to a determination of

16  the fair market value of the Hidden Hills Apartment Complex.  Except as expressly admitted

17  herein, AMTAX denies each and every allegation contained in Paragraph 25.

18        26.     Responding to Paragraph 26, AMTAX admits that Colliers issued its appraisal

19  report on or about October 23, 2017.  Except as expressly admitted herein, AMTAX denies each

20  and every allegation contained in Paragraph 26.

21        27.     Responding to Paragraph 27, AMTAX admits that the October 23, 2017 Colliers

22  appraisal report valued the Hidden Hills Apartment Complex at $13,500,000, and purported in

23  reaching that value conclusion to make an "extraordinary assumption" about hypothetical

24  environmental remediation costs totaling more than $3.7 million.  Except as expressly admitted

25  herein, AMTAX denies each and every allegation contained in Paragraph 27.

26

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 5

28.     Responding to Paragraph 28, AMTAX states that Section 7.4.J of the LPA speaks for itself, and denies any characterization inconsistent with its terms.

29.     AMTAX denies the allegations in Paragraph 29.

30.     Responding to Paragraph 30, AMTAX admits that its counsel sent a letter to HHM's counsel on November 3, 2017.  AMTAX states further that the November 3, 2017 letter speaks for itself, and denies any characterization inconsistent with its contents.  Except as expressly admitted herein, AMTAX denies each and every allegation contained in Paragraph 30.

31.     Responding to Paragraph 31, AMTAX admits that HHM has falsely claimed in this action that it is entitled to purchase AMTAX's interest in the Partnership for $531,748.00, but otherwise lacks sufficient knowledge or information to form a belief concerning the truth of any factual allegations contained therein, and on that basis denies such allegations.

32.     AMTAX denies the allegations in Paragraph 32.

33.     AMTAX repeat and incorporate by reference each and every response set forth above.

34.     Paragraph 34 contains legal conclusions and argument to which no response is required.  To the extent that Paragraph 34 contains factual allegations to which a response is required, AMTAX admits such allegations.

35.     Paragraph 35 contains legal conclusions and argument to which no response is required.  To the extent that Paragraph 35 contains factual allegations to which a response is required, AMTAX admits such allegations.

36.     Paragraph 36 is a characterization of HHM's claims and requested relief, to which no response is required.

37.     Paragraph 37 contains legal conclusions and argument to which no response is required.  To the extent that Paragraph 37 contains factual allegations to which a response is required, AMTAX admits such allegations.

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

38.     No response is required to the remainder of the Complaint, which sets forth HHM's prayer for relief.  To the extent the remainder of the Complaint contains factual allegations to which a response is required, AMTAX denies each and every such allegation.

## DEFENSES

AMTAX pleads the following separate and distinct defenses without conceding that they bear the burden of proof as to any of these issues.  AMTAX reserves the right to assert additional defenses that discovery indicates are proper.

### FIRST DEFENSE

### (Failure to State a Claim)

1.     HHM's Complaint, and each cause of action alleged therein, fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

### (Claim Barred by Contractual Terms)

2.     HHM's Complaint, and each cause of action alleged therein, is barred, released, waived, or otherwise precluded by the terms of the limited partnership agreement alleged in the Complaint.

### THIRD DEFENSE

### (Estoppel)

3.     HHM's Complaint, and each cause of action alleged therein, is barred in whole or in part by the doctrine of estoppel.

### FOURTH DEFENSE

### (Unclean Hands)

4.     HHM's Complaint, and each cause of action alleged therein, is barred in whole or in part by the doctrine of unclean hands.

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 7

1

**FIFTH DEFENSE**

2

**(Waiver)**

3       5.      HHM's Complaint, and each cause of action alleged therein, is barred in whole or

4    in part by the doctrine of waiver.

5

**SIXTH DEFENSE**

6

**(Prior Breach)**

7       6.      HHM's Complaint, and each cause of action alleged therein, is barred by reason

8    of prior breaches of the limited partnership agreement upon which HHM bases the Complaint.

