1

The Honorable Ronald B. Leighton

2

3

4

5

6

7

8        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                   AT TACOMA

10   HIDDEN HILLS MANAGEMENT, LLC,          No. 3:17-cv-06048-RBL
     and 334TH PLACE 2001, LLC
11                                          AMTAX HOLDINGS 114, LLC AND
                    Plaintiffs,             AMTAX HOLDINGS 169, LLC'S ANSWER
12                                          TO AMENDED AND SUPPLEMENTED
          v.                                COMPLAINT AND VERIFIED
13                                          COUNTERCLAIMS
     AMTAX HOLDINGS 114, LLC , and
14   AMTAX HOLDINGS 169, LLC

15                  Defendants.

16
     AMTAX HOLDINGS 114, LLC, AMTAX
17   HOLDINGS 169, LLC, and PARKWAY
     APARTMENTS, LP
18
                    Counter-Plaintiffs,
19
          v.
20
     HIDDEN HILLS MANAGEMENT, LLC,
21   and 334TH PLACE 2001, LLC

22                  Counter-Defendants.

23

24        Pursuant to Rules 8(b) and 81(c)(2) of the Federal Rules of Civil Procedure, Defendants

25   AMTAX Holdings 114, LLC ("AMTAX 114") and AMTAX Holdings 169, LLC ("AMTAX

26   169") hereby answer the allegations directed at each of them by Plaintiffs Hidden Hills

AMTAX 114 AND AMTAX 169'S                              **Perkins Coie LLP**
ANSWER AND COUNTERCLAIMS                         1201 Third Avenue, Suite 4900
No. 3:17-cv-06048-RBL – 1                          Seattle, WA  98101-3099
                                                   Phone:  206.359.8000
                                                   Fax:  206.359.9000

1   Management, LLC ("HHM") and 334th Place 2001, LLC ("334th Place") in the Amended and

2   Supplemented Complaint ("Complaint") filed on May 31, 2018 in this Court.  As to allegations

3   not alleged against a Defendant, no responsive pleading is required and those allegations should

4   be considered denied as provided by Rule 8(b)(6) of the Federal Rules of Civil Procedure.  By

5   this pleading, AMTAX 114 and AMTAX 169 also assert verified counterclaims against HHM

6   and 334th Place as set forth below.

7   ## ANSWER TO COMPLAINT

8   1.      AMTAX 114 admits the allegations in the first sentence of Paragraph 1.

9   Responding to the second sentence of Paragraph 1, AMTAX 114 states that the purpose of

10   Hidden Hills 2001, a Washington Limited Partnership (the "Hidden Hills Partnership"), is

11   described in Section 2.3 of the limited partnership agreement governing the Hidden Hills

12   Partnership (the "Hidden Hills LPA"), and AMTAX 114 denies any characterization of the

13   purpose of the Hidden Hills Partnership that is inconsistent with Section 2.3 of the Hidden Hills

14   LPA.

15   2.      Responding to Paragraph 2, AMTAX 114 admits that HHM is a Washington

16   limited liability company with its principal place of business in Mercer Island, Washington, and

17   that, prior to its removal on November 30, 2017, HHM was the Administrative General Partner

18   of the Hidden Hills Partnership.  Except as expressly admitted herein, AMTAX 114 denies each

19   and every allegation contained in Paragraph 2.

20   3.      Responding to Paragraph 3, AMTAX 114 admits that it is an Ohio limited

21   liability company, and that it is the Hidden Hills Partnership's Investor Limited Partner.  Except

22   as expressly admitted herein, AMTAX 114 denies each and every allegation contained in

23   Paragraph 3.

24   4.      AMTAX 114 denies the allegations in Paragraph 4, and states that the Hidden

25   Hills Partnership's current Special Limited Partner is non-party Tax Credit Holdings III, LLC.

26   5.      AMTAX 114 admits the allegations in Paragraph 5.

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1       6.      AMTAX 169 admits the allegations in the first sentence of Paragraph 6.

2  Responding to the second sentence of Paragraph 6, AMTAX 169 states that the purpose of

3  Parkway Apartments, LP, a Washington Limited Partnership (the "Parkway Partnership"), is

4  described in Section 2.3 of the limited partnership agreement governing the Parkway Partnership

5  (the "Parkway LPA"), and AMTAX 169 denies any characterization of the purpose of the

6  Parkway Partnership that is inconsistent with Section 2.3 of the Parkway LPA.

7       7.      Responding to Paragraph 7, AMTAX 169 admits that 334th Place is a

8  Washington limited liability company with its principal place of business in Mercer Island,

9  Washington, and that, prior to its removal on July 2, 2018, 334th Place was the Administrative

10  General Partner of the Parkway Partnership.  Except as expressly admitted herein, AMTAX 169

11  denies each and every allegation contained in Paragraph 7.

12       8.      Responding to Paragraph 8, AMTAX 169 admits that it is an Ohio limited

13  liability company, and that it is the Parkway Partnership's Investor Limited Partner.  Except as

14  expressly admitted herein, AMTAX 169 denies each and every allegation contained in Paragraph

15  8.

16       9.      Responding to Paragraph 9, AMTAX 169 admits that the Parkway Partnership's

17  current Special Limited Partner is non-party TCH II Pledge Pool, LLC.

18       10.     AMTAX 169 admits the allegations in Paragraph 10.

19       11.     Paragraph 11 contains legal conclusions and argument to which no response is

20  required.  To the extent that Paragraph 11 contains factual allegations to which a response is

21  required, AMTAX 114 and AMTAX 169 admit such allegations.

22       12.     Paragraph 12 contains legal conclusions and argument to which no response is

23  required.  To the extent that Paragraph 12 contains factual allegations to which a response is

24  required, AMTAX 114 and AMTAX 169 admit such allegations.

25

26

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

13.     Paragraph 13 contains legal conclusions and argument to which no response is required.  To the extent that Paragraph 13 contains factual allegations to which a response is required, AMTAX 114 and AMTAX 169 admit such allegations.

14.     AMTAX 114 denies the allegations in the first sentence of Paragraph 14, and further responds that, as explained in detail in AMTAX 114's counterclaims, HHM improperly seeks by its Complaint to compel AMTAX 114 to sell its interest in the Hidden Hills Partnership at a price that is substantially lower than the price HHM would have to pay if it properly exercised its "Option" under Section 7.4.J of the Hidden Hills LPA.  Responding to the second sentence of Paragraph 14, AMTAX 114 states that Section 7.4.J of the Hidden Hills LPA speaks for itself, and denies any characterization inconsistent with its terms.

15.     Responding to the first and third sentences of Paragraph 15, AMTAX 114 states that Section 7.4.J of the Hidden Hills LPA speaks for itself, and denies any characterization inconsistent with its terms.  AMTAX 114 admits the allegations in the second sentence of Paragraph 15.

16.      Responding to the first sentence of Paragraph 16, AMTAX 114 states that Section 7.4.J of the Hidden Hills LPA speaks for itself, and denies any characterization inconsistent with its terms.  Responding to the second sentence of Paragraph 16, AMTAX 114 admits that it received a letter dated March 14, 2017 that purported to notify AMTAX 114 that HHM was exercising its "Option" as provided in Section 7.4.J of the Hidden Hills LPA.  Except as expressly admitted herein, AMTAX 114 denies each and every allegation contained in Paragraph 16.

17.     Responding to Paragraph 17, AMTAX 114 states that Section 7.4.J of the Hidden Hills LPA speaks for itself, and denies any characterization inconsistent with its terms.

18.     Responding to the first sentence of Paragraph 18, AMTAX 114 states that Section 7.4.J of the Hidden Hills LPA speaks for itself, and denies any characterization inconsistent with its terms.  AMTAX 114 admits in response to the remainder of Paragraph 18 that the Hidden

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    Hills Apartment Complex is located in University Place, Washington, but otherwise lacks

2    sufficient knowledge or information to form a belief concerning the truth of any factual

3    allegations contained therein, and on that basis denies such allegations.

4          19.    AMTAX 114 denies the allegations in the first sentence of Paragraph 19.

5    AMTAX 114 lacks sufficient knowledge or information to form a belief concerning the truth of

6    any factual allegations contained in the remainder of Paragraph 18, and on that basis denies such

7    allegations.

8          20.    AMTAX 114 denies the allegations in Paragraph 20.

9          21.    AMTAX 114 admits the allegations in Paragraph 21.

10         22.    Responding to Paragraph 22, AMTAX 114 admits that CBRE's report dated June

11   7, 2017 valued the Hidden Hills Apartment Complex at $14,050,000, but lacks sufficient

12   knowledge or information to form a belief concerning the basis for CBRE's valuation, which

13   was more than seven million dollars lower than the valuation CBRE provided in a broker's

14   opinion of value ("BOV") that HHM commissioned but subsequently hid from both AMTAX

15   114 and its own appraiser at CBRE.  Except as expressly admitted herein, AMTAX 114 denies

16   each and every allegation contained in Paragraph 22.

17         23.    AMTAX 114 admits the allegations in Paragraph 23.

18         24.    Responding to the first sentence of Paragraph 24, AMTAX 114 admits that HHM

19   improperly attempted to influence what was supposed to be an independent appraisal process by

20   distracting the appraisers with irrelevant information that purportedly related to environmental

21   contamination, and by hiding material information, including a BOV that CBRE provided at

22   HHM's request, which provided an opinion of the value of the Hidden Hills Apartment Complex

23   that, at its midpoint, was $7,250,000 million (52%) higher than the $14,050,000 value reflected

24   in the CBRE appraisal.  Responding to the second sentence of Paragraph 24, AMTAX 114

25   admits that it objected to and attempted to prevent HHM's improper efforts to depress the

26   appraised value of the property (and, by extension, the price HHM would have to pay to

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   purchase AMTAX 114's interest in the Hidden Hills Partnership).  Except as expressly admitted

2   herein, AMTAX 114 denies each and every allegation contained in Paragraph 24.

