# EXHIBIT E

## HIDDEN HILLS 2001, LP

## ENVIRONMENTAL INDEMNITY & ADA COMPLIANCE AGREEMENT

This Agreement is made and entered into as of January 1, 2002 by and between **HIDDEN HILLS MANAGEMENT, LLC**, a Washington limited liability company with an address of 7201 92nd Avenue, SE, Mercer Island, WA 98040-5812 (the "Indemnitor") and **AMTAX HOLDINGS 114, LLC**, an Ohio limited liability company, with an address of 3825 Columbus Road, S.W., Bldg. F., Granville, Ohio 43023 (the "Company").

## W I T N E S S E T H

WHEREAS, HIDDEN HILLS 2001, LP ("Hidden Hills") was formed to acquire, rehabilitate, develop, repair, improve, maintain, operate, lease, dispose of and otherwise deal with the 216 unit apartment complex known as Hidden Hills Apartments located in University Place, Washington ("Property");

WHEREAS, the Company desires to enter into a Partnership Agreement to acquire a limited partnership interest in Hidden Hills (the "Admission"), and will make capital contributions thereto;

WHEREAS, in consideration of the Admission, the Indemnitor must indemnify and hold harmless the Company from environmental liabilities, and the Company seeks indemnification from the Indemnitor for such environmental liabilities to the extent set forth herein;

NOW, THEREFORE, for good and valuable consideration, including the capital contributions of the Company, and the mutual promises of the parties, the adequacy and sufficiency of which consideration is admitted, the parties hereto agree as follows:

1.  <u>Definitions</u>.   As used herein, the following terms shall have the following meanings:

    "ADA Laws" means the Americans with Disabilities Act, including the Final Fair Housing Accessibility Guidelines and the ADA Accessibility Guidelines and the conforming Federal, State and local rules and regulations thereto.

    "Environmental Laws" means all present and future federal, state or local laws, statutes, ordinances, rules or regulations and other requirements of government authorities relating to the protection or conservation of the environment or to any Hazardous Substance or Hazardous Substance Activity, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. Section 9601, <u>et seq.</u>, as now or hereinafter amended ("CERCLA"); the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, <u>et seq.</u>, as now

or hereafter amended; the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., as now or hereafter amended; the Clean Water Act, 33 U.S.C. Section 1251, et seq., as now or hereafter amended; the Clean Air Act, 42 U.S.C. Section 7901, et seq., as now or hereafter amended; the Toxic Substances Control Act, 15 U.S.C. Sections 2601 through 2629, as now or hereafter amended, the Coastal Zone Management Act and the rules of the Office of Coastal Zone Management, as now or hereafter amended; the Safe Drinking Water Act, 42 U.S.C. Sections 300F through 300j, as now or hereafter amended; and any similar State and local environmental protection laws and ordinances and the regulations now or hereafter adopted, published and/or promulgated pursuant thereto.

"Hazardous Substance" means any substance that is at any time defined or listed in, or otherwise classified pursuant to the Environmental Laws, as a "hazardous substance," "hazardous material," "hazardous waste," "infectious waste," "toxic substance," "toxic pollutant," "pollutant or contaminant" or any other formulation intended to define, list or classify substances by reason of deleterious properties such as ignitability, corrosivity, reactivity, carcinogenicity, toxicity, reproductive toxicity or "EP toxicity," including, without limitation, asbestos, polychlorinated byphenyls, ureaformaldahyde, dioxin, radon, arsenic and lead and also including petroleum products, by-products and wastes or by-products associated with the extraction, refining or use of petroleum or petroleum products, whether or not so listed or classified in such laws or regulations.

"Hazardous Substance Activity" means any actual or threatened storage, holding, existence, use, release, migration, emission, discharge, generation, processing, abatement, removal, repair, alteration, cleanup or detoxification, disposition, handling or transportation of any Hazardous Substance from, under, into or on the Property or the surrounding property, or any of its coastal areas, swamps, marshes, wetlands, bogs, floodplanes, estuaries, beaches, dunes, reefs, fish, wildlife and their habitat, or any other activity or occurrence that causes or would cause such event to exist or would otherwise be in violation of an Environmental Law.

2. Environmental Conditions. The soils on and under the Property contain elevated levels of arsenic and lead as described in the Environmental Partners, Inc. November 12, 1999 Draft Soil Characterization Report and the Environmental Partners June 23, 2000 Additional Soil Characterization Report (the "Environmental Reports"). The elevated arsenic and lead contamination on the Property shall be the "Environmental Condition". The Environmental Condition includes levels of arsenic above the existing Washington Department of Ecology Model Toxics Control Act Method A Cleanup Standard of 20 mg per kg. The Property is located within the Washington Department of Ecology Tacoma Smelter Plume Site. The Washington Department of Ecology is conducting a study to determine an appropriate cleanup level for properties within the Tacoma Smelter Plume Site. Ecology is not now requiring properties within the Tacoma Smelter Plume Site to comply with the 20 mg per kg

Method A cleanup level. At such time as Ecology determines a cleanup level for arsenic in soils applicable to the Tacoma Smelter Plume Site, Indemnitor will take such actions as are necessary to comply with such cleanup level.

