|  |  |
|---|---|
| 1 | THE HONORABLE RONALD B. LEIGHTON |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HIDDEN HILLS MANAGEMENT, LLC, and 334TH PLACE 2001, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>AMTAX HOLDINGS 114, LLC, and AMTAX HOLDINGS 169, LLC,<br><br>    Defendants. | No. 3:17-cv-06048-RBL<br><br>334TH PLACE 2001, LLC'S MOTION TO COMPEL AND FOR IN CAMERA REVIEW OF CERTAIN DOCUMENTS<br><br>NOTE ON MOTION CALENDAR:<br>December 7, 2018 |
| AMTAX HOLDINGS 114, LLC, AMTAX HOLDINGS 169, LLC, and PARKWAY APARTMENTS, LP<br><br>    Counter-Plaintiffs,<br><br>    v.<br><br>HIDDEN HILLS MANAGEMENT, LLC, and 334TH PLACE 2001, LLC,<br><br>    Counter-Defendants. | |

MOTION TO COMPEL
(3:17-cv-06048-RBL)

## I. INTRODUCTION AND SUMMARY

Hidden Hills 2001, LP ("**Hidden Hills**") and Parkway Apartments LP ("**Parkway**") are Washington limited partnerships that own and operate local low-income apartment complexes. Plaintiffs Hidden Hills Management LLC ("**HHM**") and 334th Place 2001, LLC ("**334th Place**") are the general partners ("**GPs**") in the partnerships, respectively. GPs are managed by Catherine Tamaro, a Washington resident. Defendants AMTAX Holdings 114 LLC ("**Amtax 114**") and AMTAX Holdings 169 LLC ("**Amtax 169**") are the limited partners ("**LPs**") in the partnerships (collectively, "**AMTAX**"). LPs are managed by Alden Torch Financial, LLC ("**Alden Torch**"), an asset manager in Denver, Colorado.

The limited partnership agreements ("**LPAs**") that govern the partnerships grant the GPs an unconditional buyout option. The procedure is simple: the GP and LP obtain independent appraisals of the property; if the two appraisals disagree, a third appraiser provides a "final and binding" valuation that is used to calculate the LP's interest. This dispute arose when the GPs exercised their options to buy out the LPs' interests in the partnerships, and the LPs refused to honor the GPs' buyout rights. In the Hidden Hills dispute, Amtax 114 blames HHM for providing to the first and third appraisers information about the well-known contamination of the property and the cost of its remediation. It insists that the second appraisal, prepared without the benefit of that information, should control. In the Parkway dispute, Amtax 169 refuses to proceed to the third appraisal at all, asserting (via counterclaims) that 334th Place engaged in "questionable activity," most of which dated back more than 15 years and was approved by Amtax 169 following annual audits.

334th Place noted a Rule 30(b)(6) deposition of Amtax 169 to explore the factual bases for the "questionable activity" charge and Amtax 169's claimed damages. After producing a company representative to testify on these topics, Amtax 169 took the position that because it had investigated the alleged wrongdoing at the direction of counsel, these topics were off limits. Even after counsel for 334th Place clarified that he was seeking facts, not opposing counsel's

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 1

strategy or mental impressions, counsel for Amtax 169 objected based on attorney-client privilege and work product over 50 times, instructing the witness not to answer.

These objections and instructions were improper. If allowed to stand, Amtax 169's position would nullify its duty to disclose basic facts related to its counterclaims and deprive 334th Place of the benefit of Rule 30(b)(6) as a discovery tool. 334th Place seeks to compel Amtax 169 to withdraw its improper objections and compel the witness to comply with Rule 30(b)(6) when his deposition resumes. 334th Place also requests that the Court review two documents in camera and compel Amtax 169 to withdraw its improper claw-back of those documents.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Hidden Hills

HHM exercised its option to buy Amtax 114's interest in the Hidden Hills partnership in March 2017. Am. Compl. ¶ 16 (Dkt. #33). Because the parties' appraisers disagreed on value, a third appraiser was selected. *Id.* ¶ 29. Amtax 114 refused to accept the third appraisal or proceed with the buyout. *Id.* ¶¶ 34-35. It maintains that the third appraisal should ***not*** have taken into account the contamination at the property that has been of public record since 2002, and accuses HHM of "manipulating" the appraisal by disclosing information related to the contamination and potential remediation. Counterclaims ¶ 57.[1] Amtax 114 insists that the second appraisal, prepared without the benefit of that information, should control. *Id.* ¶¶ 90(c), 100. HHM filed suit for declaratory relief in November 2017. In response, Amtax 114 purported to remove HHM as the GP and brought counterclaims.

