# ALDEN TORCH FINANCIAL

**VIA EMAIL AND FIRST-CLASS MAIL**

May 8, 2018

Catherine M. Tamaro
334th Place 2001, LLC
3236 78th Avenue SE, Suite 202
Mercer Island, WA 98040
E-Mail: ctamaro@mindspring.com

Re:   *Parkway Apartments, LP (the "Partnership")*

Dear 334th Place 2001, LLC:

AMTAX Holdings 169, LLC ("AMTAX") is the Investor Limited Partner of the Partnership. The respective rights and obligations of the Partners are governed by the Partnership's Amended and Restated Agreement of Limited Partnership (the "Partnership Agreement"). Capitalized terms not otherwise defined herein shall have the meaning given to such terms in the Partnership Agreement.

I write to follow up on my letter of March 6, 2018, and to respond to your letter dated March 7, 2018, regarding questionable activity by 334th Place 2001, LLC in connection with its role as a general partner of the Partnership ("General Partner"). As a threshold matter, the breadth, complexity, and opacity of General Partner's misconduct have made it difficult and time consuming to uncover. While AMTAX's investigation of General Partner's activity is continuing, AMTAX has identified a number of breaches by General Partner of its obligations under the Partnership Agreement.

First, General Partner is in default of its obligation to maximize Partnership income by increasing rental rates at the Project. *See* Partnership Agreement, § 7.4.B (requiring General Partner to "use reasonable efforts consistent with sound management practice to cause the Project to maximize income produced by the Project, including, if necessary, seeking any necessary approvals of, and implementing, appropriate adjustments in the rent schedule of the Property"). Based on AMTAX's investigation, it appears that rental rates at the Project were significantly below maximum allowable LIHTC rents in 2017, even before King County increased those maximum rents in 2018. Given that King County is and has been one of the best rental markets in the country, the Property could have and should have supported a rent schedule in recent years that was closer to—if not at—maximum LIHTC rents.

EXHIBIT 8
BLAKE 30(b)(6)
10/26/18
Diane Rugh, CCR 2399, CRR

334th Place 2001, LLC
May 8, 2018
Page 2

Second, General Partner has paid itself or its affiliates fees that were not authorized, and/or has grossly overpaid itself or its affiliates for fees that were authorized. For example, General Partner:

- Paid Managing General Partner Fees totaling tens of thousands of dollars even though the Partnership did not generate sufficient cash flow to justify payment of those fees;

- Paid itself Developer Fees totaling hundreds of thousands of dollars even though the Partnership did not generate sufficient cash flow to justify payment of those fees;

- Paid Project Management Fees that collectively exceeded the 4% Net Rental Income cap set forth in the Partnership Agreement by more than $100,000;

- Paid itself unauthorized "repair supervision fees" totaling hundreds of thousands of dollars;

- Paid itself unauthorized "construction costs" totaling in excess of $100,000;

- Paid itself unauthorized "tenant file review fees" totaling tens of thousands of dollars;

- Paid itself unauthorized "bookkeeping fees" totaling tens of thousands of dollars;

- Failed to provide an equity contribution in 2012 to pay off interest that had accrued on its Deferred Development Fee ("DDF"), and instead improperly rolled those amounts into a larger generic General Partner receivable;

- Charged the Partnership tens of thousands of dollars in rent to house employees in single family homes owned by General Partner;

- Paid tens of thousands of dollars to an affiliate for unauthorized legal services;

- Paid thousands of dollars to an affiliate for unauthorized extermination services;

- Paid thousands of dollars to an affiliate for unauthorized engineering survey fees; and

HHM-012847PW

334th Place 2001, LLC
May 8, 2018
Page 3

- Paid itself and/or its affiliates tens of thousands of dollars for miscellaneous unauthorized entity expenses.

These unauthorized and/or excessive payments that General Partner made to itself and its affiliates total more than $1.5 million. General Partner's efforts to enrich itself at the expense of AMTAX and the Partnership violate General Partner's contractual and fiduciary duties. *See, e.g.,* Partnership Agreement, § 7.10.B (requiring that self-interested transactions be "necessary for the prudent formation, development, organization or operation of the Partnership," and "not exceed the amount the Partnership would be required to pay independent parties for comparable goods or services in the same geographic location"); *see also id.* § 7.4.G ("No General Partner shall contract away the fiduciary duty owed at common law to the Limited Partners").

Third, the Project's operating expenses have substantially and inexplicably outpaced inflation in recent years. Indeed, operating expenses nearly *doubled* from 2014 to 2017, from $4,800 per unit to $8,700 per unit. The vast majority of this growth, moreover, was attributable either to unauthorized General Partner fees that were improperly classified as operating expenses, or to unjustified increases in controllable operating expenses such as payroll, administrative, and maintenance costs. Non-controllable costs (e.g., taxes, insurance, utilities) during the same period, by contrast, were mostly flat, or even declined, thereby demonstrating General Partner's direct responsibility for this unprecedented increase.

General Partner's actions have resulted in substantial economic losses to the Partnership and to AMTAX, and thereby constitute grounds for General Partner's removal. *See* Partnership Agreement, § 4.5.A(iv) (permitting AMTAX "to remove any or all of the General Partners and elect one or more new General Partners in the event of any misconduct or failure to exercise reasonable care with respect to any material matter in the discharge of its duties and obligations as General Partner, and such misconduct or failure to exercise reasonable case can reasonably be expected to cause economic detriment to the Partnership or the Project...."). Specifically, artificially low rental rates combined with unreasonably high operating costs and unauthorized fees have led to excessive Partnership losses. These losses, in turn, have resulted in unnecessary General Partner advances to fund Partnership operating deficits, as well as an improper depletion of AMTAX's positive capital account, both of which serve to divert Partnership income—including proceeds from an actual or hypothetical sale of the Project—away from AMTAX and into General Partner's pockets.

Unless and until it takes steps to cure the multiple material breaches described above, General Partner cannot effectively invoke its purchase option under Section 7.4.J of the Partnership Agreement. Any cure, moreover, would require, *at a minimum*, an agreement by General Partner to immediately cancel and relinquish all accounts payable by the

334th Place 2001, LLC
May 8, 2018
Page 4

Partnership to General Partner (currently estimated to total in excess of $2.7 million). Please let me know as soon as possible, and no later than Friday, May 18, 2018, if you are willing to eliminate the Partnership's accounts payable to General Partner so that we can engage in a constructive discussion regarding potential resolution of the issues identified above. AMTAX will refrain from removing General Partner on or before that date, but expressly reserves its right under the Partnership Agreement to remove General Partner as the Partnership's Administrative General Partner based on the misconduct alleged herein or any other misconduct that General Partner may have engaged in to the detriment of the Partnership.

Except as specifically stated herein, this letter is not intended and shall not be deemed to be a waiver, election, or estoppel as to any claim, objection, defense, or remedy of AMTAX under the Partnership Agreement and related transaction documents or applicable law.

Very truly yours,

AMTAX Holdings 169, LLC,

By: TCH II Pledge Pool, LLC, its manager
By: Tax Credit Holdings II, LLC, its managing member
By: Alden Pacific Holdings, LLC, its managing member

By: _____
Alison Wadle, Executive Vice President

cc (via email only):  Chris Blake
                     Eric S. Pettit, Esq.