THE HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9 | HIDDEN HILLS MANAGEMENT, LLC, and 334TH PLACE 2001, LLC, | No. 3:17-cv-06048-RBL

10 | Plaintiffs, | 334TH PLACE 2001, LLC'S MOTION FOR SUMMARY JUDGMENT

11

12 | v. | NOTE ON MOTION CALENDAR: January 25, 2019

13 | AMTAX HOLDINGS 114, LLC, and AMTAX HOLDINGS 169, LLC,

14 | Defendants.

15

16 | AMTAX HOLDINGS 114, LLC, AMTAX HOLDINGS 169, LLC, and PARKWAY APARTMENTS, LP

17 | Counter-Plaintiffs,

18

19 | v.

20 | HIDDEN HILLS MANAGEMENT, LLC, and 334TH PLACE 2001, LLC,

21 | Counter-Defendants.

22

23

24

25

26

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL)

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

1
## I.     INTRODUCTION AND SUMMARY

2  This dispute involves two Washington limited partnerships that own and operate  low-

3 income apartment complexes: Hidden Hills 2001, LP ("**Hidden Hills**") and Parkway Apartments

4 LP ("**Parkway**" or the "**Partnership**").  Plaintiffs Hidden Hills Management LLC ("**HHM**")

5 and 334th Place 2001, LLC ("**334th Place**") are the general partners ("**GPs**") of Hidden Hills

6 and Parkway.  GPs are managed by Catherine Tamaro.  Defendants AMTAX Holdings 114 LLC

7 ("**AMTAX 114**") and AMTAX Holdings 169 LLC ("**AMTAX 169,**" collectively, "**AMTAX**")

8 are the limited partners ("**LPs**") in Hidden Hills and Parkway.  AMTAX is managed by Alden

9 Torch Financial, LLC ("**Alden Torch**"), a syndicator of federal low-income housing tax credits

10 ("**LIHTC**") for investors in AMTAX funds.  Alden Torch bought the AMTAX funds in 2011.

11  Hidden Hills and Parkway are governed by identical Limited Partnership Agreements

12 ("**LPAs**").  After the LIHTC credits are exhausted, under Section 7.4.J of the LPAs, the GP has

13 an option to buy out the LP at the price set by an appraisal; if the GP's and the LP's appraisals

14 differ, a third appraisal controls.  When HHM exercised its buyout option, AMTAX refused to

15 sell at the price set by the third appraisal and instead sought to remove HHM as the GP.  HHM

16 filed the underlying complaint for a declaratory judgment seeking to enforce its buyout option.

17 334th Place then exercised its buyout option in Parkway.  AMTAX again refused to cooperate

18 and sought to remove 334th Place as GP.  The complaint was amended to include the Parkway

19 dispute, and AMTAX counterclaimed against 334th Place for millions of dollars in

20 "unauthorized" expenses going back 15 years.

21  This motion addresses two issues in the Parkway dispute that would resolve all claims

22 associated with it.  First, 334th Place's option to buy out the LP's interest is unconditional as a

23 matter of law and cannot be defeated by AMTAX's retaliatory attempt to remove 334th Place as

24 GP.  If any counterclaims survive this motion, they can be heard after the buyout.  But the

25 counterclaims cannot be used to block a contractual buyout option.  Otherwise, the option would

26 be meaningless.  Second, the counterclaims that 334th Place engaged in "questionable activity"

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 1

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

1  fail as a matter of law.  They involve primarily allegedly unauthorized fees.  But those fees have

2  always been disclosed in Parkway's audited financial statements (which AMTAX does not

3  challenge) and approved by AMTAX itself every year since 2002, well outside the statute of

4  limitations.  Further, AMTAX 169 stated in 2014 that it was "on the same page" with some of

5  the same fees it now calls unauthorized and specifically acknowledged that the GP was never in

6  default.  Equitable estoppel does not allow AMTAX to have it both ways.  The remainder of

7  AMTAX counterclaims are quibbles with managerial decisions (such as rental rates), which the

8  LPA entrusts exclusively to 334th Place as the GP.  They are barred by the LPA's explicit terms

9  and the business judgment rule.

10  **II.      FACTS AND PROCEDURAL BACKGROUND**

11  **A.  Parkway's Background and Management**

12  Parkway Apartments is a residential property at 2206 SW 334th Place in Federal Way.

13  Pritchard Decl. Ex. G. at 2.  Built in 1975, it is a 208-unit multifamily community consisting of

14  19 two-story buildings, one community building, and one maintenance/laundry building.  *Id.*  In

15  2001, the property was acquired by Parkway Apartments LP and after minor repairs placed in the

16  LIHTC program, which requires that the majority of units be rented to individuals and families

17  below a certain income level.  *Id.* Ex. D (2017 Audit at 9).  As an LIHTC property, Parkway is

18  regulated by federal and state agencies, including the U.S. Department of Housing and Urban

19  Development ("**HUD**"), the Internal Revenue Service, and the Washington State Housing

20  Finance Commission.  *Id.*

21  Catherine Tamaro participated in the acquisition and conversion of Parkway to the

22  LIHTC program and has served as the principal of 334th Place, Parkway's GP, since the

23  Partnership's inception.  *Id.* Ex. B at 36-39.  Under Section 7.3 of LPA, the GP has sole

24  responsibility and the "exclusive right" to manage Parkway's business.  *Id.*  Ex. A.  The GP's

25  primary duties include maintaining the Partnership's regulatory compliance and delivering

26  LIHTC credits to the LP.  *Id.* at § 7.4.  She testified:

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 2

99645158.1 0009368-00002

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1
2
3

> This is not a high income suburb of Seattle we're talking about. … [W]hen I'm looking to see if we've met the requirement for the property tax exemption … I look at household composition, because that is what the statute says. It doesn't say, What are your rents? It says, Who lives there and what do they earn?

4
5
6
7

> And in order to get the full property tax exemption, which is very valuable to this property, the residents have to earn less than 50 percent of median income. Therefore, my rent structure takes that into account …. The property tax exemption is worth very approximately $80 per unit per month when we get the full exemption. If I don't have the appropriate tenant base, I don't get the full exemption.

8

9

10

*Id.* Ex. B at 248-49.   There is no dispute that 334th Place has always maintained compliance with the LIHTC program and delivered full tax credits to AMTAX 169 and its investors.  *Id.* Ex. C at 55.

11

12

13

14

15

16

17

18

19

20

21

The tax credits were the reason AMTAX 169 invested in the Partnership in 2002.  Dkt. #37 (¶¶ 24-27); Pritchard Decl. Ex. C at 26.  In 2011, AMTAX 169 was acquired by Hunt Companies, an affordable housing platform that ultimately became Alden Torch in 2015. Pritchard Decl. Ex. C at 10-11, 13 ("It was effectively a name change.").  As the Partnership's LP, AMTAX 169 is a passive investor and recipient of tax credits.  *Id.* at 28-29.  Under the LPA, the LP's oversight role is limited to specified consent rights not relevant here, as well as the review and approval of the annual audited financial statements that the Partnership must provide to its lender and regulatory agencies.  *Id.* at 39, 90-91.  There is no dispute that 334th Place caused the Partnership's audited financial statements to be submitted to the regulator and to AMTAX 169 every year since 2002.  *Id.* at 93-94, 102.  AMTAX does not challenge any of audited financial statements.  *Id.* at 100.