9          WHEREFORE, having fully answered the allegations in HHM's Complaint, AMTAX

10   requests that the Court enter an order dismissing the Complaint with prejudice and in its entirety,

11   and awarding AMTAX all permissible costs and expenses, as well as such other relief the Court

12   deems just and proper.

13

**<u>COUNTERCLAIMS</u>**

14          For its Counterclaims against Plaintiff Hidden Hills Management, LLC ("HHM"), AMTAX

15   Holdings 114, LLC ("AMTAX") hereby states and alleges the following:

16

**INTRODUCTION**

17       1.      AMTAX is the Investor Limited Partner of Hidden Hills 2001, L.P., a low-income

18   housing tax credit ("LIHTC") limited partnership (the "Partnership") formed exclusively to

19   develop, own, operate, and ultimately dispose of an affordable housing development in

20   University Place, Washington (the "Hidden Hills Apartment Complex").  The Partnership is

21   governed by an Amended and Restated Agreement of Limited Partnership (the "LPA"), which is

22   attached hereto as Exhibit A.  Until November 30, 2017, HHM was a General Partner of the

23   Partnership.

24       2.      AMTAX brings these counterclaims in response to an action HHM initiated on

25   November 14, 2017 that seeks to compel AMTAX to sell its interest in the Partnership at a price

26   that is millions of dollars less than fair market value.  As explained below, HHM's lawsuit is the

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

culmination of a scheme to improperly influence and, ultimately, to ignore the independent appraisal process that the LPA required the parties to follow in calculating the price HHM must pay to buy AMTAX out of the Partnership.

3.    HHM's efforts to artificially depress the appraised value of the Hidden Hills Apartment Complex were undertaken specifically to enrich HHM at the expense of AMTAX and the Partnership, and constituted material breaches of HHM's contractual and fiduciary duties as a General Partner of the Partnership.

4.    On the basis of this and other misconduct, on November 30, 2017, AMTAX exercised its right under Section 4.5(A)(iv)(2) of the LPA to remove HHM as a General Partner of the Partnership and designate its affiliate, Saugatuck, LLC, as a replacement General Partner. Although this notice is self-effectuating under the terms of the LPA, AMTAX has not taken any non-judicial action to enforce its removal rights, but instead seeks by these counterclaims, *inter alia*, to enforce those rights.  Attached hereto as Exhibit B is AMTAX's November 30, 2017 removal notice.

5.    On December 14, 2017, AMTAX removed the action that HHM had initiated to this Court.  AMTAX hereby asserts counterclaims for breach of contract and breach of fiduciary duty, and for declaratory relief rejecting HHM's claim and enforcing AMTAX's removal rights under the LPA.

**PARTIES**

6.    Defendant and Counter-Plaintiff AMTAX, a limited liability company incorporated in Ohio, is the Partnership's Investor Limited Partner.  AMTAX's non-managing member is AMTAX Holdings Corporate Fund (DEL) IV, LLC ("AMTAX Fund"), a limited liability company incorporated in Delaware.  The non-managing member of AMTAX Fund, in turn, is GMACCH Guaranteed TCF IV, LLC ("GMACCH"), a limited liability company incorporated in Delaware.

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 9

7.     Tax Credit Holdings III, LLC ("TCH"), a limited liability company incorporated in Delaware, is the Partnership's Special Limited Partner.  TCH, a non-party to this lawsuit, is the non-member manager of AMTAX, the managing member of AMTAX Fund, and the sole member of GMACCH.  TCH's sole member is Alden Pacific Holdings, LLC ("Alden Pacific"), a limited liability company incorporated in Delaware.  Alden Pacific's sole member, in turn, is Alden Torch Financial LLC ("Alden Torch"), a limited liability company incorporated in Delaware with its principal place of business in Denver, Colorado.  Alden Torch has five individual members, four of whom are domiciled in Colorado.  The fifth individual member of Alden Torch is domiciled in Massachusetts.