3         25.     AMTAX 114 denies the allegations in Paragraph 25.

4         26.     AMTAX 114 denies the allegations in Paragraph 26.

5         27.     Responding to Paragraph 27, AMTAX 114 admits that Cushman & Wakefield

6   issued an appraisal report on May 10, 2017 in which it concluded that the value of the Hidden

7   Hills Apartment Complex as of April 28, 2017 was $19,700,000.  Except as expressly admitted

8   herein, AMTAX 114 denies each and every allegation contained in Paragraph 27.

9         28.     AMTAX 114 denies the allegations in Paragraph 28.

10        29.     AMTAX 114 admits the allegations in the first sentence of Paragraph 29.

11   AMTAX 114 denies the allegations in the second sentence of Paragraph 29.

12        30.     Responding to Paragraph 30, AMTAX 114 admits that HHM provided Colliers

13   International ("Colliers") with certain environmental information, including estimated

14   remediation costs, but denies that the information was accurate or material to a determination of

15   the fair market value of the Hidden Hills Apartment Complex.  Except as expressly admitted

16   herein, AMTAX 114 denies each and every allegation contained in Paragraph 30.

17        31.     Responding to Paragraph 31, AMTAX 114 admits that Colliers issued its

18   appraisal report on or about October 23, 2017.  Except as expressly admitted herein, AMTAX

19   114 denies each and every allegation contained in Paragraph 31.

20        32.     Responding to Paragraph 32, AMTAX 114 admits that the October 23, 2017

21   Colliers appraisal report valued the Hidden Hills Apartment Complex at $13,500,000, and

22   purported in reaching that value conclusion to make an "extraordinary assumption" about

23   hypothetical environmental remediation costs totaling more than $3.7 million.  Except as

24   expressly admitted herein, AMTAX 114 denies each and every allegation contained in Paragraph

25   32.

26

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    33.    Responding to Paragraph 33, AMTAX 114 states that Section 7.4.J of the Hidden

2    Hills LPA speaks for itself, and denies any characterization inconsistent with its terms.

3    34.    AMTAX 114 denies the allegations in Paragraph 34.

4    35.    Responding to Paragraph 35, AMTAX 114 admits that its counsel sent a letter to

5    HHM's counsel on November 3, 2017.  AMTAX 114 states further that the November 3, 2017

6    letter speaks for itself, and denies any characterization inconsistent with its contents.  Except as

7    expressly admitted herein, AMTAX 114 denies each and every allegation contained in Paragraph

8    35.

9    36.    Responding to Paragraph 36, AMTAX 114 admits that HHM has falsely claimed

10   in this action that it is entitled to purchase AMTAX 114's interest in the Hidden Hills Partnership

11   for $1,051,856, but otherwise lacks sufficient knowledge or information to form a belief

12   concerning the truth of any factual allegations contained therein, and on that basis denies such

13   allegations.

14   37.    AMTAX 114 denies the allegations in Paragraph 37.

15   38.    Responding to Paragraph 38, AMTAX 114 and AMTAX 169 state that the

16   Parkway LPA and the Hidden Hills LPA speak for themselves, and deny any characterization

17   inconsistent with their contents.

18   39.    AMTAX 169 denies the allegations in the first sentence of Paragraph 39, and

19   further responds that, as explained in detail in AMTAX 169's counterclaims, 334th Place has

20   breached its obligations under the Parkway LPA by (a) failing to maximize Parkway Partnership

21   income; (b) paying itself and its affiliates unauthorized and/or excessive payments in excess of

22   $1.5 million; and (c) permitting the disproportionately high growth of operating expenses at the

23   Parkway Apartments.  Responding to the second sentence of Paragraph 39, AMTAX 169 states

24   that Section 7.4.J of the Parkway LPA speaks for itself, and denies any characterization

25   inconsistent with its terms.

26

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

40.     Responding to the first and third sentences of Paragraph 40, AMTAX 169 states that Section 7.4.J of the Parkway LPA speaks for itself, and denies any characterization inconsistent with its terms.  AMTAX 169 admits the allegations in the second sentence of Paragraph 40.

41.     Responding to the first sentence of Paragraph 41, AMTAX 169 states that Section 7.4.J of the Parkway LPA speaks for itself, and denies any characterization inconsistent with its terms.  Responding to the second sentence of Paragraph 41, AMTAX 169 admits that it received a letter dated January 3, 2018 that purported to notify AMTAX 169 that 334th Place was exercising its "Option" as provided in Section 7.4.J of the Parkway LPA.  Except as expressly admitted herein, AMTAX 169 denies each and every allegation contained in Paragraph 41.

42.     Responding to Paragraph 42, AMTAX 169 states that Section 7.4.J of the Parkway LPA speaks for itself, and denies any characterization inconsistent with its terms.

43.     Responding to the first sentence of Paragraph 43, AMTAX 169 admits that it received a letter dated January 3, 2018, and denies any characterization inconsistent with the terms of that letter, which speaks for itself.  Responding to the second sentence of Paragraph 43, AMTAX 169 admits that it did not respond to the January 3, 2018 letter.  Responding to the third and fourth sentences of Paragraph 43, AMTAX 169 admits that it received a letter dated February 15, 2018, and denies any characterization inconsistent with the terms of that letter, which speaks for itself.  Except as expressly admitted herein, AMTAX 169 denies each and every allegation contained in Paragraph 43.

44.     Responding to the first sentence of Paragraph 44, AMTAX 169 admits that it sent a letter to Ms. Tamaro, in her capacity as managing member of 334th Place, dated March 6, 2018.  Responding to the second and third sentences of Paragraph 44, AMTAX 169 states that its March 6, 2018 letter speaks for itself, and denies any characterization inconsistent with its terms.  AMTAX 114 denies the allegations in the fourth sentence of Paragraph 44.  Except as expressly admitted herein, AMTAX 169 denies each and every allegation contained in Paragraph 44.

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

45.      Responding to Paragraph 45, AMTAX 169 admits that it received a letter dated March 7, 2018 from 334th Place that enclosed an appraisal from CBRE, and denies any characterization inconsistent with the terms of that letter, which speaks for itself.  Except as expressly admitted herein, AMTAX 169 denies each and every allegation contained in Paragraph 45.

46.      AMTAX 169 admits the allegations in the first sentence of Paragraph 46. Responding to the second and third sentences of Paragraph 46, AMTAX 169 admits that its May 8, 2018 letter speaks for itself, and denies any characterization inconsistent with its terms. Except as expressly admitted herein, AMTAX 169 denies each and every allegation contained in Paragraph 46.

47.      AMTAX 169 denies the allegations in Paragraph 47.

48.      AMTAX 114 repeats and incorporates by reference each and every response set forth above.

49.      Paragraph 49 contains legal conclusions and argument to which no response is required.  To the extent that Paragraph 49 contains factual allegations to which a response is required, AMTAX 114 admits that a dispute has arisen regarding whether HHM has acted in accordance with the requirements of Section 7.4.J of the Hidden Hills LPA, and whether HHM has been removed as the Hidden Hills Partnership's General Partner pursuant to Section 4.5 of the Hidden Hills LPA.

50.      Paragraph 50 is a characterization of HHM's claims and requested relief, to which no response is required.

51.      Paragraph 51 contains legal conclusions and argument to which no response is required.  To the extent that Paragraph 51 contains factual allegations to which a response is required, AMTAX 114 admits such allegations.

52.      AMTAX 169 repeats and incorporates by reference each and every response set forth above.

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

53.      Paragraph 53 contains legal conclusions and argument to which no response is required.  To the extent that Paragraph 53 contains factual allegations to which a response is required, AMTAX 169 admits that a dispute has arisen regarding whether 334th Place has acted in accordance with the requirements of Section 7.4.J of the Parkway LPA, and whether 334th Place has been removed as the Parkway Partnership's General Partner pursuant to Section 4.5 of the Parkway LPA.

54.      Paragraph 54 is a characterization of 334th Place's claims and requested relief, to which no response is required.

55.      Paragraph 55 contains legal conclusions and argument to which no response is required.  To the extent that Paragraph 55 contains factual allegations to which a response is required, AMTAX 169 admits such allegations.

56.      No response is required to the remainder of the Complaint, which sets forth HHM and 334th Place's prayer for relief.  To the extent the remainder of the Complaint contains factual allegations to which a response is required, AMTAX 114 and AMTAX 169 deny each and every such allegation.

## DEFENSES

AMTAX 114 and AMTAX 169 plead the following separate and distinct defenses without conceding that they bear the burden of proof as to any of these issues.  AMTAX 114 and AMTAX 169 reserve the right to assert additional defenses that discovery indicates are proper.

### FIRST DEFENSE

### (Failure to State a Claim)

1.      The Complaint, and each cause of action alleged therein, fails to state a claim upon which relief can be granted.

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**SECOND DEFENSE**

**(Claim Barred by Contractual Terms)**

2.      The Complaint, and each cause of action alleged therein, is barred, released, waived, or otherwise precluded by the terms of the Hidden Hills LPA and the Parkway LPA alleged in the Complaint.