3. Representations and Warranties of Indemnitor. Except for the Environmental Conditions, Indemnitor represents and warrants to Company, to the best of its knowledge and belief that: (a) the Property is in material compliance with all applicable Environmental Laws relating to the Property and the use of the Property (b) Indemnitor has not engaged in any Hazardous Substance Activity in violation of any applicable Environmental Laws; (c) other than those disclosed to the Company in writing prior to the date hereto, no investigations, inquiries, orders, hearing, actions or other proceedings by or before any governmental agency are pending or are threatened in connection with any Hazardous Substance Activity or alleged Hazardous Substance Activity; (d) the use of the Property for its intended purpose will not result in any Hazardous Substance Activity in violation of any applicable Environmental laws; (e) other than those disclosed to the Company in writing prior to the date hereto, no notice of any order, directive, complaint or other communication, written or oral, has been made or issued by any Governmental agency nor has Indemnitor received a written notice from any other third party alleging the occurrence of any Hazardous Substance Activity in violation of any application Environmental Laws or demanding payment or contribution for environmental damage or injury to the Property; (f) other than those disclosed to the Company in writing prior to the date hereto, no underground storage tanks or underground Hazardous Substance deposits are or were located on the Property or were subsequently removed or filled; and (g) the Property is in full material compliance with the ADA Laws.

4. Indemnity. The Indemnitor agrees to indemnify, hold harmless and defend the Company from and against any and all claims, costs, litigation, proceedings, investigations, loss, damage, liability, fine, penalty, assessment or expense, and/or loss, or deferment or delay of distributions from Hidden Hills to the Company (collectively referred to as "Environmental Liability") arising from, or as a result of, or relating to, any Hazardous Substance, Hazardous Substance Activity or violation of Environmental Laws or ADA Laws, on the, or adversely affecting the, Property. Defense of the Company by Indemnitor shall be provided by competent counsel of Indemnitor's choice, and the Company shall reasonably cooperate in such defense.

5. Obligations of Indemnitor Payable on Demand. All obligations of Indemnitor hereunder shall be payable on demand, and any amount due and payable hereunder to the Company by Indemnitor which is not paid within thirty (30) days after written demand therefor from the Company with an explanation of the amounts demanded shall bear interest from the date of such demand at the default rate as set forth in the permanent mortgage of the Indemnitor.

6. Successors and Assigns. This Indemnity shall be binding upon Indemnitor, and the heirs, personal representatives, administrators, executors, successors and assigns of Indemnitor, and shall inure to the benefit of and shall be enforceable by the Company, its successors, endorsees and assigns.

CB__ENVIRONMENTAL INDEMNITY_105090003

AMTAXHH00016107

7. Governing Law. This Agreement shall be subject to and governed by the laws of the State of Washington. The parties consent to the jurisdiction and venue of any Federal or State court located within the State of Washington AND EACH PARTY HERETO WAIVES ITS RIGHT TO A JURY TRIAL, TO THE FULL EXTENT PERMITTED BY LAW.

8. Entire Agreement. This Agreement constitutes the entire Agreement between the parties and contains all of the agreements between the parties with respect to the subject matter hereof. This Agreement supersedes any and all other agreements, either oral or in writing, between the parties hereto with respect to the subject matter hereof. No change or modification of this Agreement shall be valid unless the same be in writing and signed by both parties hereto. No waiver of any provisions of this Agreement shall be valid unless in writing and signed by the person or party to be charged.

9. Severability. If any portion of this Agreement shall be for any reason, invalid or unenforceable, the remaining portion or portions shall nevertheless be valid, enforceable and carried into effect, unless to do so would clearly violate the present legal and valid intention of the parties hereto.

10. Notices. All notices, demands, requests, consents, approvals or other communications required or permitted hereunder shall be in writing and shall be delivered by hand, registered or certified mail with return receipt requested or by a nationally recognized overnight delivery service, in each case with all postage or other delivery charges prepaid, and to the address first set forth above, or to such other address as such party may specify by giving notice to the other in accordance with the terms hereof. Any such notice shall be deemed to be received (i) when delivered, if by hand, (ii) on the next business day following timely deposit with a nationally recognized overnight delivery service or (iii) on the date shown on the return receipt as received or refused or on the date the postal authorities state that delivery cannot be accomplished, if sent by registered or certified mail, return receipt requested.

11. Attorney's Fees. In the event of litigation concerning this Agreement, the prevailing party shall be entitled to collect from the losing party all attorney's fees and costs including those on appeal.

CB__ENVIRONMENTAL INDEMNITY_105090004

AMTAXHH00016108

IN WITNESS WHEREOF, this Agreement has been signed as of the day and year first above written.

**INDEMNITOR:**
HIDDEN HILLS MANAGEMENT, LLC

By: */s/ Catherine M Tamaro*
Catherine M. Tamaro,
Managing Member

-and-

By: */s/ Chad I. Rennaker*
Chad I. Rennaker, Managing Member

**COMPANY:**

AMTAX HOLDINGS 114, LLC

By: Paramount Properties, Inc.

By: */s/ Munro Ma*
Its: President