---

[1] Ms. Tamaro negotiated the purchase of the Hidden Hills property in 2002 with the original limited partner. Tamaro Decl. ¶ 6 (Dkt. #2 at Ex. A, p. 35). The property had known elevated levels of lead and arsenic and was listed on the Washington Department of Ecology's Contaminated Sites List. *Id.* ¶ 7. Alden Torch bought Amtax 114 in 2011. *Id.* ¶ 12.

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 2

99139954.8 0009368-00002

**STOEL RIVES** LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

**B.  Parkway**

334th Place's buyout right ripened in January 2018. Am. Compl. ¶ 40. On January 3, 2018, 334th Place wrote to Amtax 169 exercising the option and provided an appraisal. *Id.* ¶ 41. Amtax 169 responded on March 6, 2018, stating that it was in the "process of evaluating questionable activity by 334th Place" and that it would address the "request" to move forward with the appraisal process once it completed the review. Pritchard Decl. ¶ 2, Ex. A.[2] On May 8, 2018, after 334th Place notified Amtax 169 that it would seek to supplement the complaint to add the Parkway dispute to this case, Amtax 169 wrote to 334th Place another letter accusing it of mismanagement and contending that unspecified fees owed to 334th Place were "unauthorized." Pritchard Decl. ¶ 4, Ex. C. Much of the alleged mismanagement and challenged fees date back over 15 years or predate Alden Torch's purchase of Amtax 169. Pritchard Decl. ¶ 5, Ex. D (Blake Dep. at 72). The letter stated Amtax 169 would not move forward with the buyout process unless 334th Place gave up $2.7 million in accounts payable owed to it by the partnership. Pritchard Decl. Ex. C. The allegations in this letter would later form the basis for Amtax 169's counterclaims. Blake Dep. at 78.

**C.  The Amtax 169 Rule 30(b)(6) Deposition**

On October 26, 2018, 334th Place took a Rule 30(b)(6) deposition of Amtax 169. Amtax designated Chris Blake, the Director of Capital Transactions for Alden Torch, as its witness on all topics, including Amtax 169's "investigation" into "questionable activity," its failure to provide an appraisal, and its alleged damages. Pritchard Decl. ¶ 6, Ex. E; Blake Dep. at 7. Mr. Blake was "one of the primary contacts at Alden Torch in negotiations for Parkway and Hidden Hills for the sale and refinance of those properties." Blake Dep. at 7. Mr. Blake also negotiated

---

[2] The buyout provision in the LPA is not a "request"; it is instead a contractual right that is not subject to any "investigation" that the LP may choose to undertake. Pritchard Decl. ¶ 3, Ex. B (LPA § 7.4.J.).

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 3

99139954.8 0009368-00002

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1  the proposed voluntary buyout of Amtax 169's interest by 334th Place in 2014 that was never

2  completed. *Id.* at 33.

### 1. The 2018 "Investigation"

Amtax 169 does not allege that 334th Place manipulated the appraisal process in the Parkway dispute. Blake Dep. at 65. Mr. Blake did not testify that Amtax 169 anticipated any litigation involving Parkway.[3] Instead, Amtax 169 began evaluating alleged "questionable activity" by 334th Place in response to the Hidden Hills dispute. *Id.* at 64. Mr. Blake testified that if one property or partnership is involved in litigation, it was Alden Torch's standard practice to "review all of the other properties that we're partnered in to see if there's any similar activity that would also constitute a default." *Id.* at 65-66; *see also id.* at 134 ("[T]hat is our standard process."). This review involved Alden Torch forensic accountants John Thomas and Caley Diaz taking a "deeper dive" into Parkway's audited financial statements dating back to 2002. *Id.* at 66, 67, 72.