22

23

24

25

26

 The audited financial statements reflect that Parkway has been under pressure due to its aging infrastructure.  *Id.* Ex D.  An independent assessment of Parkway required by HUD was prepared in May of 2014; the report estimated that the property would require over $2 million in needed repairs in the next 10 years, including asphalt resurfacing ($135,000), exterior siding replacement ($256,000), windows replacement ($129,000), sliding doors replacement

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 3

**STOEL RIVES** LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone* 206.624.0900

1    ($104,000), and roof replacement ($300,000).  *See id.* Ex. E (PCNA Report, Near-Term

2    Replacement Reserve Chart).  To free up cash for these repairs, HUD encouraged Parkway to

3    refinance its loan at a lower rate.  *Id.* Exs. F, G at 6.  The refinance was closed on February 25,

4    2015.  As a condition of the new loan, guaranteed by HUD, the Partnership set aside $516,000 in

5    reserves for these and other repairs, and had to deposit $104,000 annually towards repairs.  *Id.*

6    Ex. B at 270 ("In 2014, we had our ten-year inspection from HUD, who is the ultimate lender on

7    this property.  And HUD does it for every property in its portfolio.  It's called a PCNA. … The

8    PCNA report is a list of repairs that I am expected to do.  In the loan documents, we agree to

9    implement HUD's recommendations.").

10        The refinance did not solve all of Parkway's financial needs however.  To keep the

11   Partnership solvent and continue delivering tax credits to the LP throughout the years, 334th

12   Place advanced significant funds to Parkway and deferred payment on its own management fees

13   that had been carried forward on the books as accounts payable to the GP.   These advances and

14   deferred fees benefitted Parkway—and AMTAX.  In seeking approval for the refinance,

15   AMTAX 169 stated:

16        Historically, this property has had a strong occupancy rate but consistently has
          deficit operations.  The GP has not been able to raise rents to improve cash flow
17        and has ben funding the deficits by deferring payroll from the affiliated
          management company.

18
          ….

19
          The refinance is advantageous  from a dispositions perspective because the
20        improved operating cash flow will pay down a greater amount  of GP receivables
          by the end of compliance, when the LP's option to force a sale at the a fair market
21        value can be executed.

22   *Id.* Ex. G, at 2; *see also id.* at 7 ("The GP has been supporting the deficit by deferring payroll

23   from the affiliated management company.").  The advances by 334th Place and deferred

24   management fees owed to its affiliates were also disclosed in the audits.  *Id.* ¶¶ 5-6, and Ex. D

25   (12/31/2017 audit at 14-15 and 17).

26

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 4

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

1          AMTAX 169's asset manager, Gary Newbold, was Alden Torch's primary point of

2    contact for 334th Place and Catherine Tamaro.  *Id.* Ex. C at 20, 22.  He served in that role from

3    2013 when Alden Torch acquired the AMTAX funds until he left the firm in 2016.  *Id.* at 194.

4    There is no dispute that Mr. Newbold received and approved Parkway's annual audited financial

5    statement every year.  *Id.* at 93.  Mr. Newbold also received additional financial reports, such as

6    monthly rent rolls and yearly budgets.  *Id.* Ex. B at 117-18; Ex. C at 183.  He personally visited

7    the Parkway property and was well aware of the condition of the property and the ongoing

8    repairs.  *Id.* Ex. C. at 186; Ex. B at 69; and Ex. O.  He was even provided a copy of the property

9    assessment that outlined the needed repairs.  *Id.* Ex. P.  Whenever Mr. Newbold questioned a

10   particular fee or expense, Ms. Tamaro promptly provided a full explanation to his satisfaction.

11   *E.g.*, *id.* Ex. H.  Since Gary Newbold left Alden Torch in early 2016, the new asset manager

12   assigned by Alden Torch has never raised a single issue regarding any purported

13   mismanagement or unauthorized fees.  *Id.* Ex. B at 230.

14          Similarly, at no time since Parkway's inception did Mr. Newbold, his successor asset

15   manager, or anybody else at AMTAX or Alden Torch challenge Parkway's audited annual

16   financial statements.  *Id.* Ex. C at 98, 100.  Because AMTAX does not challenge the audited

17   financial statements, there is no dispute that they "present fairly, in all material respects, the

18   financial position of the Parkway Apartments … in conformity with accounting principles

19   generally accepted in the United States of America."  *Id.* Ex. D at 2 (2017 Audit).  This includes

20   amounts owed to 334th Place in deferred management fees and unpaid advances to the

21   Partnership.

22          **B.  The 2014 Buyout**

23          While the GP's unconditional option to buy out the Parkway LP under Section 7.4.J of

24   the LPA only matured in January 2018, the parties have contemplated a voluntary buyout of the

25   LP's interest by 334th Place since at least 2013.  *Id.* Ex G at 6.  334th Place's December 2013

26   buyout proposal prompted AMTAX to scrutinize the Parkway audited financials.  *Id.* Ex. C at

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 5

**STOEL RIVES** LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1   24, 153.  Gary Newbold and Chris Blake, Alden Torch's Director of Capital Transactions,

2   conducted the due diligence and negotiated a potential deal with Ms. Tamaro.  *Id.*  In the spring

3   of 2014, Mr. Newbold and Mr. Blake instructed John Thomas, an Alden Torch accountant, to

4   give "priority" to reviewing the Partnership's 2013 audited financial statements.  *Id.* Ex. U.

5   After that review, and after asking Ms. Tamaro a series of pointed questions regarding various

6   fees charged to Parkway, the repairs, and the setting of rental rates (all of which Ms. Tamaro

7   answered), Mr. Blake informed her that AMTAX 169 was "on the same page with respect to the

8   [2013] audit" and authorized proceeding with the buyout.  *Id.* Ex. I.  The 2014 voluntary buyout

9   ultimately fell through because the partners could not come to terms on price; however they

10  agreed to restart negotiations when the GP's buyout right matured in January 2018.  *Id.* Ex. J, Ex.

11  G at 6.

12          **C.   Tension over the Hidden Hills Buyout Prompts Alden Torch to Manufacture
13                 Claims of "Questionable Activity" Against 334th Place**

14          In March of 2017, Catherine Tamaro exercised the option to buy out AMTAX's LP

15  interest in Hidden Hills.  Dkt. #33 ¶ 16.  Her negotiations with Chris Blake went sideways when

16  Alden Torch insisted that the environmental contamination on the Hidden Hills site should not be

17  taken into account (or disclosed to any appraisers) in calculating the buyout price.  By fall of

18  2017, it became clear that AMTAX 114 would not honor the buyout right under Section 7.4.J of

19  the LPA, as it had refused to recognize the "final and binding" valuation reached by the third

20  appraiser.  *Id.* ¶ 34.  As a result, HHM filed suit in November 2017 seeking a declaration that the

21  third appraisal was indeed "final and binding" and that AMTAX 114 was required to move

22  forward with the buyout.  AMTAX responded by accusing Ms. Tamaro of "manipulating" the

23  appraisal and purported to remove HHM as the GP.  *Id.* ¶ 35.