8.     To the extent that AMTAX, AMTAX Fund, GMACCH, TCH, or Alden Pacific has a principal place of business, the principal place of business for each these entities is Denver, Colorado.

9.     Plaintiff and Counter-Defendant HHM is a limited liability company incorporated in the State of Washington with its principal place of business in Mercer Island, Washington.  On information and belief, any members of HHM are incorporated in the State of Washington and maintain their principal places of business in the State of Washington.  Based on a reasonable review of publicly available information, neither HHM nor any of its members is a citizen of Colorado, Delaware, Massachusetts, or Ohio.

**JURISDICTION AND VENUE**

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs, and is between citizens of different States.

11.     These counterclaims seek declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, which grant this Court authority to declare the rights and other legal relations surrounding questions of actual controversy that exist between AMTAX and HHM.

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 10

12.     Venue is proper in the United States District Court for the Western District of Washington under 28 U.S.C. § 1391 because the Hidden Hills Apartment Complex is located in this District, and because the parties have agreed to venue and personal jurisdiction in this District.

## FACTS

### *The LIHTC Program*

13.     Congress passed the LIHTC provisions in Section 42 of the Internal Revenue Code ("Section 42") in order to promote private investment in the development of affordable housing.  Section 42 permits investors who commit capital to developing and operating affordable housing projects to earn tax credits generated by those projects, as well as tax deductions arising out of any depreciation of the investor's capital account and other benefits attendant to their ownership interests.

14.     LIHTC investments are typically structured as a limited partnership between an investor limited partner, who provides the necessary capital, and a general partner, who is responsible for developing and operating the project (and earns substantial fees for doing so).

15.     LIHTC partnership agreements, like the one at issue here, often contain provisions giving the various partners certain rights to affect a disposition of the partnership following the end of the fifteen-year Compliance Period in which the tax credits are fully earned and retained.  These provisions can include options to purchase, forced sale rights, and rights of first refusal.

16.     Partnership agreements for LIHTC partnerships contain provisions designed to protect the limited partners' capital investment.  These provisions expressly spell out that the general partner owes a fiduciary duty to protect the interests of the limited partners and confer on investor limited partners rights to remove general partners based on material breaches of contractual or fiduciary duties.

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### *The Partnership*

17.     The Partnership is a Washington State LIHTC limited partnership created for the purpose of developing, owning, operating, and ultimately disposing of the Hidden Hills Apartment Complex.  The Partnership and the respective rights and obligations of its partners, including AMTAX and HHM, are governed by the LPA.

18.     As Investor Limited Partner, AMTAX made substantial capital contributions to the Partnership in connection with the development and operation of the Hidden Hills Apartment Complex, and holds an ownership interest in the Partnership that exceeds ninety-nine percent (99%).

19.     Section 7.4.J of the LPA grants the Partnership's Managing General Partner an option during the twenty-four month period following the end of the Compliance Period to purchase the Interest of the Investor Limited Partner (the "Option").

20.     Section 7.4.J further provides:  "In the event the Managing General Partner exercises the Option, it must pay to the Investor Limited Partner the Option Price (as defined herein) in cash. The Option Price shall equal the greater of (i) the fair market value of the Interest, without offset for any lack of control or inability to control management of the Investor Limited Partner, (Fair Market Value shall be determined by two independent MAI appraisers: one selected by the Managing General Partner and one by the Investor Limited Partner.  If such appraisers are unable to agree on the value, they shall jointly appoint a third independent MAI appraiser whose determination shall be final and binding), or (ii) an amount determined by the Partnership Accountants, which is sufficient to pay (a) all outstanding indebtedness secured by the Apartment Complex and (b) distribute to the Investment Company cash proceeds sufficient to enable the Investment Company to pay, on an after tax basis, any taxes projected to be imposed on the Investment Company as a result of the sale pursuant to the Option."

21.     Section 6.2(B) of the LPA provides the method for distributing proceeds from a sale of the Hidden Hills Apartment Complex.

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

22.     Section 4.5(A)(iv)(2) of the LPA permits AMTAX, as the Investor Limited Partner, to remove HHM as a General Partner based, *inter alia*, on material violations of the LPA.