**THIRD DEFENSE**

**(Estoppel)**

3.      The Complaint, and each cause of action alleged therein, is barred in whole or in part by the doctrine of estoppel.

**FOURTH DEFENSE**

**(Unclean Hands)**

4.      The Complaint, and each cause of action alleged therein, is barred in whole or in part by the doctrine of unclean hands.

**FIFTH DEFENSE**

**(Waiver)**

5.      The Complaint, and each cause of action alleged therein, is barred in whole or in part by the doctrine of waiver.

**SIXTH DEFENSE**

**(Prior Breach)**

6.      The Complaint, and each cause of action alleged therein, is barred by reason of prior breaches of the Hidden Hills LPA and the Parkway LPA, upon which HHM and 334th Place base their Complaint.

WHEREFORE, having fully answered the allegations in the Complaint, AMTAX 114 and AMTAX 169 request that the Court enter an order dismissing the Complaint with prejudice and in its entirety, and awarding AMTAX 114 and AMTAX 169 all permissible costs and expenses, as well as such other relief the Court deems just and proper.

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 11

**COUNTERCLAIMS**

For its Counterclaims against Plaintiffs Hidden Hills Management, LLC ("HHM") and 334th Place 2001, LLC ("334th Place"), AMTAX Holdings 114, LLC ("AMTAX 114") and AMTAX Holdings 169, LLC ("AMTAX 169") hereby state and allege the following:

**INTRODUCTION**

1.      AMTAX 114 and AMTAX 169 bring these counterclaims to protect themselves against efforts by the principal of HHM and 334th Place, Catherine Tamaro, to exploit her control over two low-income housing tax credit ("LIHTC") partnerships in order to enrich herself at the expense of the partnerships and their investor limited partners.

2.      AMTAX 114 is the Investor Limited Partner of Hidden Hills 2001, L.P. (the "Hidden Hills Partnership"), a LIHTC limited partnership formed exclusively to develop, own, operate, and ultimately dispose of an affordable housing development in University Place, Washington (the "Hidden Hills Apartment Complex").  The Hidden Hills Partnership is governed by an Amended and Restated Agreement of Limited Partnership (the "Hidden Hills LPA"), which is attached hereto as Exhibit A.  Until November 30, 2017, HHM was a General Partner of the Hidden Hills Partnership.

3.      HHM initiated an action on November 14, 2017 that seeks to compel AMTAX 114 to sell its interest in the Hidden Hills Partnership at a price that is millions of dollars less than fair market value.  As explained below, HHM's lawsuit is the culmination of a scheme to improperly influence and, ultimately, to ignore the independent appraisal process that the Hidden Hills LPA required the parties to follow in calculating the price HHM must pay to buy AMTAX 114 out of the Hidden Hills Partnership.

4.      HHM's efforts to exploit longstanding environmental issues at the property to artificially depress the appraised value of the Hidden Hills Apartment Complex were undertaken specifically to enrich HHM at the expense of AMTAX 114 and the Hidden Hills Partnership, and

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   constituted material breaches of HHM's contractual and fiduciary duties as a General Partner of

2   the Hidden Hills Partnership.

3       5.      On the basis of this and other misconduct, on November 30, 2017, AMTAX 114

4   exercised its right under Section 4.5(A)(iv)(2) of the Hidden Hills LPA to remove HHM as a

5   General Partner of the Hidden Hills Partnership and designate its affiliate, Saugatuck, LLC, as a

6   replacement General Partner.  Although this notice is self-effectuating under the terms of the

7   Hidden Hills LPA, AMTAX 114 has not taken any non-judicial action to enforce its removal

8   rights, but instead seeks by these counterclaims, *inter alia*, to enforce those rights.  Attached

9   hereto as Exhibit B is AMTAX 114's November 30, 2017 removal notice.

10      6.      Even if HHM were entitled to exercise its Option under Section 7.4.J of the

11  Hidden Hills LPA—which it is not—HHM has a duty to indemnify AMTAX 114 for any loss

12  AMTAX 114 stands suffer by operation of Section 7.4.J of the Hidden Hills LPA as a result of

13  any reduction in appraised value based on environmental conditions.

14      7.      AMTAX 169 is the Investor Limited Partner of Parkway Apartments, LP (the

15  "Parkway Partnership"), a LIHTC limited partnership formed exclusively to develop, own,

16  operate, and ultimately dispose of an affordable housing development in Federal Way,

17  Washington (the "Parkway Apartments").  The Parkway Partnership is governed by an Amended

18  and Restated Agreement of Limited Partnership (the "Parkway LPA"), which is attached hereto

19  as Exhibit C.  Until July 2, 2018, 334th Place 2001, LLC ("334th Place") was a General Partner

20  of the Parkway Partnership.

21      8.      As explained below, 334th Place has breached the Parkway LPA because:

22  (a) 334th Place has paid itself or its affiliates more than $1.5 million in fees that were either

23  unauthorized or grossly exceeded the authorized fee amounts, violating the Parkway LPA and

24  334th Place's fiduciary duties; (b) the operating expenses of the Parkway Apartments have

25  substantially and inexplicably outpaced inflation; and (c) 334th Place has defaulted on its

26  obligation to maximize partnership income by increasing rental rates at the Parkway Apartments

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 13

to levels permitted under the LIHTC program.  334th Place's actions have resulted in substantial economic losses to the Parkway Partnership and to AMTAX 169 and thus constitute grounds for 334th Place's removal from the Parkway Partnership.

9.      On the basis of this and other misconduct, on July 2, 2018, AMTAX 169 exercised its right under Section 4.5(A)(iv)(2) of the Parkway LPA to remove 334th Place as a General Partner of the Parkway Partnership and designate its affiliate, Saugatuck, LLC, as a replacement General Partner.  Although this notice is self-effectuating under the terms of the Parkway LPA, AMTAX 169 has not taken any non-judicial action to enforce its removal rights, but instead seeks by these counterclaims, *inter alia*, to enforce those rights.  Attached hereto as Exhibit D is AMTAX 169's July 2, 2018 removal notice.

10.      In addition to direct claims, AMTAX 169 hereby asserts derivative counterclaims to recover damages suffered by the Parkway Partnership as a result of 334th Place's misconduct. AMTAX 169 may bring these claims derivatively on behalf of the Parkway Partnership because (a) AMTAX 169 was a partner in the Parkway Partnership at all times when 334th Place breached its obligations to the partnership; and (b) AMTAX 169's action against 334th Place is not a collusive one to confer jurisdiction that the Court would otherwise lack.

11.      Demanding that 334th Place pursue claims on behalf of the Parkway Partnership would have been a futile and useless act, because the wrongdoing alleged herein was perpetrated by 334th Place itself, notwithstanding its duty to place the interests of Parkway Partnership ahead of its own.

## PARTIES

12.      Defendant and Counter-Plaintiff AMTAX 114, a limited liability company incorporated in Ohio, is the Hidden Hills Partnership's Investor Limited Partner.  AMTAX 114's non-managing member is AMTAX Holdings Corporate Fund (DEL) IV, LLC ("AMTAX Fund"), a limited liability company incorporated in Delaware.  The non-managing member of

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    AMTAX Fund, in turn, is GMACCH Guaranteed TCF IV, LLC ("GMACCH IV"), a limited

2    liability company incorporated in Delaware.

3        13.    Tax Credit Holdings III, LLC ("TCH III"), a limited liability company

4    incorporated in Delaware, is the Hidden Hills Partnership's Special Limited Partner.  TCH III, a

5    non-party to this lawsuit, is the non-member manager of AMTAX 114, the managing member of

6    AMTAX Fund, and the sole member of GMACCH IV.  TCH III's sole member is Alden Pacific

7    Holdings, LLC ("Alden Pacific"), a limited liability company incorporated in Delaware.  Alden

8    Pacific's sole member, in turn, is Alden Torch Financial LLC ("Alden Torch"), a limited liability

9    company incorporated in Delaware with its principal place of business in Denver, Colorado.

10   Alden Torch has four individual members, three of whom are domiciled in Colorado.  The fourth

11   individual member of Alden Torch is domiciled in Massachusetts.

12       14.    To the extent that AMTAX 114, AMTAX Fund, GMACCH IV, TCH III, or

13   Alden Pacific has a principal place of business, the principal place of business for each of these

14   entities is Denver, Colorado.

15       15.    Plaintiff and Counter-Defendant HHM is a limited liability company incorporated

16   in the State of Washington with its principal place of business in Mercer Island, Washington.  On

17   information and belief, any members of HHM are incorporated in the State of Washington and

18   maintain their principal places of business in the State of Washington.  Based on a reasonable

19   review of publicly available information, neither HHM nor any of its members is a citizen of

20   Colorado, Delaware, Massachusetts, or Ohio.

21       16.    Defendant and Counter-Plaintiff AMTAX 169, a limited liability company

22   incorporated in Ohio, is the Parkway Partnership's Investor Limited Partner.  AMTAX 169's

23   sole member is GAHTCF Holdings, LLC ("GAHTCF"), a limited liability company

24   incorporated in Delaware.  GAHTCF's members, in turn, are GMACCH Guaranteed TCF IX,

25   LLC ("GMACCH IX"), a limited liability company incorporated in Delaware, and Omena, LLC

26   ("Omena"), a limited liability company incorporated in Nevada.  GMACCH IX's sole member is

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Omena.  Omena's sole member is Alden Pacific, which is incorporated in Delaware.  Alden Pacific's sole member, in turn, is Alden Torch, which is incorporated in Delaware and has its principal place of business in Denver, Colorado.  Alden Torch has four individual members, three of whom are domiciled in Colorado.  The fourth individual member of Alden Torch is domiciled in Massachusetts.