Mr. Blake testified that Amtax 169 received and reviewed the same audited financial statements of the Parkway partnership every year. *Id.* at 24, 90-95. In 2014, a proposed buyout of the LP's interest by the GP prompted Amtax 169—and Mr. Blake personally—to conduct a similar inquiry into Parkway's finances. *Id.* at 24, 153. In spring of 2014, the same accountant, John Thomas, was instructed to give "priority" to reviewing the partnership's 2013 audit. *Id.* at 153. After that review, Mr. Blake informed Ms. Tamaro that Amtax 169 was "on the same page with respect to the audit" and authorized proceeding with the buyout. *Id.* at 155. The 2014 buyout ultimately fell through because the partners could not come to terms on price. *Id.* at 33. Paradoxically, now Amtax 169 labels the same transactions it reviewed and approved in 2014 as

---

[3] In fact, AMTAX opposed HHM's motion to supplement the complaint by adding the Parkway dispute, arguing that there was "no overlap" between them. Dkt. #28 at 6.

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 4

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

99139954.8 0009368-00002

"major defaults" by 334th Place. *Compare id.* at 54, 80 *with id.* at 213 (admitting he approved of $2 million in GP fees in 2014, $1.5 million of which are now "unauthorized").

334th Place sought to elicit the facts behind Amtax 169's recent investigation of Parkway's finances and Amtax 169's counterclaims in Mr. Blake's deposition. Counsel for 334th Place made clear that he was "not asking for anything that's attorney-client privileged." *Id.* at 68. Nevertheless, basic *fact* questions to Mr. Blake on the topic of the investigation were objected to on privilege grounds, and the witness was instructed not to answer. *See, e.g.*, *id.* at 66-69 (who was involved in the "deeper dive"); *id.* at 73-74 (when investigation began); *id.* at 67-68 (whether Mr. Blake communicated with the accountants and what was discussed); *id.* at 72 (what accountants investigated); *id.* at 70-71 (what the accountants prepared).

After repeated objections, Mr. Blake finally testified that the accountants created a list of "unauthorized" fees, which was not produced in discovery. *Id.* at 70-71. This prompted the following exchange:

> 3   Q.   And the extent this list of, I guess you said
> 4   unauthorized -- the results of these accountants'
> 5   investigation, the list of unauthorized fees or payments, to
> 6   the extent that involves purely factual information, what
> 7   did it consist of?
> 8        MS. JOHNSON:  Objection.
> 9        I'm going to instruct you not to answer on the
> 10  basis of attorney-client privilege and attorney work
> 11  product.
> 12       MR. PRITCHARD:  I'm asking for the facts that
> 13  these people produced in connection with their
> 14  investigation.
> 15       MS. JOHNSON:  I'm going to assert the same
> 16  objections and instruct you not to answer.

*Id.* at 74.

Significantly, when Mr. Blake initially testified as to Alden Torch's policy to conduct these kinds of investigations, he never mentioned the involvement of any attorney. *Id.* at 65-68. But when 334th Place asked what Mr. Blake discussed with the accountants, Amtax 169's out-

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 5

of-state counsel cut off his answer and called for a break. *Id.* at 68. After the break, Mr. Blake "clarified" that the investigation had been directed by counsel, and that he did not instruct the accountants to start the process and never communicated with them outside of counsel's presence. *Id.* at 69-70, 73. Later in the deposition, 334th Place confronted Mr. Blake with an email that Amtax 169 now seeks to claw back as privileged and that is before the Court for in camera review. The email speaks for itself, has no indicia of privilege or work product protection, and directly refutes Mr. Blake's "clarification" provided shortly after the break.

### 2. Amtax 169's Appraisal

Mr. Blake also refused or was unable to answer fact questions related to another Rule (30)(b)(6) deposition topic, the second appraisal. Pritchard Decl. ¶ 6, Ex. E. Amtax 169 produced the Parkway appraisal it obtained, but claimed that all related communications were either privileged or work product because the appraisal was commissioned by an attorney. Pritchard Decl. ¶ 7, Ex. F. The following exchange is an example:

```
21    Q.  (BY MR. PRITCHARD)  At the time of this letter had
22   AMTAX selected an appraiser?
23         MS. JOHNSON:  Objection.  Calls for
24   attorney-client privileged information and/or attorney work
25   product.
 1         And to the extent it would require you to
 2   divulge that information, I would instruct you not to
 3   answer.
 4         MR. PRITCHARD:  It's asking for a fact.  It has
 5   nothing to do with attorney-client privilege or work
 6   product.
 7    Q.  (BY MR. PRITCHARD)  You can answer the question.
 8         MS. JOHNSON:  I will decide whether he's
 9   instructed not to answer; whether he follows my instruction.
10         Again, to the extent you believe it requires
11   you to divulge that information, I'd instruct you not to
12   answer.  Otherwise you can.
13         THE WITNESS:  I don't know.
```

Blake Dep. at 60-61; *see also id.* at 61-62 ("but most of those discussions … were with counsel, and it's my understanding that they are subject to attorney-client privilege").