24          Chris Blake testified that he then put into practice Alden Torch's policy of scrutinizing

25  any other entities that share common principals with HHM.  Pritchard Decl. Ex. C at 65-66, 134.

26  To that end, in December 2017, Mr. Blake instructed two Alden Torch forensic accountants to do

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 6

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1    a "deep dive" into Parkway's audited financial statements dating back to 2002, nine years before

2    Alden Torch had any involvement in Parkway.  *Id.* at 66-67, 72; *see also id.* Ex. V.[1]  He

3    specifically pointed out as "problematic" similar audit notes as to which he declared to be "on

4    the same page" when negotiating the voluntary buyout in 2014.  *Id.* Ex. C at 206, *id.* Ex. I.  *Also*

5    *compare* Ex. C at 54, 56, and 80 *with id.* at 213-214 (admitting he approved of $2 million in GP

6    fees in 2014, $1.5 million of which AMTAX now claims to be "unauthorized").

7           The "deep dive" task was assigned to two forensic accountants, including John Thomas,

8    the same CPA who scrutinized the same audited financial statements in connection with the

9    voluntary buyout proposal in 2014.  *Id.* Ex. C at 67.  This time, the accountants were not "on the

10   same page" with the audits and instead generated a list of "unauthorized" fees—based on their

11   review of the same audit statements.  *Id.* at 70.  This list of allegedly "unauthorized" fees totaling

12   approximately $1.5 million now forms the basis for AMTAX's counterclaims in Parkway.

13   Pritchard Decl. Ex. L.  They are discussed with specificity below.

14           **D.  AMTAX 169 Refuses to Proceed with the Parkway Buyout Option and**

15           **Purports to Remove 334th Place as the General Partner**

16           The GP's buyout option matured on January 1, 2018.  334th Place exercised its option

17   shortly thereafter.   Dkt. # 33 ¶¶ 40-41; Pritchard Decl. Ex. K.  Alden Torch did not respond until

18   March 6, 2018.   It stated it was in the "process of evaluating questionable activity by 334th

19   Place" and that it would address the "request" to move forward with the appraisal process once it

20   completed the review.  *Id.* Ex. M.  334th Place responded the next day, providing the appraisal

21   and stating that it was ready to provide any additional financial information AMTAX may

22   request.   AMTAX 169 again went silent for months.

23

24          [1] After Mr. Blake's deposition, AMTAX 169 attempted to claw back the email showing
     that he personally initiated the "deep dive."  *See* Dkt. # 44 (Motion to Compel).  AMTAX was
25   sanctioned by the Court for this conduct, as well as its attempts to shut down on privilege
     grounds lines of questioning seeking facts regarding the counterclaims.  *See* Dkt. # 51.
26

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 7

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1  On May 8, 2018, 334th Place sought to supplement the complaint seeking declaratory

2  relief requiring AMTAX 169 to participate in good faith in the Parkway buyout.  Dkt. ## 25-26.

3  In response, AMTAX 169 accused 334th Place of mismanagement and contended that

4  unspecified fees owed to 334th Place were "unauthorized."  Pritchard Decl. Ex. N.  The letter

5  stated AMTAX 169 would not move forward with the buyout process unless 334th Place gave

6  up $2.7 million in accounts payable owed to it by the Partnership.  *Id.*  AMTAX 169 asserted its

7  counterclaims in July 2018.  Dkt. # 37.  The same day, AMTAX 169 sent 334th Place a second

8  letter, purporting to remove it as the GP pursuant to Section 4.5(A)(iv)(2) of the LPA.  Dkt. # 37-

9  4.  This Court granted HHM's motion to amend the complaint by adding the Parkway dispute,

10  and AMTAX 169 counterclaimed for damages and the GP's removal.  Dkt. ## 32, 37.

11  **E.  AMTAX 169's Counterclaims**

12  The counterclaims assert six causes of action: (1) breach of contract, (2) breach of

13  fiduciary duty, (3) a declaratory judgment that 334th Place should be removed as the general

14  partner, (4) conversion, (5) unjust enrichment, and (6) a declaratory judgment that 334th Place

15  has no buyout option pursuant to Section 7.4.J, despite the express language in the LPA to the

16  contrary.  Dkt. # 37.  Despite the different labels, all of the counterclaims are based on three core

17  areas of claimed "questionable activity" by 334th Place: (1) AMTAX 169 takes issue with

18  management and other fees charged by 334th Place that in some cases date back 15 years and

19  that are set forth in general terms in Paragraph 74 of AMTAX 169's counterclaims and its May

20  8, 2018 letter; (2) AMTAX 169 claims that Parkway's operating expenses have "substantially

21  and inexplicably outpaced inflation in recent years"; and (3) AMTAX 169 claims that the rental

22  rates at Parkway are below maximum allowable LIHTC rents in 2017, which is a breach of 334th

23  Place's "duty" to maximize AMTAX 169's return.  Dkt. # 37 ¶¶ 74-78.

24

25

26

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 8

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1    **III.    AUTHORITY AND ARGUMENT**

2    Summary judgment is appropriate where "taking the evidence and all reasonable

3    inferences drawn therefrom in the light most favorable to the non-moving party, there are no

4    genuine issues of material fact and the moving party is entitled to judgment as a matter of law."

5    *See Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (citation omitted); Fed. R. Civ. P.

6    56.  Under this standard, 334th Place is entitled to the declaratory relief it seeks because the LPA

7    provides an unconditional option to buy out the LP's interest.  AMTAX 169's counterclaims fail

8    as a matter of law because either (1) they are barred by the statutes of limitations governing

9    contracts and tort claims; (2) they are barred by the doctrine of estoppel given the undisputed fact

10   that AMTAX 169 reviewed and approved of the audited financials each year that now

11   purportedly form the basis for the claims at issue; or (3) 334th Place is insulated from attacks

12   based on alleged mismanagement under the business judgment rule.

13   **A.  334th Place Is Entitled to Declaratory Relief That AMTAX 169 Must
         Complete the Buyout Process in Good Faith and There Is No Basis for the
14       GP's Removal**

15   To determine whether a declaratory judgment is appropriate, the court must decide (1)

16   whether an actual case or controversy exists, and (2) whether the court should exercise its

17   discretion to award declaratory relief. *Principal Life Ins. Co. v. Robinson,* 394 F.3d 665, 669 (9th

18   Cir. 2005).  Plaintiffs amended the complaint in May 2018 so that 334th Place could seek

19   declaratory relief that "the Parkway LPA requires AMTAX 169 to participate in good faith in the

20   appraisal process by, among other things, promptly commissioning an appraisal so that 334th

21   Place can exercise its Parkway Buyout Option, and that there exists no basis in fact or law for

22   334th Place to be removed as the General Partner of the Parkway Partnership."  Dkt. # 33 ¶ 54.