23.     Sections 7.4.F and 7.4.G of the LPA impose on HHM fiduciary duties to the Partnership and to AMTAX as Investor Limited Partner.

### *Environmental Indemnity Agreement*

24.     Upon the formation of the Partnership, and in consideration for AMTAX's admission and capital contributions to the Partnership, HHM and AMTAX entered into an Environmental Indemnity and ADA Compliance Agreement ("Environmental Indemnity Agreement").

25.     Pursuant to the Environmental Indemnity Agreement, HHM agreed to serve as the Indemnitor and must indemnify AMTAX and hold AMTAX harmless "from and against any and all claims, costs, litigation, proceedings, investigations, loss, damage, liability, fine, penalty, assessment or expense, and/or loss, or deferment or delay of distributions from Hidden Hills to [AMTAX] (collectively referred to as 'Environmental Liability') arising from, or as a result of, or relating to, any Hazardous Substance, Hazardous Substance Activity or violation of Environmental Laws . . . , on the, or adversely affecting the, Property."

### *HHM Fails to Observe the Independent Appraisal Process Set Forth in the LPA*

26.     On March 14, 2017, HHM's managing member Catherine Tamaro sent a letter to AMTAX that purported to exercise HHM's Option to purchase AMTAX's interest in the Partnership, thereby triggering the independent appraisal provisions of Section 7.4.J of the LPA.

27.     Ms. Tamaro acknowledged in her March 14, 2017 letter that it would be improper for either party to "instruct its appraiser as to a desired valuation."  Contrary to that very

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 13

1  principle, however, Ms. Tamaro insisted in the same letter that "[t]he cost of remediating the

2  property's environmental liability must be included in the valuation."

3      28.    AMTAX, through its agent Chris Blake, affirmatively objected to HHM's attempt

4  to undermine the independence of the appraisal process by imposing conditions on the valuation,

5  and expressed concern that HHM's actions were intended to depress the appraised value and

6  thereby reduce the price that HHM would have to pay to purchase AMTAX's interest in the

7  Partnership.

8      29.    AMTAX nevertheless complied with its obligation under Section 7.4.J. of the

9  LPA and obtained an appraisal report from Cushman & Wakefield (the "C&W appraisal"),

10  which assessed the value of the Hidden Hills Apartment Complex at $19,700,000.  Mr. Blake

11  shared the C&W appraisal with Ms. Tamaro by email on May 11, 2017.

12      30.    The C&W appraisal acknowledged that "the subject is located within the Tacoma

13  Smelter Plume due to the airborne deposition of ash from the former Asarco smokestack in

14  nearby Ruston," and that the appraiser had been provided with a "Phase I Environmental Site

15  Assessment dated November 28, 2001 prepared by Surveys Inc. of Renton, WA."  The C&W

16  appraisal further stated that "[d]iscussions with brokers active in the Pierce County market

17  indicate that sales of multifamily properties in the subject's general vicinity are not being

18  adversely impacted by the Tacoma Smelter Plume."

19      31.    The conclusions in the C&W appraisal regarding the value of the Hidden Hills

20  Apartment Complex and the lack of any material adverse impact on pricing due to historical

21  environmental contamination were borne out by a broker's opinion of value ("BOV") that HHM

22  commissioned shortly after receiving the C&W appraisal from AMTAX.  Indeed, the BOV that

23  HHM commissioned arrived at a value for the Hidden Hills Apartment Complex that, at its

24  midpoint, was $600,000 *higher* than the appraised value reflected in the C&W appraisal.

25      32.    Rather than simply accepting the C&W appraisal, however, HHM secretly

26  hatched a three-part scheme to depress the fair market value of the Hidden Hills Apartment

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 14

Complex in order to reduce the price it would have to pay AMTAX for its interest in the Partnership.

33.  First, HHM hid the BOV that it had commissioned from its own appraiser, and improperly influenced the appraisal process by purporting to advise its appraiser that potential buyers would need to engage in environmental remediation in order to obtain financing.