17.     TCH II Pledge Pool, LLC ("TCH II Pledge Pool") is the Parkway Partnership's Special Limited Partner.  TCH II Pledge Pool, a non-party to this lawsuit, is a limited liability company incorporated in Delaware.  TCH II Pledge Pool's sole member is Tax Credit Holdings II, LLC ("TCH II"), a limited liability company incorporated in Delaware.  TCH II's sole member is Alden Pacific, which is incorporated in Delaware.  As described above, Alden Pacific's sole member, in turn, is Alden Torch, which is incorporated in Delaware and has its principal place of business in Denver, Colorado.  Alden Torch has four individual members, three of whom are domiciled in Colorado.  The fourth individual member of Alden Torch is domiciled in Massachusetts.

18.     To the extent that AMTAX 169, GAHTCF, GMACCH IX, Omena, Alden Pacific, TCH II Pledge Pool, or TCH II has a principal place of business, the principal place of business for each these entities is Denver, Colorado.

19.     Plaintiff and Counter-Defendant 334th Place is a limited liability company incorporated in the State of Washington with its principal place of business in Mercer Island, Washington.  On information and belief, any members of 334th Place are incorporated in the State of Washington and maintain their principal places of business in the State of Washington.  Based on a reasonable review of publicly available information, neither 334th Place nor any of its members is a citizen of Colorado, Delaware, Massachusetts, Nevada, or Ohio.

20.     Counter-Plaintiff Parkway Apartments, LP (the "Parkway Partnership") is a limited partnership incorporated in Washington.  Prior to its removal on July 2, 2018, 334th Place was the Parkway Partnership's Administrative General Partner.  AMTAX 169 is the

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 16

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   Parkway Partnership's Investor Limited Partner.  TCH II is the Parkway Partnership's Special

2   Limited Partner.

3                                    **JURISDICTION AND VENUE**

4          21.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and

5   1367.

6          22.     These counterclaims seek declaratory relief pursuant to Rule 57 of the Federal

7   Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, which grant this Court authority to

8   declare the rights and other legal relations surrounding questions of actual controversy that exist

9   between AMTAX 114 and HHM and between AMTAX 169 and 334th Place.

10         23.     Venue is proper in the United States District Court for the Western District of

11  Washington under 28 U.S.C. § 1391 because the Hidden Hills Apartment Complex and the

12  Parkway Apartments are located in this District, and because the parties have agreed to venue

13  and personal jurisdiction in this District.

14                                          **FACTS**

15         ***The LIHTC Program***

16         24.     Congress passed the LIHTC provisions in Section 42 of the Internal Revenue

17  Code ("Section 42") in order to promote private investment in the development of affordable

18  housing.  Section 42 permits investors who commit capital to developing and operating

19  affordable housing projects to earn tax credits generated by those projects, as well as tax

20  deductions arising out of any depreciation of the investor's capital account and other benefits

21  attendant to their ownership interests.

22         25.     LIHTC investments are typically structured as a limited partnership between an

23  investor limited partner, who provides the necessary capital, and a general partner, who is

24  responsible for developing and operating the project (and earns substantial fees for doing so).

25         26.     LIHTC partnership agreements, like the one at issue here, often contain

26  provisions giving the various partners certain rights to affect a disposition of the partnership

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   following the end of the fifteen-year Compliance Period in which the tax credits are fully earned

2   and retained.  These provisions can include options to purchase, forced sale rights, and rights of

3   first refusal.

4          27.     Partnership agreements for LIHTC partnerships contain provisions designed to

5   protect the limited partners' capital investment.  These provisions expressly spell out that the

6   general partner owes a fiduciary duty to protect the interests of the limited partners and confer on

7   investor limited partners rights to remove general partners based on material breaches of

8   contractual or fiduciary duties.

9          ***The Hidden Hills Dispute***

10             ***The Hidden Hills Partnership***

11          28.     The Hidden Hills Partnership is a Washington State LIHTC limited partnership

12   created for the purpose of developing, owning, operating, and ultimately disposing of the Hidden

13   Hills Apartment Complex.  The Hidden Hills Partnership and the respective rights and

14   obligations of its partners, including AMTAX 114 and HHM, are governed by the Hidden Hills

15   LPA.

16          29.     As Investor Limited Partner, AMTAX 114 made substantial capital contributions

17   to the Hidden Hills Partnership in connection with the development and operation of the Hidden

18   Hills Apartment Complex, and holds an ownership interest in the Hidden Hills Partnership that

19   exceeds ninety-nine percent (99%).

20          30.     Section 7.4.J of the Hidden Hills LPA grants the Hidden Hills Partnership's

21   Managing General Partner an option during the twenty-four month period following the end of

22   the Compliance Period to purchase the Interest of the Investor Limited Partner (the "Option").

23          31.     Section 7.4.J further provides: "In the event the Managing General Partner

24   exercises the Option, it must pay to the Investor Limited Partner the Option Price (as defined

25   herein) in cash.  The Option Price shall equal the greater of (i) the fair market value of the

26   Interest, without offset for any lack of control or inability to control management of the Investor

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 18

1    Limited Partner, (Fair Market Value shall be determined by two independent MAI appraisers:

2    one selected by the Managing General Partner and one by the Investor Limited Partner.  If such

3    appraisers are unable to agree on the value, they shall jointly appoint a third independent MAI

4    appraiser whose determination shall be final and binding), or (ii) an amount determined by the

5    Partnership Accountants, which is sufficient to pay (a) all outstanding indebtedness secured by

6    the Apartment Complex and (b) distribute to the Investment Company cash proceeds sufficient

7    to enable the Investment Company to pay, on an after tax basis, any taxes projected to be

8    imposed on the Investment Company as a result of the sale pursuant to the Option."

9    32.    Section 6.2(B) of the Hidden Hills LPA provides the method for distributing

10    proceeds from a sale of the Hidden Hills Apartment Complex.

11    33.    Section 4.5(A)(iv)(2) of the Hidden Hills LPA permits AMTAX 114, as the

12    Investor Limited Partner, to remove HHM as a General Partner based, *inter alia*, on material

13    violations of the Hidden Hills LPA.

14    34.    Sections 7.4.F and 7.4.G of the Hidden Hills LPA impose on HHM fiduciary

15    duties to the Hidden Hills Partnership and to AMTAX 114 as Investor Limited Partner.

16    35.    Upon the formation of the Hidden Hills Partnership, and in consideration for

17    AMTAX 114's admission and capital contributions to the Hidden Hills Partnership, HHM and

18    AMTAX 114 entered into an Environmental Indemnity and ADA Compliance Agreement

19    ("Environmental Indemnity Agreement"), which is attached hereto as Exhibit E.

20    36.    Pursuant to the Environmental Indemnity Agreement, HHM agreed to serve as the

21    Indemnitor and must indemnify AMTAX 114 and hold AMTAX 114 harmless "from and against

22    any and all claims, costs, litigation, proceedings, investigations, loss, damage, liability, fine,

23    penalty, assessment or expense, and/or loss, or deferment or delay of distributions from Hidden

24    Hills to [AMTAX 114] (collectively referred to as 'Environmental Liability') arising from, or as

25    a result of, or relating to, any Hazardous Substance, Hazardous Substance Activity or violation

26    of Environmental Laws . . . , on the, or adversely affecting the, Property."

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 19

*HHM Fails to Observe the Independent Appraisal Process Set Forth in the Hidden Hills LPA*

37.     On March 14, 2017, Ms. Tamaro sent a letter to AMTAX 114 that purported to exercise HHM's Option to purchase AMTAX 114's interest in the Hidden Hills Partnership, thereby triggering the independent appraisal provisions of Section 7.4.J of the Hidden Hills LPA.

38.     Ms. Tamaro acknowledged in her March 14, 2017 letter that it would be improper for either party to "instruct its appraiser as to a desired valuation."  Contrary to that very principle, however, Ms. Tamaro insisted in the same letter that "[t]he cost of remediating the property's environmental liability must be included in the valuation."

39.     AMTAX 114, through its agent Chris Blake, affirmatively objected to HHM's attempt to undermine the independence of the appraisal process by imposing conditions on the valuation, and expressed concern that HHM's actions were intended to depress the appraised value and thereby reduce the price that HHM would have to pay to purchase AMTAX 114's interest in the Hidden Hills Partnership.

40.     AMTAX 114 nevertheless complied with its obligation under Section 7.4.J. of the Hidden Hills LPA and obtained an appraisal report from Cushman & Wakefield (the "C&W appraisal"), which assessed the value of the Hidden Hills Apartment Complex at $19,700,000. Mr. Blake shared the C&W appraisal with Ms. Tamaro by email on May 11, 2017.

41.     The C&W appraisal acknowledged that "the subject is located within the Tacoma Smelter Plume due to the airborne deposition of ash from the former Asarco smokestack in nearby Ruston," and that the appraiser had been provided with a "Phase I Environmental Site Assessment dated November 28, 2001 prepared by Surveys Inc. of Renton, WA."  The C&W appraisal further stated that "[d]iscussions with brokers active in the Pierce County market indicate that sales of multifamily properties in the subject's general vicinity are not being adversely impacted by the Tacoma Smelter Plume."