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 6

### 3. Damages

Mr. Blake also refused to answer basic questions about the $1.5 million in damages Amtax 169 seeks in its counterclaims. For example, Amtax 169 claimed in its May 8, 2018 letter that it would not move forward with the buyout process unless 334th Place gave up more than $2.7 million in accounts payable. Pritchard Decl. ¶ 4, Ex. C. 334th Place asked for the basis for that statement. Blake Dep. at 82. After a privilege objection by counsel, Mr. Blake declined to answer, stating "I believe that our counsel determined that would be the amount that it would take to cure these defaults and breaches based on their discussions with our forensic accounting group." *Id.* at 83.

Another claimed category of damages relates to what Amtax 169 asserted were "unauthorized" management fees "in excess of $100,000." Pritchard Decl. ¶ 4, Ex. C. 334th Place asked specifically where Amtax 169 got that figure. Mr. Blake's response:

```
20   A.  That's not my calculation.
21   Q.  Whose calculation is it?
22       MS. JOHNSON:  Objection.
23       To the extent it calls for attorney-client
24  privileged information or attorney work product, I would
25  instruct you not to answer.
```
```
1        THE WITNESS:  I won't answer, based on
2   counsel's recommendation.
```

Blake Dep. at 158-59.

When the witness was asked about his role as the designated representative on the topic seeking factual information on Amtax 169's damages, counsel interjected with the following speaking objection:

```
16       MS. JOHNSON:  To the extent you're going to
17  refer to a topic in the deposition notice, I'll just
18  reiterate that he's been produced subject to the objections
19  that were asserted, including objections based on privilege
20  and legal conclusions and expert testimony.
```

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 7

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

99139954.8 0009368-00002

*Id.* at 160. A follow-up question, "So who is the representative of AMTAX that can answer the question and substantiate the damages in this case?" was met with another speaking objection:

> 19    MS. JOHNSON: Objection, again. Harassing.
> 20  This topic was objected to. Mr. Blake can testify as to the
> 21  information he knows that's not privileged. Mr. Blake is
> 22  the designated representative on this topic subject to our
> 23  objections.
> 24    THE WITNESS: As I testified, I believe that
> 25  discussion was protected by attorney-client privilege.
>
> 1   Q.  (BY MR. PRITCHARD) So you're saying the amount of
> 2  AMTAX's damages in the counterclaims is protected by
> 3  attorney-client privilege?
> 4    MS. JOHNSON: Objection. Mischaracterizes his
> 5  testimony, asked and answered, harassing.
> 6    THE WITNESS: I'm saying that the discussions
> 7  where those amounts were determined is privileged.

*Id.* at 161-62.

Counsel for Amtax 169 either instructed Mr. Blake not to answer a question, or provided a speaking objection instructing Mr. Blake not to answer "to the extent" the answer related to any privilege, at least ***51 times*** during the deposition. Pritchard Decl. ¶ 5. A selection of these are highlighted in the deposition transcript excerpts attached to the Declaration of Scott Pritchard as Exhibit D.

**D. Post-Deposition Letters and Meet-and-Confer**

By letter that followed, 334th Place detailed these and other deposition improprieties. Pritchard Decl. ¶ 8, Ex. G. 334th Place requested a supplemental production of non-privileged documents improperly withheld, a privilege log, and that Amtax 169 withdraw the improper privilege objections when Mr. Blake's deposition resumes. *Id.* Amtax 169 responded on November 2, 2018, seeking for the first time to claw back as privileged the emails now before the Court. Pritchard Decl. ¶ 9, Ex. H. The parties met and conferred on November 5, 2018, but were unable to resolve this dispute. Pritchard Decl. ¶ 10. Amtax 169 produced a one-page

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 8

99139954.8 0009368-00002

**STOEL RIVES** LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

schedule of claimed damages marked "CONFIDENTIAL" but still insists that facts responsive to the deposition topics are off limits if counsel initiated, or was involved in, the investigation that led to their discovery.  Pritchard Decl. ¶ 9, Ex. H.