23   There is no question that there is an actual case or controversy as to whether AMTAX

24   169 is entitled to frustrate 334th Place's right to exercise the Parkway buyout option by refusing

25   to provide an appraisal based on the pretext that it was investigating "questionable activity" by

26   334th Place and then subsequently purporting to remove 334th Place *after* the buyout right had

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 9

99645158.1 0009368-00002

**STOEL RIVES LLP**
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1   already been exercised.  Dkt. # 37 (Ans. ¶ 53).  Enforcing 334th Place's buyout option in this

2   case involves only a straightforward interpretation and application of the LPA's clear terms and

3   Washington law governing option contracts, a matter that falls directly within this Court's

4   authority under the Declaratory Judgment Act and Fed. R. Civ. P. 57.

5          Section 7.4.J of the Parkway LPA provides:

6          Subject to compliance with Section 42 of the Code and the rules of the agency, upon
           completion of the Compliance Period, the Managing General Partner *shall* have the
7          option (the "Option") to purchase the interest of the Investor Limited Partner in the
           real estate, fixtures and personal property of the Partnership (the "Interest") for a
8          period of twenty-four (24) months.  ***The Managing General Partner may exercise
           the Option upon written notice to the Investor Limited Partner at any time after the
9          end of the Compliance Period (the "Option Period").***  In the event the Managing
           General Partner exercises the Option, it must pay to the Investor Limited Partner the
10         Option Price (as defined herein) in cash.

11  Pritchard Decl. Ex. A at §7.4.J (emphasis added).

12         The Compliance Period ended on December 31, 2017.  *Id.* Ex. Q (RFA 1 ("Admit that the

13  Compliance Period under the Parkway LPA ended on December 31, 2017. . .  Admitted").  On

14  January 3, 2018, 334th Place provided written notice to AMTAX 169 that it "hereby exercises its

15  option under Section 7.4.J of the Amended and Restated Agreement of Limited Partnership dated as

16  of June 1, 2002 to purchase the interests of Amtax Holdings 169, LLC in the real estate, fixtures, and

17  personal property of Parkway Apartments, LP."  *Id.* Ex. K.  There is no dispute that 334th Place has

18  complied with Section 42 of the Internal Revenue Code and the rules of the Internal Revenue Service

19  in all respects.  *Id.* Ex. C at 55 ("Q. This property was never out of compliance, was it? . . . A. Not

20  out of compliance, no.").  Thus, all conditions precedent for exercise of the option were met.

21         Satisfaction of all conditions precedent meant that, upon its exercise "the option became

22  unconditional."  *Thompson v. Thompson*, 1 Wn. App. 196, 200, 460 P.2d 679 (1969).  Exercise

23  triggered the remaining requirements of Section 7.4.J: obtaining appraisals to determine the buyout

24  price.  334th Place provided its appraisal and AMTAX 169 did not.  Instead, AMTAX 169 claimed it

25  was investigating "questionable activity" by 334th Place and would "address [its] ***request*** to move

26  forward with the appraisal process set forth in Section 7.4.J of the Partnership Agreement once it has

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 10

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

1   completed its review of the issues identified above."  Pritchard Decl. Ex. M (emphasis added).

2   AMTAX 169 then claimed to have uncovered "breaches" of the LPA and demanded "[u]nless and

3   until it takes steps to cure the multiple material breaches described above, General Partner cannot

4   effectively invoke its purchase option under Section 7.4.J."  *Id.* Ex. N.

5       This position is contrary to both Washington law and the plain terms of the LPA.  When, as

6   here, a contractual option is supported by consideration "the optioner may not withdraw the option or

7   make its exercise more difficult during the agreed term of the option."  *Barnett v. Buchan Baking Co.*,

8   45 Wn. App. 152, 160, 724 P.2d 1077 (1986), *aff'd*, 108 Wn. 2d 405, 738 P.2d 1056 (1987).  For the

9   value of an option to be preserved, it must be protected from interference by the optionee.  Thus, as

10  the Washington Supreme Court has held, "[d]uring the agreed term of [the] option, [the optionee] has

11  a right that the option giver shall not repudiate or make performance impossible or more difficult . . . .

12  These rights are enforceable by all the usual judicial remedies, including judgment for damages,

13  injunction and decree for specific performance."  *McFerran v. Heroux*, 44 Wn. 2d 631, 638, 269 P.2d

14  815 (1954) (emphasis omitted).

15      To exercise the option under Section 7.4.J, the GP need not be free from "default."  The LPA

16  clearly states that the option is subject only to compliance with Section 42 of the Internal Revenue

17  Code, not any other provision of the LPA or any "investigation" that AMTAX 169 decided to

18  undertake as a pretext to block the option.  Here, AMTAX 169 not only refused to proceed with the

19  appraisal process despite the clear contractual language requiring it to do so, but demanded 334th

20  Place *give up $2.7 million in accounts payable prior to even discussing whether it would proceed*.

21  Pritchard Decl. Ex. N.[2]  AMTAX 169's litigation-driven "investigation," its extortionate demand for

22  millions of dollars in order to proceed, and its subsequent "removal" of the GP when it refused to

23

24      [2] This demand on its face was in bad faith.  When AMTAX 169 asserted counterclaims, it
    identified only $1.5 million in damages.  While those damage claims are equally meritless, AMTAX
25  169 never explained its demand for an additional *$1.2 million* as a precondition to the GP's exercise
    of its buyout option.  Pritchard Decl. Ex. C at 85.
26

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 11

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

1   accede to those demands were all violations of 334th Place's unconditional buyout right, which is

2   protected under Washington law.  Even with all reasonable inferences in favor of AMTAX 169, the

3   inescapable conclusion on the undisputed facts is that AMTAX sought to make performance of the

4   option impossible, contrary to the LPA and Washington law.

5          A district court case addressing similar facts is instructive.  *See Lakeview Mgmt. Inc. v. Care*

6   *Realty LLC*, No. 07-cv-303-SM, 2009 WL 903818 (D.N.H. Mar. 30, 2009).  *Lakeview* involved a

7   lessee that exercised a unilateral option to renew a lease.  Unlike here, however, the lessee's option

8   right in *Lakeview* was conditioned on there being no prior and continuing lease default.  After the

9   lessee exercised the option, the lessor refused to recognize it, alleging that the lessee was in

10  continuing default for failure to pay certain excess rent requirements.  The court concluded that

11  *despite the condition on the option*, the lessor was "equitably estopped by its conduct from invoking

12  that bar" because it had known and accepted the lessee's rent calculations and payment for many

13  years.  *Id.* at *14.  That is, the court in *Lakeview* ruled against the lessor on estoppel grounds even

14  when it had a contractual basis to claim (unlike AMTAX 169) that an unrelated default was sufficient

15  to frustrate the option.  Here, there is no dispute that all contractual conditions to exercise the buyout

16  option are met, AMTAX 169 simply invented new ones that have no support in Section 7.4.J of the

17  LPA.

18         For the same reasons, there is no basis for the GP's removal under Section 4.5(a)(iv) of the

19  LPA.  The buyout option is not subject to AMTAX 169's right of removal in Section 4.5.  By the

20  time AMTAX 169 purported to remove 334th Place, the option had been exercised and triggered for

21  six months.  Not only that, all the "misconduct" that AMTAX 169 claims are grounds for removal

22  has nothing to do with the buyout process itself.  Instead, AMTAX 169 seeks removal on whatever

23  unrelated grounds and claims of mismanagement that Alden Torch's accountants could invent.