34.  On June 19, 2017, Ms. Tamaro sent a letter to Mr. Blake, enclosing an appraisal report obtained by HHM from CBRE (the "CBRE report").  Ms. Tamaro acknowledged in her letter that she was attempting to obtain new financing for the property, and that her ability to do so was contingent on environmental remediation that the Partnership was not otherwise obligated to undertake.

35.  The CBRE report assessed the value of the Property at $14,050,000.  The CBRE report noted that it had reduced the fair value determination based on the appraiser's claim that "it is likely that a potential buyer would require the site to be cleaned prior to sale."

36.  Second, HHM solicited unnecessary environmental reports and irrelevant remediation cost estimates to help HHM achieve its objective of artificially depressing the fair market value of the Hidden Hills Apartment Complex.  HHM, for example, unilaterally commissioned Environmental Partners, Inc., an environmental consulting company, to prepare a "Technical Memorandum," dated August 8, 2017, that purported to provide an estimate of environmental remediation costs for the Hidden Hills Apartment Complex totaling $3,760,450, including "a 50 percent contingency of $1,220,150 for unknown or changed conditions."

37.  By soliciting new reports and memoranda on historical environmental issues that the Partnership is under no obligation to address, HHM's actions threaten to have a material adverse impact on the value of the Hidden Hills Apartment Complex to the economic detriment of both AMTAX and the Partnership.

38.  Third, HHM secretly selected and communicated with a third appraiser while falsely assuring AMTAX that it was interested in AMTAX's proposal that the Partnership list the

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 15

1   Hidden Hills Apartment Complex for sale in order to let the market determine its fair value.

2   These actions not only confirm HHM's ill intent, but were taken in direct contravention of the

3   procedure set forth in Section 7.4.J of the LPA, which requires the two previously selected

4   appraisers—not HHM—to appoint the third appraiser.

5   39.     On August 11, 2017, HHM's counsel wrote a letter to AMTAX's counsel stating

6   that Ms. Tamaro would seriously consider AMTAX's request that the Partnership market the

7   Property, and acknowledging that "disclosure and marketing will tell us" the fair market value of

8   the Property.

9   40.     Despite reassuring AMTAX's counsel on multiple occasions that HHM remained

10  interested in marketing the property in lieu of continuing with the appraisal process, HHM's

11  counsel informed AMTAX's counsel on September 22, 2017 that Ms. Tamaro had taken steps to

12  select a third appraiser without informing AMTAX.

13  41.     Email correspondence subsequently forwarded to AMTAX confirms that, despite

14  his assurances to the contrary to AMTAX's counsel, HHM's counsel was aware as early as

15  September 6, 2017 that Ms. Tamaro sought to return to the appraisal process.  The email

16  correspondence also confirms that, contrary to the requirement in Section 7.4.J, it was Ms.

17  Tamaro, and *not* the party's respective appraisers, who appointed the third appraiser.

18

19  ### *AMTAX Removes HHM Based on HHM's Breaches of its General Partner Obligations*

20  42.     On October 23, 2017, HHM transmitted a copy of a new appraisal report prepared

21  by Colliers International Valuation and Advisory Services (the "Colliers report"), along with the

22  August 8, 2017 "Technical Memorandum," which is referred to and relied on in the Colliers

23  report.  The Technical Memorandum included a cost estimate of nearly $3.8 million to perform

24  environmental remediation, and the Colliers report deducted that entire amount—including "a 50

25  percent contingency of $1,220,150" based solely on "unknown or changed conditions"—from its

26  fair market value conclusion.  The Colliers report claimed that this deduction was appropriate

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 16

1    because, according to the appraiser, "[l]enders would only provide a loan for the subject if either

2    the contamination was remediated by the owner before funding of a loan, or a plan is provided to

3    remediate the site within the first year or two of the loan, or the owner would set up an escrow

4    account and deposit money equivalent to the estimated remediation costs to cover the potential

5    remediation of the contamination."