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 20

1    42.    The conclusions in the C&W appraisal regarding the value of the Hidden Hills

2  Apartment Complex and the lack of any material adverse impact on pricing due to historical

3  environmental contamination were borne out by a broker's opinion of value ("BOV") that HHM

4  commissioned shortly after receiving the C&W appraisal from AMTAX 114.  Indeed, the BOV

5  that HHM commissioned arrived at a value for the Hidden Hills Apartment Complex that, at its

6  midpoint, was $600,000 *higher* than the appraised value reflected in the C&W appraisal.

7    43.    Rather than simply accepting the C&W appraisal, however, HHM secretly

8  hatched a three-part scheme to depress the fair market value of the Hidden Hills Apartment

9  Complex in order to reduce the price it would have to pay AMTAX 114 for its interest in the

10  Hidden Hills Partnership.

11    44.    First, HHM hid the BOV that it had commissioned from its own appraiser, and

12  improperly influenced the appraisal process by purporting to advise its appraiser that potential

13  buyers would need to engage in environmental remediation in order to obtain financing.

14    45.    On June 19, 2017, Ms. Tamaro sent a letter to Mr. Blake, enclosing an appraisal

15  report obtained by HHM from CBRE (the "CBRE report").  Ms. Tamaro acknowledged in her

16  letter that she was attempting to obtain new financing for the property, and that her ability to do

17  so was contingent on environmental remediation that the Hidden Hills Partnership was not

18  otherwise obligated to undertake.

19    46.    The CBRE report assessed the value of the Property at $14,050,000.  The CBRE

20  report noted that it had reduced the fair value determination based on the appraiser's claim that

21  "it is likely that a potential buyer would require the site to be cleaned prior to sale."

22    47.    Second, HHM solicited unnecessary environmental reports and irrelevant

23  remediation cost estimates to help HHM achieve its objective of artificially depressing the fair

24  market value of the Hidden Hills Apartment Complex.  HHM, for example, unilaterally

25  commissioned Environmental Partners, Inc., an environmental consulting company, to prepare a

26  "Technical Memorandum," dated August 8, 2017, that purported to provide an estimate of

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 21

1  environmental remediation costs for the Hidden Hills Apartment Complex totaling $3,760,450,

2  including "a 50 percent contingency of $1,220,150 for unknown or changed conditions."

3  48. By soliciting new reports and memoranda on historical environmental issues that

4  the Hidden Hills Partnership is under no obligation to address, HHM's actions threaten to have a

5  material adverse impact on the value of the Hidden Hills Apartment Complex to the economic

6  detriment of both AMTAX 114 and the Hidden Hills Partnership.

7  49. Third, HHM secretly selected and communicated with a third appraiser while

8  falsely assuring AMTAX 114 that it was interested in AMTAX 114's proposal that the Hidden

9  Hills Partnership list the Hidden Hills Apartment Complex for sale in order to let the market

10  determine its fair value.  These actions not only confirm HHM's ill intent, but were taken in

11  direct contravention of the procedure set forth in Section 7.4.J of the Hidden Hills LPA, which

12  requires the two previously selected appraisers—not HHM—to appoint the third appraiser.

13  50. On August 11, 2017, HHM's counsel wrote a letter to AMTAX 114's counsel

14  stating that Ms. Tamaro would seriously consider AMTAX 114's request that the Hidden Hills

15  Partnership market the Property, and acknowledging that "disclosure and marketing will tell us"

16  the fair market value of the Hidden Hills Property.

17  51. Despite reassuring AMTAX 114's counsel on multiple occasions that HHM

18  remained interested in marketing the Hidden Hills property in lieu of continuing with the

19  appraisal process, HHM's counsel informed AMTAX 114's counsel on September 22, 2017 that

20  Ms. Tamaro had taken steps to select a third appraiser without informing AMTAX 114.

21  52. Email correspondence subsequently forwarded to AMTAX 114 confirms that,

22  despite his assurances to the contrary to AMTAX 114's counsel, HHM's counsel was aware as

23  early as September 6, 2017 that Ms. Tamaro sought to return to the appraisal process.  The email

24  correspondence also confirms that, contrary to the requirement in Section 7.4.J, it was Ms.

25  Tamaro, and *not* the party's respective appraisers, who appointed the third appraiser.

26

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 22

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

53.     On October 23, 2017, HHM transmitted a copy of a new appraisal report prepared by Colliers International Valuation and Advisory Services (the "Colliers report"), along with the August 8, 2017 "Technical Memorandum," which is referred to and relied on in the Colliers report.  The Technical Memorandum included a cost estimate of nearly $3.8 million to perform environmental remediation, and the Colliers report deducted that entire amount—including "a 50 percent contingency of $1,220,150" based solely on "unknown or changed conditions"—from its fair market value conclusion.  The Colliers report claimed that this deduction was appropriate because, according to the appraiser, "[l]enders would only provide a loan for the subject if either the contamination was remediated by the owner before funding of a loan, or a plan is provided to remediate the site within the first year or two of the loan, or the owner would set up an escrow account and deposit money equivalent to the estimated remediation costs to cover the potential remediation of the contamination."

54.     On November 3, 2017, AMTAX 114's counsel sent a letter to HHM's counsel notifying HHM that AMTAX 114 formally objected to the use of the Colliers report in determining the fair market value of the Property for purposes of Section 7.4.J of the Hidden Hills LPA.  AMTAX 114's objection was based on HHM's improper efforts to influence what is supposed to be an independent appraisal process for its own pecuniary benefit as described above, including but not limited to its secret and unilateral selection of the purported third appraiser in violation of Section 7.4.J of the Hidden Hills LPA.

55.     HHM's conduct was intended solely to suppress fair market value in order to reduce the price that HHM would need to pay to divest AMTAX 114 of its interest in the Hidden Hills Partnership.  Indeed, HHM has not made any commitment to perform the environmental remediation reflected in the Technical Memorandum following its purchase of AMTAX 114's interest, and a review of the website for the State of Washington's Department of Ecology confirms that HHM has not even placed the Hidden Hills Property on the lengthy waiting list for

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the Voluntary Cleanup Program under which the proposed remediation would supposedly be undertaken.

### *HHM Initiates This Action and Is Removed as General Partner of the Hidden Hills Partnership Based on Breaches of the Hidden Hills LPA*

56.    On November 14, 2017, HHM initiated this action, which sought to force AMTAX 114 to sell its interest in the Hidden Hills Partnership for $531,748.00, a price that is millions of dollars less than what HHM would have to pay under the independent appraisal process contemplated by Section 7.4.J of the Hidden Hills LPA.  HHM has since conceded that this amount is more than a half million dollars too low, and has recalculated its purported purchase price to be $1,051,856.

57.    The Option price that HHM demands in its Complaint is incorrect because it is based on the appraised value in the Colliers report that HHM improperly commissioned and manipulated to its advantage.

58.    The Option Price is also incorrect because HHM did not properly apply the distribution formula set forth in Section 6.2(B) of the Hidden Hills LPA or take into account HHM's independent obligation to indemnify AMTAX 114 for any losses arising from the environmental condition of the Project.

59.    On November 30, 2017, AMTAX 114 sent a letter notifying HHM that it was exercising its right under Section 4.5(A)(iv)(2) of the Hidden Hills LPA to remove HHM as a General Partner of the Hidden Hills Partnership based on material breaches by HHM of its contractual and fiduciary duties that could "reasonably be expected to cause economic detriment to the Partnership or to the Project" (the "Removal Notice").  AMTAX 114 explained in the Removal Notice that HHM had violated Section 7.4.J of the Hidden Hills LPA by: (a) improperly influencing what is supposed to be an independent appraisal process in an effort to depress the appraised value of the Hidden Hills Apartment Complex and thereby reduce the price HHM would have to pay to exercise its Option to purchase AMTAX 114's interest in the

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 24

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   Hidden Hills Partnership; and (b) secretly hiring a third appraiser in violation of the selection

2   provisions of Section 7.4.J while falsely representing to AMTAX 114 that it remained interested

3   in AMTAX 114's proposal to abandon the tainted appraisal process and instead determine fair

4   market value the traditional way (i.e., by listing and marketing the property for sale).  The

5   Removal Notice further stated that HHM compounded its breach by initiating this lawsuit, in

6   which HHM improperly seeks to force AMTAX 114 to sell its interest in the Hidden Hills

7   Partnership at a price that is lower than the price to which AMTAX 114 is contractually entitled.

8   The Removal Notice designated AMTAX 114's affiliate Saugatuck, LLC as the Hidden Hills

9   Partnership's replacement General Partner.

10                     ***AMTAX 114 Files Counterclaims Against HHM***

11       60.     On December 14, 2017, AMTAX 114 removed this action to this Court.

12       61.     On December 21, 2017, AMTAX 114 answered HHM's complaint and asserted

13   counterclaims for breach of contract and breach of fiduciary duty, and for declaratory relief

14   rejecting HHM's claim and enforcing AMTAX 114's removal rights under the LPA.

15       62.     On April 30, 2018, AMTAX 114 amended its counterclaims to add a declaratory

16   judgment claim seeking a determination that if the appraised value of the Hidden Hills

17   Apartment Complex—and, by operation of Section 7.4.J, the price HHM must pay to purchase

18   AMTAX 114's interest in the Partnership—is reduced to account for the environmental

19   condition of the Property and/or any actual or projected environmental remediation costs, then

20   HHM has a duty to indemnify AMTAX 114 for the loss that AMTAX 114 will suffer as a result

21   of any such reduction in the appraised value of the Hidden Hills Apartment Complex.