### III.     AUTHORITY AND ARGUMENT

If "a deponent fails to answer a question asked under Rule 30," or provides an answer that is "evasive or incomplete," then a motion to compel the deposition testimony may be filed.  Fed. R. Civ. P. 37(a)(3)(B)(i), (a)(4).  "If the motion is granted ... the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

#### A. Amtax 169 Cannot Refuse to Answer Questions Seeking Basic Facts on Privilege Grounds

A person designated as a party representative under Rule 30(b)(6) as to a particular topic must "testify about information known or reasonably available *to the organization.*"  Fed. R. Civ. P. 30(b)(6) (emphasis added).  A Rule 30(b)(6) designee "'is not simply testifying about matters within his or her personal knowledge, but rather is speaking for the corporation about matters to which the corporation has reasonable access.'"  *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 216 (E.D. Pa. 2008) (citation omitted).  Asserting attorney-client privilege during a Rule 30(b)(6) deposition to shield facts learned in an investigation in which lawyers may have participated is "plainly wrong."  *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 278 (D. Neb. 1989) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 395–96 (1981)); *see also SEC v. Kramer*, 778 F. Supp. 2d 1320, 1328 (M.D. Fla. 2011) ("Permitting [a party] . . . to assert a blanket claim of privilege in response to a Rule 30(b)(6) notice creates an unworkable circumstance in which a defendant loses a primary means of discovery without a meaningful review of his opponent's claim of privilege.").

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 9

99139954.8 0009368-00002

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

Similarly, the work product doctrine does not preclude a party from questioning a Rule 30(b)(6) designee about basic facts. *Protective,* 137 F.R.D. at 279-81. "There is simply nothing wrong with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel." *Id.* at 280; *see also State Farm*, 250 F.R.D. at 215 (otherwise every Rule 30(b)(6) deposition in which an attorney was involved in preparing the witness "would be doomed from the start"); *Schreib v. Am. Family Mut. Ins. Co.*, 304 F.R.D. 282, 288 (W.D. Wash. 2014) (work product only applied to Rule 30(b)(6) topics if questions sought the deponent to divulge attorneys' mental impressions, conclusions, opinions or theories, but "counsel may question [the] deponent regarding relevant facts").

334th Place clarified that it was not seeking any privileged information, or attorneys' mental impressions, opinions, or theories, only for the witness to substantiate the factual basis for Amtax 169's counterclaims and alleged damages. If Amtax 169 believed that facts regarding its counterclaims and damages were off limits in a Rule 30(b)(6) deposition, it should have filed a motion for a protective order. *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D. 164, 166 (D. Mass. 2007) (it is improper to refuse to comply with the notice and put the burden on the party noticing the deposition to file a motion to compel). Instead, counsel coached the witness through improper and time-consuming objections, objected to factual questions on privilege grounds ***over 50 times***, and instructed the witness not to answer questions about basic facts. Pritchard Decl. ¶ 5, Ex. D. In addition to being unsupported by the law, this violated this Court's order on depositions and discovery, which states that "[d]irections to the deponent not to answer are improper." Dkt. #13.

"[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond," Fed. R. Civ. P. 37(a)(4), and "[c]ourts have held that when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), producing an unprepared witness is tantamount to a failure to appear that is sanctionable under Rule 37(d)," *Matson v. United Parcel Serv., Inc.*, No. C10-1528 RAJ, 2012 WL 12941741, at *2

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 10

(W.D. Wash. Mar. 28, 2012) (citing *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000); *Resolution Tr. Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993)). When this occurs, courts have held it appropriate to order the offending party to pay costs and fees for the time necessary to take the supplemental deposition. *United Wood Prods. Co. v. Tri-State Constr., Inc.*, No. C04-2052Z, 2005 WL 1126928, at *8 (W.D. Wash. May 9, 2005); *see also Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (upholding sanctions award for overly broad privilege and work product objections and instructions not to answer at a deposition, and noting "work product does not preclude inquiry into the mere fact of an investigation").