24  AMTAX 169 never sought the removal of 334th Place prior to undertaking its 2018 "investigation"

25  into "questionable activity," all of which had been disclosed in the annual audits that AMTAX 169

26  reviewed and approved every year.  ***Moreover, in 2014, after conducting a thorough review of***

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 12

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1   *Parkway's finances, AMTAX assured Morgan Stanley that the GP had never been in default and*

2   *was instead advancing money to cover Parkway's deficits by deferring its own and affiliates'*

3   *receivables*.  Pritchard Decl. Ex. G at 6.  Authorizing removal in these circumstances would be

4   contrary to the well-established law protecting optionees from interference with what is an

5   unconditional right.  Accordingly, 334th Place is entitled as a matter of law to its sole claim for

6   declaratory relief and AMTAX 169's claim for a declaratory judgment of removal should be denied.

7   **B.  AMTAX 169's Counterclaims Are Barred by Statutes of Limitations, Estoppel, and/or the Business Judgment Rule.**

8

9   AMTAX 169 seeks to obscure the core issue in this lawsuit—the GP's exercise of the

   buyout right—by a litany of "questionable activity" allegations dating back 15 years.[3]  In

10

   addition to being factually meritless, AMTAX 169's counterclaims are barred as a matter of law

11

   by familiar limitations periods, estoppel, and the business judgment rule, as summarized in the

12

   table below.

13

14

15

16

17   _____

      [3] Chris Blake's testimony shows that all these allegations were concocted in retaliation

18   for the Hidden Hills dispute.  Mr. Blake could not quantify or describe the damages AMTAX

      169 sought in its counterclaims, and AMTAX 169 produced a one-half page damage schedule

19   only after 334th Place pointed out the glaring deficiencies in his Rule 30(b)(6) deposition.  *See*

      Dkt. # 44 (Motion to Compel); Dkt. # 51 (order sanctioning AMTAX for discovery misconduct).

20   In addition to the fees, AMTAX 169 has also asserted claims based on what it calls

      "mismanagement" related to operating expenses and rental rates, but has failed to identify any

21   damages at all associated with either of those theories of liability.  In fact, Mr. Blake testified

      that "to go back in time and say how much was attainable at that time [with respect to rental

22   rates] or what was the exact amount of operating expenses that the property should have been

      running at the time is nearly impossible at this point."  Pritchard Decl. Ex. C at 108.  As a result,

23   any counterclaim for damages based on these theories should be dismissed.  But even if that

      were not enough, these theories also suffer from the same defects as the fee allegations.  As

24   explained below, they effectively comprise a breach of fiduciary duty claim that is barred by the

      three-year statute of limitations, estoppel, and the business judgment rule.

25

26

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 13

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

| Fee Category | Description | When First Incurred | Total Damages Sought | Reason Barred |
|---|---|---|---|---|
| Managing General Partner Fee | Fees owed and paid to Hearthstone Housing Foundation, the §501(c)(3) non-profit general partner that qualifies Parkway for a property tax exemption generating $1.67 million in tax savings.<br><br>AMTAX 169 claims these payments damaged it because 334th Place paid these fees through advances to Parkway instead of refusing to pay them at all because the Partnership lacked sufficient cash flow. | 2007 | $98,479 | Contract and tort limitations periods/ estoppel/ business judgment rule |
| Developer Fees and Interest | Fees paid to 334th Place in 2009 pursuant to a Developer Agreement. The 2002 audit established the Developer Fee at $1,245,792. In 2009, the first and only payment of $341,685 was made.<br><br>AMTAX 169 claims that the fee was paid out of order and that accrued interest on the fees was not returned to Parkway. It is undisputed that the fee was owed to the GP. | 2009 | $631,297 | Contract and tort limitations periods/ estoppel/ business judgment rule |
| Project Management Fee | Fees owed to an affiliate of 334th Place, Trieste Holdings, pursuant to a property management agreement. AMTAX 169 claims the fee exceeded a 4% cap in the LPA at various times. | 2004 | $135,354 | Contract and tort limitations periods/ estoppel/ business judgment rule |
| Repair Supervision Fees | Fees owed to Trieste Holdings for its work beyond the scope of the property management agreement in connection with the supervision of major capital repairs and construction work needed at the Parkway apartment complex. | 2010 | $460,558 | Contract and tort limitations periods/ estoppel/ business judgment rule |

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 14

| Construction Costs | Costs incurred pursuant to a construction contract for property renovations in 2002. | 2003 | $120,197 | Contract and tort limitations periods/ business judgment rule |
|---|---|---|---|---|
| Tenant File Review Fees | Fees owed to 334th Place for its work in ensuring tenants are in compliance for LIHTC purposes. | 2010 | $79,064 | Contract and tort limitations periods/ estoppel/ business judgment rule |
| "Bookkeeping Fees" | These are not fees paid to the GP or any affiliate; it is a HUD term the auditor uses to refer to the payroll processing fees paid directly to ADP and Paychex, Parkway's payroll processing companies. | 2011 | $27,133 | Contract and tort limitations periods/ estoppel/ business judgment rule |
| Employee Housing | All full-time Parkway employees who live on site are entitled to a rent credit equal to the rent on a one-bedroom apartment. An affiliate of 334th Place owns several modest detached dwellings next door to Parkway. Several Parkway employees with large families have moved next door. Parkway subsidized their rent by the amount of the credit they would have received at Parkway. Meanwhile Parkway rented out their vacated units, so there was no net monetary difference to the Partnership. | 2013 | $45,329 | Tort limitations period/ estoppel/ business judgment rule |
| Legal Fees | Fees paid to 334th Place's affiliate in exchange for legal work done on behalf of the Partnership. | 2015 | $61,444 | Authorized by LPA/business judgment rule |
| Extermination Fees | Fees paid to 334th Place's affiliate in exchange for heat treatment of bed bug affected units (an approach recommended by HUD) at the Parkway Apartments. | 2015 | $7,200 | Authorized by LPA/business judgment rule |