6         43.    On November 3, 2017, AMTAX's counsel sent a letter to HHM's counsel

7    notifying HHM that AMTAX formally objected to the use of the Colliers report in determining

8    the fair market value of the Property for purposes of Section 7.4.J of the LPA.  AMTAX's

9    objection was based on HHM's improper efforts to influence what is supposed to be an

10   independent appraisal process for its own pecuniary benefit as described above, including but not

11   limited to its secret and unilateral selection of the purported third appraiser in violation of

12   Section 7.4.J of the LPA.

13        44.    HHM's conduct was intended solely to suppress fair market value in order to

14   reduce the price that HHM would need to pay to divest AMTAX of its interest in the Partnership.

15   Indeed, HHM has not made any commitment to perform the environmental remediation reflected

16   in the Technical Memorandum following its purchase of AMTAX's interest, and a review of the

17   website for the State of Washington's Department of Ecology confirms that HHM has not even

18   placed the Property on the lengthy waiting list for the Voluntary Cleanup Program under which

19   the proposed remediation would supposedly be undertaken.

20        45.    On November 14, 2017, HHM initiated this action, which seeks to force AMTAX

21   to sell its interest in the Partnership for $531,748.00, a price that is millions of dollars less than

22   what HHM would have to pay under the independent appraisal process contemplated by Section

23   7.4.J of the LPA.

24        46.    The Option price that HHM demands in its Complaint is incorrect because it is

25   based on the appraised value in the Colliers report that HHM improperly commissioned and

26   manipulated to its advantage.

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 17

47.     The Option Price is also incorrect because HHM did not properly apply the distribution formula set forth in Section 6.2(B) of the LPA.  Indeed, HHM's counsel sent a letter to AMTAX's counsel on December 18, 2017 conceding that the $531,748.00 Option price alleged in HHM's Complaint was based on an erroneous application of the distribution formula, and that AMTAX's interest in the Partnership was worth more than one million dollars.  While this admission does not resolve either the primary dispute over what appraised value should be used to determine the Option price or other disagreements about how the distribution formula in Section 6.2.B operates, HHM presumably will be required to conform its pleading to be consistent with its admission that the Option price alleged in the Complaint was based on a miscalculation.

48.     On November 30, 2017, AMTAX sent a letter notifying HHM that it was exercising its right under Section 4.5(A)(iv)(2) of the LPA to remove HHM as a General Partner of the Partnership based on material breaches by HHM of its contractual and fiduciary duties that could "reasonably be expected to cause economic detriment to the Partnership or to the Project" (the "Removal Notice").  AMTAX explained in the Removal Notice that HHM had violated Section 7.4.J of the LPA by:  (a) improperly influencing what is supposed to be an independent appraisal process in an effort to depress the appraised value of the Hidden Hills Apartment Complex and thereby reduce the price HHM would have to pay to exercise its Option to purchase AMTAX's interest in the Partnership; and (b) secretly hiring a third appraiser in violation of the selection provisions of Section 7.4.J while falsely representing to AMTAX that it remained interested in AMTAX's proposal to abandon the tainted appraisal process and instead determine fair market value the traditional way (i.e., by listing and marketing the property for sale).  The Removal Notice further stated that HHM compounded its breach by initiating this lawsuit, in which HHM improperly seeks to force AMTAX to sell its interest in the Partnership at a price that even HHM now admits is lower than the price to which AMTAX is contractually

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 18

1   entitled.  The Removal Notice designated AMTAX's affiliate Saugatuck, LLC as the

2   Partnership's replacement General Partner.

3        49.    On December 14, 2017, AMTAX removed this action to this Court.

4   **CLAIMS FOR RELIEF**

5   **FIRST CLAIM FOR RELIEF**

6   **(Breach of Contract)**

7        50.    AMTAX realleges and incorporates by reference each and every allegation set

8   forth above.

9        51.    AMTAX and HHM are parties to the LPA.

10        52.    AMTAX has substantially performed its obligations under the LPA.