22       ***The Parkway Dispute***

23         ***The Parkway Partnership***

24       63.     The Parkway Partnership is a Washington State LIHTC limited partnership

25   created for the purpose of developing, owning, operating, and ultimately disposing of the

26

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 25

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Parkway Apartments.  The Parkway Partnership and the respective rights and obligations of its partners, including AMTAX 169 and 334th Place, are governed by the Parkway LPA.

64.     As Investor Limited Partner, AMTAX 169 made substantial capital contributions to the Parkway Partnership in connection with the development and operation of the Parkway Apartments, and holds an ownership interest in the Parkway Partnership that exceeds ninety-nine percent (99%).

65.     Section 4.5(A)(iv)(2) of the Parkway LPA permits AMTAX 169, as the Investor Limited Partner, to remove 334th Place as a General Partner based, *inter alia*, on material violations of the Parkway LPA.

66.     Section 7.4.B of the Parkway LPA requires 334th Place, as the general partner, to "use reasonable efforts consistent with sound management practice to cause the Project to maximize income produced by the Project, including, if necessary, seeking any necessary approvals of, and implementing, appropriate adjustments in the rent schedule of the Property."

67.     Section 7.10.B of the Parkway LPA requires that "reimbursements to a General Partner or any of its Affiliates"—in other words, self-interested transactions—must be "necessary for the prudent formation, development, organization or operation of the Partnership" and "shall not exceed the amount the Partnership would be required to pay independent parties for comparable goods and services in the same geographic location."

68.     Article XI, Paragraph A of the Parkway LPA requires 334th Place, as General Partner, to obtain a Management Agent to manage the Parkway Apartments in accordance with the requirements of each lender and government agency with relevant jurisdiction.  Article XI, Paragraph A further establishes that the Management Agent of the Parkway Apartments is entitled to receive a Management Fee, which is "not to exceed the lesser of 4% of net rental income or the maximum amount permitted by each Agency or Lender."

69.     Sections 7.4.F and 7.4.G of the Parkway LPA impose on 334th Place fiduciary duties to the Parkway Partnership and to AMTAX 169 as Investor Limited Partner.  Specifically,

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   Section 7.4.F provides: "The General Partner shall have fiduciary responsibility for the

2   safekeeping and use of all funds and assets of the Partnership, whether or not in their immediate

3   possession or control.  The General Partner shall not employ, or permit another to employ, such

4   funds or assets in any manner except for the exclusive benefit of the Partnership."

5       70.     Like the Hidden Hills LPA, Section 7.4.J of the Parkway LPA grants the Parkway

6   Partnership's Managing General Partner an option during the twenty-four month period

7   following the end of the Compliance Period to purchase the Interest of the Investor Limited

8   Partner (the "Option").

9       71.     Section 7.4.J further provides: "In the event the Managing General Partner

10  exercises the Option, it must pay to the Investor Limited Partner the Option Price (as defined

11  herein) in cash.  The Option Price shall equal the greater of (i) the fair market value of the

12  Interest, without offset for any lack of control or inability to control management of the Investor

13  Limited Partner, (Fair Market Value shall be determined by two independent MAI appraisers:

14  one selected by the Managing General Partner and one by the Investor Limited Partner.  If such

15  appraisers are unable to agree on the value, they shall jointly appoint a third independent MAI

16  appraiser whose determination shall be final and binding), or (ii) an amount determined by the

17  Partnership Accountants, which is sufficient to pay (a) all outstanding indebtedness secured by

18  the Apartment Complex and (b) distribute to the Investment Company cash proceeds sufficient

19  to enable the Investment Company to pay, on an after tax basis, any taxes projected to be

20  imposed on the Investment Company as a result of the sale pursuant to the Option."

21              ***334th Place Breaches its Obligations Under the Parkway LPA***

22      72.     Starting in late 2017, AMTAX 169 began to uncover questionable activity by

23  334th Place in its capacity as General Partner of the Parkway Partnership.

24      73.     To date, AMTAX 169 has identified a number of breaches by 334th Place of its

25  obligations under the Parkway LPA.

26

74.     First, 334th Place has paid itself or its affiliates fees that were not authorized, and/or has grossly overpaid itself or its affiliates for fees that were authorized.  For example, 334th Place:

a)  Paid Managing General Partner Fees totaling tens of thousands of dollars even though the Parkway Partnership did not generate sufficient cash flow to justify payment of those fees;

b)  Paid itself Developer Fees totaling hundreds of thousands of dollars even though the Parkway Partnership did not generate sufficient cash flow to justify payment of those fees;

c)  Paid Project Management Fees that collectively exceeded the 4% Net Rental Income cap set forth in the Parkway LPA by more than $100,000;

d)  Paid itself unauthorized "repair supervision fees" totaling hundreds of thousands of dollars;

e)  Paid itself unauthorized "construction costs" totaling in excess of $100,000;

f)  Paid itself unauthorized "tenant file review fees" totaling tens of thousands of dollars;

g)  Paid itself unauthorized "bookkeeping fees" totaling tens of thousands of dollars;

h)  Failed to provide an equity contribution in 2012 to pay off interest that had accrued on its Deferred Development Fee ("DDF"), and instead improperly rolled those amounts into a larger generic General Partner receivable;

i)  Charged the Parkway Partnership tens of thousands of dollars in rent to house employees in single family homes owned by 334th Place;

j)  Paid tens of thousands of dollars to an affiliate for unauthorized legal services;

k)  Paid thousands of dollars to an affiliate for unauthorized extermination services;

l)  Paid thousands of dollars to an affiliate for unauthorized engineering survey fees; and

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 28

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

m) Paid itself and/or its affiliates tens of thousands of dollars for miscellaneous unauthorized entity expenses.

75. These unauthorized and/or excessive payments that 334th Place made to itself and its affiliates total more than $1.5 million.

76. 334th Place's efforts to enrich itself at the expense of AMTAX 169 and the Parkway Partnership violate 334th Place's contractual duties, including its duties regarding self-interested transactions and its fiduciary duties to AMTAX 169 and the Parkway Partnership.

77. Second, 334th Place used Parkway Partnership funds on improperly classified operating expenses, resulting in unjustified increases in controllable operating expenses such as payroll, administrative costs, and maintenance costs. Indeed, the Parkway Apartments' operating expenses have substantially and inexplicably outpaced inflation in recent years. Operating expenses nearly *doubled* from 2014 to 2017, from $4,800 per unit to $8,700 per unit, even though non-controllable costs (e.g., taxes, insurance, utilities) during the same period were mostly flat, or even declined. 334th Place's unauthorized, unnecessary, and excessive spending accordingly is to blame for this unprecedented increase in operating expenses.

78. Third, 334th Place is in default of its obligation to maximize partnership income by increasing rental rates at the Parkway Apartments. Rental rates at the Parkway Apartments were significantly below maximum allowable LIHTC rents in 2017, even before King County increased those maximum rents in 2018. Given that King County is and has been one of the best rental markets in the country, the Parkway Apartments could have and should have supported a rent schedule in recent years that was closer to—if not at—maximum LIHTC rents.

79. Unreasonably high operating costs and unauthorized fees combined with unnecessarily low rental rates have led to excessive Parkway Partnership losses. These losses, in turn, have resulted in unnecessary advances to 334th Place to fund partnership operating deficits, as well as an improper depletion of AMTAX 169's positive capital account, both of which serve

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 29

to divert Parkway Partnership income—including proceeds from an actual or hypothetical sale of the Parkway Apartments—away from AMTAX 169 and into 334th Place's pockets.

80.     334th Place's actions have resulted in substantial economic losses to the Parkway Partnership and to AMTAX 169, and thereby constitute grounds for 334th Place's removal from the Parkway Partnership.

*AMTAX 169 Removes 334th Place as General Partner of the Parkway Partnership Based on Its Breaches of Contractual and Fiduciary Duties*

81.     On January 3, 2018, 334th Place sent a letter purporting to exercise its option to purchase AMTAX 169's interest in the Parkway Partnership.

82.     On March 6, 2018, AMTAX 169 sent a letter notifying 334th Place of its ongoing investigation into questionable activity by 334th Place in its capacity as General Partner of Parkway Partnership, including 334th Place's failure to maximize rental income, the payment of fees and distributions to 334th Place and/or its affiliates that were not permitted by or in excess of the amounts permitted by the Parkway LPA, and the disproportionately high growth of operating expenses at the Parkway Apartments.  AMTAX 169 explained that it would address 334th Place's purported exercise of its purchase option once AMTAX 169 had completed its review of those issues.

83.     On May 8, 2018, counsel for HHM and 334th Place emailed counsel for AMTAX 114 and AMTAX 169 requesting that AMTAX 114 stipulate to an amendment of HHM's original complaint to include allegations and claims regarding the Parkway Apartments, the Parkway Partnership, the Parkway LPA, 334th Place, and AMTAX 169.

84.     Counsel for AMTAX 114 and AMTAX 169 responded on May 8, 2018 and attached a letter from AMTAX 169 to 334th Place that detailed the misconduct that AMTAX 169 had uncovered through its investigation of 334th Place's questionable activity.  The letter explained that the "breadth, complexity, and opacity of General Partner's misconduct have made it difficult and time consuming to uncover."  The letter further stated that 334th Place could not

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 30

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    effectively invoke its purchase option until 334th Place cured the breaches of the Parkway LPA

2    described above.  AMTAX 169 promised to refrain from removing 334th Place from the

3    Parkway Partnership to permit 334th Place an opportunity to cure these breaches.

4         85.    Notwithstanding this letter, HHM filed its motion to amend and supplement its

5    complaint on the evening of May 8, 2018.  On May 22, 2018, AMTAX's counsel sent a follow

6    up letter in which he noted that "AMTAX stands ready and willing to enforce its removal rights

7    if necessary to protect its interests, but also believes it would be far preferable if the

8    Partnership's partners first addressed their disputes to determine whether they can be resolved

9    without the need for further escalation."  334th Place, however, failed to cure or even respond to

10   any of material breaches detailed in AMTAX 169's May 8, 2018 letter.