Amtax 169's improper objections have frustrated 334th Place's ability to conduct meaningful discovery. For the balance of Mr. Blake's deposition to have any value, counsel must be free to seek the facts behind Amtax 169's counterclaims and damages without facing another barrage of baseless objections. 334th Place respectfully seeks a Court order ensuring that this conduct does not continue, as well as fees for this motion and for the balance of Mr. Blake's deposition.

### B. Amtax 169 Has Improperly Clawed Back Non-Privileged Emails

Amtax 169 has also attempted to claw back two emails that are now before the Court for in camera inspection. *See Clarke v. Am. Commerce Nat. Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("A district court may conduct an in camera inspection of alleged confidential communications to determine whether the attorney-client privilege applies."). Counsel has sequestered these emails pending resolution of the issue by the Court pursuant to paragraph 9 of the protective order in this case and Rule 26(b)(5)(B). Pritchard Decl. ¶ 9. These emails are not privileged, nor are they "trial preparation" material. The work product doctrine is designed to "protect[] trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews." *Heath v. F/V*

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 11

99139954.8 0009368-00002

**STOEL RIVES** LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1   *ZOLOTOI*, 221 F.R.D. 545, 549 (W.D. Wash. 2004) (citing *Hickman v. Taylor*, 329 U.S. 495,

2   510 (1947) (describing the work product doctrine as necessary so that a "lawyer [can] work with

3   a certain degree of privacy")); *see also United States v. Nobles*, 422 U.S. 225, 238 (1975) ("At its

4   core, the work-product doctrine shelters the mental processes of the attorney, providing a

5   privileged area within which he can analyze and prepare his client's case.").

6   These emails have no indicia of work product. In fact Mr. Blake testified that this type of

7   investigation was standard company policy. Blake Dep. at 134. It was not until counsel

8   demanded a break in the middle of an answer that Mr. Blake asserted this investigation was run

9   solely by counsel. *Id.* at 68. The emails refute Mr. Blake's testimony that he "***didn't instruct***

10  ***those accountants to start that process***" (*id.* at 73-74 (emphasis added)) as well as his testimony

11  that he ***never*** communicated with the forensic accountants outside of the presence of an attorney

12  (*id.* at 69 (emphasis added)). The belated claw-back (which did not occur until ***after*** the

13  deposition) is plainly designed to suppress impeachment evidence and is improper.

14  **IV.   CONCLUSION**

15  "Litigation is not a game. It is the time-honored method of seeking the truth, finding the

16  truth, and doing justice. When a corporation and its counsel refuse to produce directly relevant

17  information an opposing party is entitled to receive, they have abandoned these basic principles

18  in favor of their own interests." *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1237

19  n.1 (9th Cir. 2016). Accordingly, 334th Place requests that the Court issue an order compelling

20  Amtax 169 to withdraw any and all privilege objections that relate to factual information sought,

21  to withdraw its improper claw-back, and to require Amtax 169 to pay the costs and fees

22  associated with this motion and the subsequent continued Rule 30(b)(6) deposition of Mr. Blake.

23  //

24  //

25  //

26  //

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 12

99139954.8 0009368-00002

**STOEL RIVES** LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

| | | |
|---|---|---|
| 1 | DATED:  November 16, 2018 | */s/ J. Scott Pritchard* |
| 2 | | David R. Goodnight, WSBA No. 20286 |
| | | Rita V. Latsinova, WSBA No. 24447 |
| 3 | | J. Scott Pritchard, WSBA No. 50761 |
| | | 600 University Street, Suite 3600 |
| 4 | | Seattle, WA  98101 |
| | | Phone:  (206) 624-0900 |
| 5 | | Facsimile:  (206) 386-7500 |
| | | Email:  david.goodnight@stoel.com |
| 6 | | Email:  rita.latsinova@stoel.com |
| | | Email:  scott.pritchard@stoel.com |
| 7 | | |
| | | Attorneys for Plaintiff Hidden Hills |
| | | Management LLC and 334th Place 2001, LLC |

MOTION TO COMPEL
(3:17-cv-06048-RBL) - 13

99139954.8 0009368-00002

**STOEL RIVES** LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*