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 15

| | | | | |
|---|---|---|---|---|
| Engineering Survey Fees | Fees paid to 334th Place's affiliate in exchange for services in overseeing the installation of a phase inverter to connect the motor of a garbage compactor to the property's electrical service. | 2014 | $8,400 | Authorized by LPA/business judgment rule |
| Uncategorized /Misc. Payments to GP | These alleged fees were never identified in AMTAX 169's pleadings or otherwise explained by AMTAX 169. | 2003 | $50,973 | Contract and tort limitations periods/ estoppel/ business judgment rule |
| Asset Management Fee to Alden Torch Underpaid | These fees were never identified in AMTAX 169's pleadings and were tacked on to damages for the first time in the schedule submitted by AMTAX 169 after a Rule 30(b)(6) deposition.  Dkt. # 48-1.  Alden Torch receives its own fee from Parkway for its role in managing the LP's passive investment.  334th Place simply paid the invoices that Alden Torch sent for these fees.  Alden Torch now believes the invoices it created and sent were not high enough. | 2002 | $31,401 | Contract and tort limitations periods/ estoppel/ business judgment rule |

### 1. The Vast Majority of AMTAX 169's Fee-Related "Damages" are Barred by Statutes of Limitations

To the extent AMTAX 169's claims sound in alleged breaches of the LPA, the claims are governed by Washington's six-year statute of limitations.  *See* RCW 4.16.040 (six-year limitation for the commencement of actions "upon a contract in writing, or liability express or implied arising out of a written agreement").  In Washington, a contract action accrues on breach and the discovery rule does not apply except in limited circumstances not present here.  *1000 Va. Ltd. P'ship v. Vertecs Corp.,* 158 Wn.2d 566, 576, 146 P.3d 423 (2006).  Nor does Washington law recognize the concept of a "continuing breach," *i.e.*, a "breach of contract that endures for a

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 16

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

99645158.1 0009368-00002

1    considerable time or is repeated at short intervals" as a basis to extend the applicable limitations

2    period. *Schreiner Farms, Inc. v. Am. Tower, Inc.*, 173 Wn. App. 154, 161, 293 P.3d 407 (2013)

3    (citation omitted).  Thus, for the purposes of AMTAX 169's claimed breaches of the LPA, the

4    claim accrues on the date that any breach began: "subsequent damages [are] not severable from

5    it." *Id.*

6          Tort claims, such as conversion, breach of fiduciary duty, or unjust enrichment have a

7    three-year statute of limitations.  RCW 4.16.080; *Hudson v. Condon*, 101 Wn. App. 866, 873, 6

8    P.3d 615 (2000).  Where a claim for breach of contract is not grounded on a breach of a specific

9    term under the LPA, it is treated as a claim arising under a breach of fiduciary duty theory and

10   the three-year statute of limitations period applies.  *Hudson*, 101 Wn. App. at 873.  Thus, to the

11   extent any of AMTAX 169's damages claims sound in tort, *e.g.*, the breach of fiduciary duty

12   claim, the conversion claim, or the unjust enrichment claim, the applicable statute of limitations

13   is three years.[4]

14         Under these principles, the only categories of fees that could serve as a basis for a

15   potentially viable damages claim are those in which fees were first incurred either after July 2,

16   2012 (for LPA breaches) or after July 2, 2015 (for tort claims).  Thus, any damages purportedly

17   incurred in connection with the first seven and last two categories of fees in the chart above are

18   barred as a matter of law whether asserted under a contract or tort theory of liability.  This

19

20

---

21         [4] The unjust enrichment claim should be dismissed for the independent reason that the
     LPA governs the relationship between the parties.  "A party to a valid express contract is bound
22   by the provisions of that contract, and may not disregard the same and bring an action on an
     implied contract relating to the same matter, in contravention of the express contract." *Chandler*
23   *v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604, 137 P.2d 97 (1943); *see also MacDonald v.*
     *Hayner*, 43 Wn. App. 81, 86, 715 P.2d 519 (1986) ("The courts will not allow a claim for unjust
24   enrichment in contravention of a provision in a valid express contract."); *Mountain Pac.*
     *Chapter, Associated Gen. Contractors of Am., Inc. v. State*, 10 Wn. App. 406, 409, 518 P.2d 212
25   (1974) (same).

26

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 17

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

1   eliminates as time barred $1,634,456 of AMTAX 169's purported damages.  Pritchard Decl. Ex.

2   L.

3       The remaining fees pertain to employee housing, legal, extermination, and engineering

4   surveys.  With respect to the employee housing issue, there are no damages to Parkway or

5   AMTAX at all because there is no net monetary difference associated with the decision to permit

6   certain employees to live with their families in adjacent housing.  *Id.* Ex. B at 67-68.  But even if

7   there were some sort of cognizable claim for damages with respect to this issue, AMTAX 169

8   has not pointed to any provision of the LPA that this arrangement would purportedly violate.  As

9   a result, it can only be construed as a tort claim under Washington law and is barred by the three-

10  year statute of limitations.  *See Hudson*, 101 Wn. App. at 873.

11      AMTAX 169's remaining alleged damages for legal fees, extermination fees, and

12  engineering survey fees were all incurred by an affiliate of 334th Place: Catherine Tamaro's

13  husband, who is a licensed Washington attorney and a licensed Washington professional

14  engineer.  Pritchard Decl. Ex. B at 62-63.  The aggregate amount of those fees charged to

15  Parkway was $77,044.  There are no allegations by AMTAX 169 that this work did not need to

16  be completed—unless AMTAX takes the position that Parkway tenants should live with bed

17  bugs in order to maximize its profits.  Instead, AMTAX simply asserts that because the work was

18  done by an affiliate it was in violation of the LPA.  This is wrong as a matter of law.  The LPA

19  specifically authorizes the hiring of affiliates under Sections 2.4(v), 2.4(x), and 7.4(A), provided

20  the transaction is "not less favorable to the Partnership that would be arrived at by unaffiliated

21  parties dealing at arms length."  *Id.* Ex. A at § 2.4(v).  AMTAX 169 has no evidence that the

22  rates charged for this work were anything other than market or that Ms. Tamaro's husband was

23  not qualified to do the work that he did.  The claims should be dismissed.

24      **2.  All of AMTAX 169's Claims Are Barred by Estoppel**

25      Under Washington law, "'a party should be held to a representation made or position

26  assumed where inequitable consequences would otherwise result to another party who has

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 18

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone* 206.624.0900

1   justifiably and in good faith relied thereon.'" *Kramarevcky v. Dep't of Soc. & Health Svcs.*, 122

2   Wn.2d 738, 863 P.2d 535 (1993) (*quoting Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 81,

3   530 P.2d 298 (1975)).  Equitable estoppel has three elements:  (1) an admission, statement, or act

4   inconsistent with a later-asserted claim; (2) action by another person in reliance upon that

5   admission, statement, or act; and (3) injury to the relying person from allowing the first party to

6   contradict or repudiate the earlier admission, statement, or act.  *Bd. of Regents of the Univ. of*

7   *Wash. v. City of Seattle*, 108 Wn.2d 545, 551 741 P.2d 11 (1987); *see also Harbor Air Svc., Inc.*

8   *v. Dep't of Revenue*, 88 Wn.2d 359, 366-67, 560 P.2d 1145 (1977) (same).  "[E]stoppel may

9   arise . . . from silence or inaction as well as from words or actions."  *Bd. of Regents of the Univ.*

10  *of Wash.*, 108 Wn.2d at 553-54.