11        53.    HHM breached the LPA by, among other things:

12        (a) improperly influencing the independent appraisal process set forth in Section 7.4.J of

13   the LPA in an effort to depress the appraised value of the Project and thereby reduce the price it

14   would have to pay to purchase AMTAX's interest in the Partnership;

15        (b) secretly hiring a third appraiser in violation of the selection provision of Section 7.4.J

16   while falsely representing to AMTAX that it remained interested in AMTAX's proposal to

17   abandon the tainted appraisal process and instead determine fair market value by listing and

18   marketing the Hidden Hills Apartment Complex for sale; and

19        (c) bringing a lawsuit that improperly seeks to compel AMTAX to sell its interest in the

20   Partnership for a price that HHM now admits is too low and that is millions of dollars lower than

21   the price AMTAX would be entitled to had HHM properly exercised its Option under Section

22   7.4.J.

23        54.    As a direct and proximate result of HHM's conduct, AMTAX has suffered

24   damages and may suffer additional damages in the future.  The exact amount of such damages is

25   presently unknown, but is well in excess of $1 million.

26

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 19

**SECOND CLAIM FOR RELIEF**

**(Breach of Fiduciary Duty)**

55.     AMTAX realleges and incorporates by reference each and every allegation set forth above.

56.     As a General Partner of the Partnership, HHM owes fiduciary duties to the Partnership and to AMTAX as the Partnership's Investor Limited Partner, including the duties of loyalty, care, good faith, and fair dealing.

57.     HHM breached its fiduciary duties to AMTAX and the Partnership by subordinating the interests of the Partnership and AMTAX to its own interests, and by taking action on behalf of the Partnership in order to derive an improper benefit for themselves.

58.     As a direct and proximate result of HHM's conduct, AMTAX has suffered damages and may suffer additional damages in the future.  The exact amount of such damages is presently unknown, but is well in excess of $1 million.

**THIRD CLAIM FOR RELIEF**

**(Declaratory Judgment: Option Price)**

59.     AMTAX realleges and incorporates by reference each and every allegation set forth above.

60.     HHM is a General Partner of the Partnership.

61.     AMTAX is the Investor Limited Partner of the Partnership.

62.     A dispute has arisen between AMTAX and HHM regarding the price HHM must pay to purchase AMTAX's interest in the Partnership pursuant to Section 7.4.J of the LPA.

63.     AMTAX is entitled to a determination that (1) HHM does not have a right to purchase AMTAX's interest in the Partnership for $531,748.00; (2) the appraisal process—including but not limited to HHM's secret selection of Colliers as the third appraiser—was conducted in a manner that was inconsistent with the requirements of Section 7.4.J of the LPA;

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   and (3) the Colliers report is not and cannot be considered the "final and binding" appraisal for

2   purposes of calculating the Option price under Section 7.4.J.

3                          **FOURTH CLAIM FOR RELIEF**

4                          **(Declaratory Judgment: Removal)**

5        64.    AMTAX realleges and incorporates by reference each and every allegation set

6   forth above.

7        65.    HHM is a General Partner of the Partnership.

8        66.    AMTAX is the Investor Limited Partner of the Partnership.

9        67.    A dispute has arisen between AMTAX and HHM regarding AMTAX's removal

10   of HHM as a General Partner of the Partnership in accordance with Section 4.5(a)(iv) of the

11   LPA.

12       68.    AMTAX is entitled to a determination that HHM has been removed as the

13   Partnership's Administrative General Partner, and is obliged to cooperate fully with the transfer

14   of Administrative General Partner responsibilities to AMTAX's affiliate, Saugatuck, LLC.

15                          **FIFTH CLAIM FOR RELIEF**

16                      **(Declaratory Judgment: Duty to Indemnify)**

17       69.    AMTAX realleges and incorporates by reference each and every allegation set

18   forth above.

19       70.    The Environmental Indemnity Agreement requires HHM to indemnify AMTAX

20   and hold AMTAX harmless from and against environmental liabilities, which include any and all

21   costs, loss, expense, and/or damage arising from, as a result of, or relating to any hazardous

22   substance, hazardous substance activity, or violation of environmental laws.