11        86.    On July 2, 2018, AMTAX 169 sent a letter notifying 334th Place that it was

12   exercising its right under Section 4.5(A)(iv)(2) of the Parkway LPA to remove 334th Place as a

13   General Partner of the Parkway Partnership based on material breaches by 334th Place of its

14   contractual and fiduciary duties that could "reasonably be expected to cause economic detriment

15   to the Partnership or to the Project" (the "Removal Notice").  The Removal Notice specifically

16   explained that 334th Place had breached the Parkway LPA by, among other things: (a) paying

17   itself or its affiliates more than $1.5 million in fees that were either unauthorized or grossly

18   exceeded the authorized fee amounts; (b) spending partnership funds on improperly classified

19   operating expenses, resulting in unjustified increases in controllable operating expenses such as

20   payroll, administrative, and maintenance costs; and (c) defaulting on its obligation to maximize

21   partnership income by increasing rental rates at the Parkway Apartments to levels permitted

22   under the LIHTC program.

23

24

25

26

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 31

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    <u>CLAIMS FOR RELIEF</u>

2    **FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT**

3    **(asserted by AMTAX 114 against HHM)**

4    87.     AMTAX 114 realleges and incorporates by reference each and every allegation

5    set forth above.

6    88.     AMTAX 114 and HHM are parties to the Hidden Hills LPA.

7    89.     AMTAX 114 has substantially performed its obligations under the Hidden Hills

8    LPA.

9    90.     HHM breached the Hidden Hills LPA by, among other things:

10   (a) improperly influencing the independent appraisal process set forth in Section 7.4.J of

11   the Hidden Hills LPA in an effort to depress the appraised value of the Hidden Hills Project and

12   thereby reduce the price it would have to pay to purchase AMTAX 114's interest in the Hidden

13   Hills Partnership;

14   (b) secretly hiring a third appraiser in violation of the selection provision of Section 7.4.J

15   while falsely representing to AMTAX 114 that it remained interested in AMTAX 114's proposal

16   to abandon the tainted appraisal process and instead determine fair market value by listing and

17   marketing the Hidden Hills Apartment Complex for sale; and

18   (c) bringing a lawsuit that improperly seeks to compel AMTAX 114 to sell its interest in

19   the Hidden Hills Partnership for a price that is millions of dollars lower than the price AMTAX

20   114 would be entitled to had HHM properly exercised its Option under Section 7.4.J.

21   91.     As a direct and proximate result of HHM's conduct, AMTAX 114 has suffered

22   damages and may suffer additional damages in the future.  The exact amount of such damages is

23   presently unknown, but is well in excess of $1 million.

24

25

26

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 32

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**SECOND CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTY**

**(asserted by AMTAX 114 against HHM)**

92.     AMTAX 114 realleges and incorporates by reference each and every allegation set forth above.

93.     As a General Partner of the Hidden Hills Partnership, HHM owes fiduciary duties to the Hidden Hills Partnership and to AMTAX 114 as the Hidden Hills Partnership's Investor Limited Partner, including the duties of loyalty, care, good faith, and fair dealing.

94.     HHM breached its fiduciary duties to AMTAX 114 and the Hidden Hills Partnership by subordinating the interests of the Hidden Hills Partnership and AMTAX 114 to its own interests, and by taking action on behalf of the Hidden Hills Partnership in order to derive an improper benefit for itself.

95.     As a direct and proximate result of HHM's conduct, AMTAX 114 has suffered damages and may suffer additional damages in the future.  The exact amount of such damages is presently unknown, but is well in excess of $1 million.

**THIRD CLAIM FOR RELIEF: DECLARATORY JUDGMENT - OPTION PRICE**

**(asserted by AMTAX 114 against HHM)**

96.     AMTAX 114 realleges and incorporates by reference each and every allegation set forth above.

97.     HHM is a General Partner of the Hidden Hills Partnership.

98.     AMTAX 114 is the Investor Limited Partner of the Hidden Hills Partnership.

99.     A dispute has arisen between AMTAX 114 and HHM regarding the price HHM must pay to purchase AMTAX 114's interest in the Hidden Hills Partnership pursuant to Section 7.4.J of the Hidden Hills LPA.

100.     AMTAX 114 is entitled to a determination that (1) HHM does not have a right to purchase AMTAX 114's interest in the Hidden Hills Partnership for $1,051,856.00; (2) the appraisal process—including but not limited to HHM's secret selection of Colliers as the third

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 33

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

appraiser—was conducted in a manner that was inconsistent with the requirements of Section 7.4.J of the Hidden Hills LPA; and (3) the Colliers report is not and cannot be considered the "final and binding" appraisal for purposes of calculating the Option price under Section 7.4.J.

## FOURTH CLAIM FOR RELIEF: DECLARATORY JUDGMENT - REMOVAL

### (asserted by AMTAX 114 against HHM)

101.    AMTAX 114 realleges and incorporates by reference each and every allegation set forth above.

102.    HHM is a General Partner of the Hidden Hills Partnership.

103.    AMTAX 114 is the Investor Limited Partner of the Hidden Hills Partnership.

104.    A dispute has arisen between AMTAX 114 and HHM regarding AMTAX 114's removal of HHM as a General Partner of the Hidden Hills Partnership in accordance with Section 4.5(a)(iv) of the Hidden Hills LPA.

105.    AMTAX 114  is entitled to a determination that HHM has been removed as the Hidden Hills Partnership's Administrative General Partner, and is obliged to cooperate fully with the transfer of Administrative General Partner responsibilities to AMTAX 114's affiliate, Saugatuck, LLC.

## FIFTH CLAIM FOR RELIEF: DECLARATORY JUDGMENT - DUTY TO INDEMNIFY

### (asserted by AMTAX 114 against HHM)

106.    AMTAX 114 realleges and incorporates by reference each and every allegation set forth above.

107.    The Environmental Indemnity Agreement requires HHM to indemnify AMTAX 114 and hold AMTAX 114 harmless from and against environmental liabilities, which include any and all costs, loss, expense, and/or damage arising from, as a result of, or relating to any hazardous substance, hazardous substance activity, or violation of environmental laws.

108.    A dispute has arisen between AMTAX 114 and HHM regarding the price HHM must pay to purchase AMTAX 114's interest in the Hidden Hills Partnership pursuant to Section

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 34

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

7.4.J of the Hidden Hills LPA, and whether this price should be reduced to account for environmental remediation costs.

109.    According to HHM, environmental remediation is necessary to address elevated concentrations of lead and arsenic in the soil beneath the Hidden Hills Apartment Complex.

110.    The Environmental Indemnity Agreement defines "hazardous substances" to include arsenic and lead.

111.    If the price that HHM must pay to purchase AMTAX 114's interest in the Hidden Hills Partnership is reduced to account for the environmental condition of the Hidden Hills Apartment Complex and/or any actual or projected environmental remediation costs, AMTAX 114 is entitled to a determination that HHM must indemnify AMTAX 114 for the loss that AMTAX 114 suffers as a result of any such reduction in price, pursuant to the Environmental Indemnity Agreement.

**SIXTH CLAIM FOR RELIEF: BREACH OF CONTRACT**

**(asserted by AMTAX 169, directly and derivatively on behalf of**

**the Parkway Partnership, against 334th Place)**

112.    AMTAX 169 realleges and incorporates by reference each and every allegation set forth above.

113.    AMTAX 169 and 334th Place are parties to the Parkway LPA, which governs the Parkway Partnership.

114.    Until its removal on July 2, 2018, 334th Place was a General Partner of the Parkway Partnership, and as such owed contractual and fiduciary duties to the Parkway Partnership and its Investor Limited Partner, AMTAX 169.

115.    AMTAX 169 has substantially performed its obligations under the Parkway LPA.

116.    334th Place breached the Parkway LPA by, among other things:

(a) paying itself or its affiliates more than $1.5 million in fees that were either unauthorized or grossly exceeded the authorized fee amounts;

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 35

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    (b) spending partnership funds on improperly classified operating expenses, resulting in

2    unjustified increases in controllable operating expenses such as payroll, administrative, and

3    maintenance costs; and

4    (c) defaulting on its obligation to maximize partnership income by increasing rental rates

5    at the Parkway Apartments to levels permitted under the LIHTC program.

6    117.    As a direct and proximate result of 334th Place's conduct, AMTAX 169 and the

7    Parkway Partnership have suffered damages and may suffer additional damages in the future.

8    The exact amount of such damages is presently unknown, but exceeds $1.5 million.

9    **SEVENTH CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTY**

10    **(asserted by AMTAX 169, directly and derivatively on behalf of**

11    **the Parkway Partnership, against 334th Place)**

12    118.    AMTAX 169 realleges and incorporates by reference each and every allegation

13    set forth above.