11       As an initial matter, all of the counterclaims in this case were based on Alden Torch's

12  accountants' 2018 review of Parkway's annual audited financial statements dating back to 2002.

13  Pritchard Decl. Ex. C at 72, 102.  All of the fees at issue were disclosed in those audits, and

14  AMTAX 169 previously reviewed and approved the audits every year.  *Id.* at 24, 92-95, 102.

15  Thus, every year for 16 years AMTAX 169 made an admission or statement or performed an act

16  that is flatly inconsistent with the litigation-driven position it adopted in 2018.  If that were not

17  enough, the record is also replete with examples of Gary Newbold and Chris Blake both having

18  approved many of the specific fees at issue, the capital repairs that Parkway required, and the

19  rental rates set by the GP.  *E.g.*, *id.* Ex. R (Gary Newbold stating "[t]he GP has been supporting

20  the project by deferring management fee and payroll through her affiliated management

21  company"); *id.* Ex. S (Chris Blake stating that the GP has "significant advances" towards general

22  deficits as disclosed in Parkway's audit statements).   In 2013 Mr. Newbold questioned Catherine

23  Tamaro on why operating expenses were increasing and why the rental rates were not at

24  maximum LIHTC levels.  *Id.* Ex. T.  After Ms. Tamaro responded to each question, Mr.

25  Newbold wrote "Understood" in response to each issue.  *Id.*  Since Mr. Newbold left Alden

26

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 19

1   Torch in early 2016, the new asset manager has never questioned a single fee, expense, or rental

2   rate.  *Id.* Ex. B at 230.

3        By way of further example, in the spring of 2014 Mr. Newbold and Mr. Blake made

4   Parkway's audit review a "priority" in connection with the potential voluntary buyout of the LPs

5   interest.  *Id.* Ex. U.  They even tasked the same Alden Torch CPA, John Thomas, with

6   conducting the review.  *Id.*; *see also id.* Ex. C at 153.  On April 22, 2014, Ms. Tamaro responded

7   to specific pointed questions from Mr. Newbold after this audit review, questions regarding the

8   GP's management fee, repair supervision fee, tenant file review fees, the employee housing

9   issue, and managing general partner fees.  *Id.* Ex. H.[5]  Ms. Tamaro addressed each of these

10  questions and provided a full explanation and supporting documentation.  *Id.*  Mr. Blake was

11  copied on those communications.  Approximately one week later, Mr. Blake responded to Ms.

12  Tamaro's explanatory email, writing "Hi Catherine, I think we are on the same page with respect

13  to the audit and can move forward with discussion of selling the LP interest."  *Id.* Ex. I.

14       Several months after the voluntary buyout was abandoned and the parties pursued a loan

15  refinance, AMTAX 169 reported to Morgan Stanley, stating that 334th Place was ***not*** in default

16  and was instead advancing money to Parkway well in excess of its obligation to fund some

17  operating deficits.  *Id.* Ex. G  (compare page 6, stating that the GP's "Operating Deficit

18  Guaranty" or "ODG" was $600,000, with page 9, stating that 334th Place had funded $1,097,480

19  of operating deficits).  Now, Mr. Blake and AMTAX 169 claim that the very same categories of

20  fees and the issues addressed in 2014 are "major defaults" that should prevent a buyout of the

21  LP's interest in 2018.  *Id.* Ex. C at 54, 56, and 80.  This kind of gamesmanship is exactly why the

22  estoppel doctrine exists.

23  _____

24       [5] Mr. Newbold even copied and pasted the specific sections of the audit that he was
    questioning, just as Mr. Blake did in December 2017 when he asked the Alden Torch forensic
25  accountant to find "questionable activity" by the GP.  *Compare* Pritchard Decl. Ex. H *with* Ex.
    V.
26

1    The last two elements necessary to find an estoppel are also present.  334th Place relied

2    upon AMTAX 169's approvals of the audit statements and the fees disclosed therein, and has

3    continued to advance significant sums to Parkway throughout the years, deferring payment on

4    almost all of the fees that AMTAX 169 is now challenging.  *Id.* ¶¶ 5-6 and Ex. D.  334th Place

5    did so to maintain Parkway's financial stability and regulatory compliance—and AMTAX's

6    entitlement to tax credits—with the expectation that those advances and fees would ultimately be

7    paid.  *Id.* Ex. G at 7 ("The GP has been supporting the deficit by deferring payroll from the

8    affiliated management company.").  In 2018, however, AMTAX 169 decided to hold up the

9    contractually mandated buyout process unless 334th Place cancelled $2.7 million in accounts

10   payable, effectively attempting to erase all of the advances and fees that had accrued and were

11   owed to 334th Place over the past 15 years, according to the financial statements AMTAX itself

12   repeatedly approved.  *Id.* Ex. N.  334th Place would be severely injured if AMTAX 169 is now

13   permitted to repudiate its earlier approvals.  Estoppel should apply to bar all of AMTAX 169's

14   counterclaims.

15           **3.   The Business Judgment Rule Protects the Managerial Decisions Made
                    by 334th Place**

16           Parkway's LPA states that "the General Partner shall have the exclusive right to manage

17   the business of the Partnership.  No Limited Partner . . . shall (i) have any authority or right to act

18   for or bind the Partnership, or (ii) except as required by law, participate in or have any control

19   over the Partnership business."  Pritchard Decl. Ex. A at § 7.3.   This provision entrusts 334th

20   Place with the exclusive right to make all of the management decisions, including setting rents

21   that AMTAX 169 now second guesses through its counterclaims. *See, e.g.*, *id*. Ex. B  at 243

22   ("When we are raising rents … one factor I look at is how much I am raising that rent from what

23   they are paying now.  … [I]f I raise their rents 30 percent, a lot of them would move out and now

24   I have a vacant complex. But actually they don't move out right away; they stay and stop paying

25   their rent and I have to evict them, which is long and costly. … So with that in mind, there is a

26

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 21

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone* 206.624.0900

1  balance."); *id.* at 89.  Because setting rents and other management decisions were 334th Place's

2  alone to make, the business judgment rule insulates it from any liability for mismanagement.

3      "The 'business judgment rule' in Washington immunizes" a party for "management

4  decisions, which were undertaken within the power and authority of management . . . and which

5  were made in good faith." *Para-Med. Leasing, Inc. v. Hangen*, 48 Wn. App. 389, 393, 739 P.2d

6  717 (1987) (citation omitted).  Thus, Washington courts will not second guess or interfere with

7  managerial decisions, including the payment of management fees or other fringe benefits, unless

8  the accuser can prove the decisions were made in bad faith or were the product of fraud.  *Nursing*

9  *Home Bldg. Corp. v. DeHart*, 13 Wn. App. 489, 500, 535 P.2d 137 (1975).  That is, mere

10  negligence is not enough to disturb what is otherwise a valid business judgment.  *See Duffy v.*

11  *Piazza Constr., Inc.*, 62 Wn. App. 19, 22, 815 P.2d 267 (1991) ("[W]e hold as a matter of law

12  that negligence in the management of the affairs of a general partnership or joint venture does

13  not create any right of action against that partner by other members of the partnership.").