23       71.    A dispute has arisen between AMTAX and HHM regarding the price HHM must

24   pay to purchase AMTAX's interest in the Partnership pursuant to Section 7.4.J of the LPA, and

25   whether this price should be reduced to account for environmental remediation costs.

26

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 21

72.     According to HHM, environmental remediation is necessary to address elevated concentrations of lead and arsenic in the soil beneath the Hidden Hills Apartment Complex.

73.     The Environmental Indemnity Agreement defines "hazardous substances" to include arsenic and lead.

74.     If the price that HHM must pay to purchase AMTAX's interest in the Partnership is reduced to account for the environmental condition of the Property and/or any actual or projected environmental remediation costs, AMTAX is entitled to a determination that HHM has a duty to indemnify AMTAX for the loss that AMTAX suffers as a result of any such reduction in price, pursuant to the Environmental Indemnity Agreement.

### PRAYER FOR RELIEF

WHEREFORE, AMTAX respectfully requests:

1. A declaratory judgment that (1) HHM does not have a right to purchase AMTAX's interest in the Partnership for $531,748.00; (2) the appraisal process—including but not limited to HHM's secret selection of Colliers as the third appraiser—was conducted in a manner that was inconsistent with the requirements of Section 7.4.J of the LPA; and (3) the Colliers report is not and cannot be considered the "final and binding" appraisal for purposes of calculating the Option price under Section 7.4.J.

2. A declaratory judgment that HHM has been removed as a General Partner of the Partnership pursuant to AMTAX's rights under 4.5(A)(iv) of the LPA.

3. A declaratory judgment that, if the price that HHM must pay to purchase AMTAX's interest in the Partnership is reduced to account for the environmental condition of the Property and/or any actual or projected environmental remediation costs, HHM must indemnify AMTAX for any loss that AMTAX suffers from such a reduction in price;

4. Damages in accordance with proof;

5. Interest on the amounts awarded at the legal rate;

6. Costs of the suit herein; and

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

7.  Such other relief as the Court deems just and proper.

DATED:  April 30, 2018

By: /s/ Steven D. Merriman
David J. Burman, WSBA #10611
Steven D. Merriman, WSBA #44035
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:  DBurman@perkinscoie.com
          SMerriman@perkinscoie.com

Christopher G. Caldwell (admitted *pro hac vice*)
Eric S. Pettit (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
725 S. Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Telephone:  (213) 629-9040
Facsimile:  (213) 629-9022
Email:  ccaldwell@bsfllp.com
          epettit@bsfllp.com

Attorneys for Defendant and Counter-Plaintiff
AMTAX Holdings 114, LLC

FIRST AMENDED ANSWER AND
COUNTERCLAIMS – 23

1

**CERTIFICATE OF SERVICE**

2          On April 30, 2018, I caused to be served upon the below named counsel of record, at the

3   address stated below, via the method of service indicated, a true and correct copy of the

4   foregoing document.

5

| | |
|---|---|
| David R. Goodnight<br>Rita V. Latsinova<br>J. Scott Pritchard<br>Stoel Rives LLP<br>600 University Street, Suite 3600<br>Seattle, WA 98101<br>Phone: (206) 624-0900<br>Facsimile: (206) 386-7500<br>Email: david.goodnight@stoel.com<br>Email: rita.latsinova@stoel.com<br>Email: scott.pritchard@stoel.com | __X__ Via the Clerk's eFiling Application<br>_____ Via hand delivery<br>_____ Via U.S. Mail, 1st Class,<br>        Postage Prepaid<br>_____ Via Overnight Delivery<br>_____ Via Facsimile<br>_____ Via Email |

6

7

8

9

10

11

12          I certify under penalty of perjury under the laws of the State of
13   Washington that the foregoing is true and correct.

14          EXECUTED at Seattle, Washington, on April 30, 2018.

15

16                    /s/ Steven D. Merriman
                      Steven D. Merriman

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE – 1