14    119.    As a General Partner of the Parkway Partnership, 334th Place owed fiduciary

15    duties to the Parkway Partnership and to AMTAX 169 as the Parkway Partnership's Investor

16    Limited Partner, including the duties of loyalty, care, good faith, and fair dealing.

17    120.    334th Place breached its fiduciary duties to AMTAX 169 and the Parkway

18    Partnership by subordinating the interests of the Parkway Partnership and AMTAX 169 to its

19    own interests, and by taking action on behalf of the Parkway Partnership in order to derive an

20    improper benefit for itself.

21    121.    As a direct and proximate result of 334th Place's conduct, AMTAX 169 and the

22    Parkway Partnership have suffered damages and may suffer additional damages in the future.

23    The exact amount of such damages is presently unknown, but exceeds $1.5 million.

24

25

26

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 36

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**EIGHTH CLAIM FOR RELIEF: CONVERSION**

2

**(asserted by AMTAX 169 derivatively, on behalf of**

3

**the Parkway Partnership, against 334th Place)**

4

122.    AMTAX 169 realleges and incorporates by reference each and every allegation

5

set forth above.

6

123.    334th Place unjustifiably and willfully interfered with the Parkway Partnership's

7

possession of funds to which the Parkway Partnership is entitled, to the detriment of the Parkway

8

Partnership, and for 334th Place's own benefit, in violation of the Parkway Partnership's

9

property rights.

10

124.    As a direct and proximate result of 334th Place's actions, the Parkway Partnership

11

suffered, and will continue to suffer, damages in an amount to be proven at trial but no less than

12

the $1.5 million.

13

**NINTH CLAIM FOR RELIEF: UNJUST ENRICHMENT**

14

**(asserted by AMTAX 169 derivatively, on behalf of**

15

**the Parkway Partnership, against 334th Place)**

16

125.    AMTAX 169 realleges and incorporates by reference each and every allegation

17

set forth above.

18

126.    By paying itself unauthorized and excessive fees from partnership funds, 334th

19

Place conferred a benefit on itself at the expense of the Parkway Partnership.

20

127.    334th Place had knowledge of and accepted this benefit.

21

128.    Because the fees that 334th Place paid to itself were excessive and made without

22

authorization, it would be inequitable for 334th Place to retain the benefit of the partnership

23

funds that it improperly paid to itself.

24

129.    As a direct and proximate result of 334th Place's unjust enrichment, the Parkway

25

Partnership is entitled to restitution in an amount to be proven at trial but no less than $1.5

26

million.

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 37

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

**TENTH CLAIM FOR RELIEF: DECLARATORY JUDGMENT - REMOVAL**

2

**(asserted by AMTAX 169 against 334th Place)**

3        130.    AMTAX 169 realleges and incorporates by reference each and every allegation

4    set forth above.

5        131.    Until its removal on July 2, 2018, 334th Place was a General Partner of the

6    Parkway Partnership.

7        132.    AMTAX 169 is the Investor Limited Partner of the Parkway Partnership.

8        133.    A dispute has arisen between AMTAX 169 and 334th Place regarding AMTAX

9    169's removal of 334th Place as a General Partner of the Parkway Partnership in accordance

10   with Section 4.5(A)(iv) of the Parkway LPA.

11       134.    AMTAX 169 is entitled to a determination that 334th Place has been removed as

12   the Parkway Partnership's Administrative General Partner, and is obliged to cooperate fully with

13   the transfer of Administrative General Partner responsibilities to AMTAX 169's affiliate,

14   Saugatuck, LLC.

15

**ELEVENTH CLAIM FOR RELIEF:**

16

**DECLARATORY JUDGMENT - OPTION**

17

**(asserted by AMTAX 169 against 334th Place)**

18       135.    AMTAX 169 realleges and incorporates by reference each and every allegation

19   set forth above.

20       136.    Until its removal on July 2, 2018, 334th Place was a General Partner of the

21   Parkway Partnership.

22       137.    AMTAX 169 is the Investor Limited Partner of the Parkway Partnership.

23       138.    A dispute has arisen between AMTAX 169 and 334th Place regarding whether

24   334th Place is entitled to exercise its option to purchase AMTAX 169's interest in the Parkway

25   Partnership under Section 7.4.J of the Parkway LPA.

26

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 38

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1    139.    AMTAX 169 is entitled to a determination that 334th Place cannot purchase

2  AMTAX 169's interest in the Parkway Partnership pursuant to Section 7.4.J of the Parkway LPA

3  because 334th Place breached its contractual and fiduciary duties under the Parkway LPA and

4  has since been removed as the Parkway Partnership's Administrative General Partner.

5    140.    In the alternative, AMTAX 169 is entitled to a determination that 334th Place

6  cannot exercise its option to purchase AMTAX 169's interest in the Parkway Partnership until

7  334th Place has cured its breaches of the Parkway LPA as alleged herein.

8                          **PRAYER FOR RELIEF**

9    WHEREFORE, AMTAX 114 and AMTAX 169 respectfully request:

10    1.    A declaratory judgment that (1) HHM does not have a right to purchase AMTAX

11  114's interest in the Hidden Hills Partnership for $1,051,856; (2) the appraisal process—

12  including but not limited to HHM's secret selection of Colliers as the third appraiser—was

13  conducted in a manner that was inconsistent with the requirements of Section 7.4.J of the Hidden

14  Hills LPA; and (3) the Colliers report is not and cannot be considered the "final and binding"

15  appraisal for purposes of calculating HHM's Option price under Section 7.4.J;

16    2.    A declaratory judgment that HHM has been removed as a General Partner of the

17  Hidden Hills Partnership pursuant to AMTAX 114's rights under 4.5(A)(iv) of the Hidden Hills

18  LPA;

19    3.    A declaratory judgment that, if the price that HHM must pay to purchase AMTAX

20  114's interest in the Hidden Hills Partnership is reduced to account for the environmental

21  condition of the Hidden Hills Property and/or any actual or projected environmental remediation

22  costs, HHM must indemnify AMTAX 114 for any loss that AMTAX 114 suffers from such a

23  reduction in price;

24    4.    A declaratory judgment that 334th Place has been removed as a General Partner of

25  the Parkway Partnership pursuant to AMTAX 169's rights under 4.5(A)(iv) of the Parkway LPA;

26

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 39

1  5. A declaratory judgment that 334th Place is not entitled to purchase AMTAX 169's

2 interest in the Parkway Partnership pursuant to Section 7.4.J of the Parkway LPA because 334th

3 Place has been removed as the Parkway Partnership's Administrative General Partner, or, in the

4 alternative, a declaratory judgment that 334th Place is not entitled to purchase AMTAX 169's

5 interest in the Parkway Partnership pursuant to Section 7.4.J of the Parkway LPA until 334th

6 Place has cured the breaches of the Parkway LPA alleged herein;

7  6. Damages in accordance with proof;

8  7. Interest on the amounts awarded at the legal rate;

9  8. Costs of the suit herein; and

10  9. Such other relief as the Court deems just and proper.

11 DATED: July 2, 2018

By: /s/ David J. Burman
  /s/ Steven D. Merriman
David J. Burman, WSBA #10611
Steven D. Merriman, WSBA #44035
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000
Email:  DBurman@perkinscoie.com
  SMerriman@perkinscoie.com

By: /s/ Christopher G. Caldwell
  /s/ Eric S. Pettit
Christopher G. Caldwell (admitted *pro hac vice*)
Eric S. Pettit (admitted *pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
725 S. Figueroa Street, 31st Floor
Los Angeles, CA 90017-5524
Telephone:  (213) 629-9040
Facsimile:  (213) 629-9022
Email:  ccaldwell@bsfllp.com
  epettit@bsfllp.com

Attorneys for Defendants and Counter-Plaintiffs
AMTAX Holdings 114, LLC, and AMTAX
Holdings 169, LLC

AMTAX 114 AND AMTAX 169'S
ANSWER AND COUNTERCLAIMS
No. 3:17-cv-06048-RBL – 40

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**VERIFICATION**

I, Chris Blake, on behalf of AMTAX 114 and AMTAX 169, hereby verify that I have authorized the filing of the attached Answer and Verified Counterclaims, that I have reviewed the Answer and Verified Counterclaims, and that the facts therein are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the forgoing is true and correct.

DATE:  July 2, 2018

_____
Chris Blake, Director, Capital Transactions,
Alden Torch Financial

VERIFICATION OF CHRIS BLAKE
No. 3:17-cv-06048-RBL – 1

1

**CERTIFICATE OF SERVICE**

2          On July 2, 2018, I caused to be served upon the below named counsel of record, at the

3    address stated below, via the method of service indicated, a true and correct copy of the

4    foregoing document.

5

| David R. Goodnight | |
|---|---|
| Rita V. Latsinova | __X__   Via the Clerk's eFiling Application |
| J. Scott Pritchard | _____   Via hand delivery |
| Stoel Rives LLP | _____   Via U.S. Mail, 1st Class, |
| 600 University Street, Suite 3600 | Postage Prepaid |
| Seattle, WA 98101 | _____   Via Overnight Delivery |
| Phone: (206) 624-0900 | _____   Via Facsimile |
| Facsimile: (206) 386-7500 | _____   Via Email |
| Email: david.goodnight@stoel.com | |
| Email: rita.latsinova@stoel.com | |
| Email: scott.pritchard@stoel.com | |

6

7

8

9

10

11

12

          I certify under penalty of perjury under the laws of the State of
13    Washington that the foregoing is true and correct.

14          EXECUTED at Seattle, Washington, on July 2, 2018.

15

16                              /s/ Steven D. Merriman
                               Steven D. Merriman
17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
No. 3:17-cv-06048-RBL – 1