14      AMTAX 169 has no evidence that any of the fees at issue were incurred in bad faith or

15  were the product of a fraud.  In fact, AMTAX 169 developed its claims regarding "unauthorized

16  fees" by scrutinizing audits in which all of those fees were fully disclosed by the GP.  Pritchard

17  Decl. Ex. C at 98 (GP is responsible for preparing financials for audits).  There is nothing in the

18  record to suggest that 334th Place ever acted with intent to conceal anything or enrich itself at

19  the expense of the Partnership.  *See J & J Celcom v. AT & T Wireless Servs. Inc.*, 162 Wn.2d

20  102, 113, 169 P.3d 823 (2007) (no breach of fiduciary duty in connection with affiliate

21  transactions when partner acts in good faith on full disclosure of material information).  Far from

22  it, as recorded in every annual Parkway audit, 334th Place has advanced millions to the

23  Partnership and deferred payment on fees owed to it in order to keep Parkway a going concern,

24  with AMTAX's full knowledge and to its benefit.  Pritchard Decl. Exs. D, G, R, S.  As a result,

25  the business judgment rule applies to all of the fees incurred and AMTAX's counterclaims

26  should be dismissed.

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 22

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

1    With respect to the non-fee-related theories of liability, Chris Blake admitted that

2    AMTAX 169's issues with Parkway's operating expenses and rental rates are nothing more than

3    the LP's opinion on how to run the property "optimally."  *Id.* Ex. C at 111.  Whether or not a

4    business decision made by the GP is "optimal" is not the standard for finding a breach of

5    fiduciary duty and rebutting the business judgment rule.  In fact, the business judgment rule is

6    designed to weed out such claims, when a passive self-interested investor thinks in hindsight it

7    knows was is best for the Partnership and oversteps its bounds by bringing a lawsuit attempting

8    to enforce its view of how the Partnership should be operated.  The LPA specifically states that

9    the LP has no authority to engage in managerial second-guessing.

10   Incidentally, AMTAX 169 also happens to be distorting what is classified as an

11   "operating expense" when asserting its claims of inflated expenses.  Operating expenses at

12   Parkway have in fact held steady for the past six years, the entire time that Alden Torch has been

13   involved in in the Partnership.  AMTAX 169 is including capital improvement costs of roofing,

14   balconies, windows, doors, and siding (all of which were repairs required by HUD and disclosed

15   to AMTAX) as "operating expenses" simply to gin up a claim.  Capital improvements are not

16   included in the normal definition of operating expenses.  *Id.* Ex. B at 183, 267.  But even if

17   operating expenses had increased in recent years, there is again no basis to conclude that this

18   increase was the result of bad faith or a fraud by 334th Place.  Instead, AMTAX 169 is simply

19   taking issue with managerial decisions that the GP, not the LP, has the sole right to make.  The

20   business judgment rule applies to insulate 334th Place from any liability on this theory.

21   AMTAX 169's issues regarding the rental rates are based on nothing other than naked

22   self-interest masquerading as what is "best" for Parkway.  Parkway Apartments is a 50-year-old

23   property, located in a federal low-income census tract within a lower-income city in King

24   County.  It cannot command the same rents as those being charged at newer properties in higher-

25   income cities in King County.  *Id.* Ex. B at 254-55 ("Parkway is a complex with a number of

26   complexes around it.  Parkway is the oldest of those complexes. Parkway has to compete on

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 23

**STOEL RIVES** LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1   price as well as the very few amenities that it has . … Parkway has washer and dryers in laundry

2   rooms instead of in the units, which is a big issue with residents.  Parkway has inadequate

3   parking.  Parkway has only two styles of units.  Parkway sits in a high-crime area.").  334th

4   Place, as the GP based in Washington state that has managed the property for 15 years, is in a

5   better position to make this managerial decision than is an asset management firm in Denver,

6   which is precisely why the GP and not the LP was given the exclusive authority to make those

7   decisions on behalf of Parkway.  Again, the business judgment rule applies.

8                                   **IV.      CONCLUSION**

9           For the foregoing reasons, 334th Place requests that the Court enter the attached order

10   providing the following relief:  entering judgment in favor of 334th Place's claim for declaratory

11   relief and specific performance, and dismissing each of AMTAX 169's Parkway-related

12   counterclaims (Counts Six through Eleven in AMTAX's answer and counterclaims).

13

14

15   DATED:  December 28, 2018         */s/ Rita V. Latsinova*
                                        David R. Goodnight, WSBA No. 20286
16                                      Rita V. Latsinova, WSBA No. 24447
                                        J. Scott Pritchard, WSBA No. 50761
17                                      600 University Street, Suite 3600
                                        Seattle, WA  98101
18                                      Phone:  (206) 624-0900
                                        Facsimile:  (206) 386-7500
19                                      Email:  david.goodnight@stoel.com
                                        Email:  rita.latsinova@stoel.com
20                                      Email:  scott.pritchard@stoel.com

21                                      Attorneys for Plaintiff Hidden Hills
                                        Management LLC and 334th Place 2001, LLC

22

23

24

25

26

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 24

**STOEL RIVES** LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on the 28th day of December, 2018, I electronically filed the

3  foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4  such filing to the following participants:

5    • **David J. Burman**
        dburman@perkinscoie.com,docketsea@perkinscoie.com

6    • **Christopher G Caldwell**
7       ccaldwell@bsfllp.com,BSF_LAD_Records@BSFLLP.com

8    • **David R Goodnight**
        DRGOODNIGHT@STOEL.COM,SEA_PS@stoel.com,docketclerk@stoel.com,jamie.do
9       mbek@stoel.com

10   • **Margarita V. Latsinova**
        rvlatsinova@stoel.com,sea_ps@stoel.com,docketclerk@stoel.com,sherry.toves@stoel.co
11      m

12   • **Steven Douglas Merriman**
        smerriman@perkinscoie.com,docketsea@perkinscoie.com,JTanzy@perkinscoie.com

13   • **Eric S Pettit**
        epettit@bsfllp.com
14
15   • **J. Scott Pritchard**
        scott.pritchard@stoel.com,sea_ps@stoel.com,docketclerk@stoel.com,eileen.mccarty@st
16      oel.com

17      Dated December 28, 2018.

18

19                                    *s/ Eileen McCarty*

20                                    Eileen McCarty
                                      Practice Assistant
21                                    Stoel Rives LLP
                                      eileen.mccarty@stoel.com
22

23

24

25

26

MOTION FOR SUMMARY JUDGMENT
(3:17-cv-06048-RBL) - 25

STOEL RIVES LLP
ATTORNEYS
600 University St., Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*