UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HIDDEN HILLS MANAGEMENT, LLC, et al.,

Plaintiffs,

v.

AMTAX HOLDINGS 114, LLC, et al.,

Defendants.

CASE NO. C17-6048RBL

ORDER ON MOTIONS FOR ATTORNEYS' FEES

THIS MATTER is before the Court on Defendant Amtax's Motion[1] for attorneys' fees (from HHM) under the Environmental Indemnity in the Hidden Hills dispute [Dkt. # 120], and

---

[1] Both parties have since appealed this Court's judgment. [Dkt. #s 140 & 141]. An appeal usually curtails the Court's ability to grant a post-appeal motion, absent a limited remand from the Ninth Circuit. *See* Fed. R. Civ. P. 62.1, Fed. R. App. P. 12.1 (the Court may defer the motion, deny the motion, or "state either that it would grant the motion if the court of appeals remands for that purpose, or that the motion raises a substantial issue.").

However, the district court "still has jurisdiction, even after appeal is filed, but before the appeals court has ruled, to grant attorneys' fees." *Cazares v. Barber*, 959 F.2d 753, 755–56 (9th Cir. 1992) (citing *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983); *see also IDS Prop. & Cas. Ins. Co. v. Fellows*, No. C15-2031 TSZ, 2017 WL 4122565, at *1 (W.D. Wash. Sept. 15, 2017). This policy prevents piecemeal appeals, confusion, and inefficiency. *Masalosalo*, 718 F.2d at 956–57. The Court will rule on the attorneys' fees motions notwithstanding the appeal, and if the Ninth Circuit determines that the case should be remanded for entry of an order, the Court states that this is the Order it would enter.

ORDER ON MOTIONS FOR ATTORNEYS' FEES
- 1

on Plaintiff 334th Place's Motion for attorneys' fees (from Amtax) in connection with the re-convened deposition of Christopher Blake in the Parkway dispute [Dkt. # 123].

The Hidden Hills Environmental Indemnity agreement was discussed at length in this Court's Order on the parties' competing motions for summary judgment [Dkt. # 89]. Tamaro argued that Hidden Hills' appraised value should be discounted by the potential cost of remediating Asarco-related arsenic contamination on the site, and she doggedly sought to make that point with the appraisers and the Court. The Court rejected her argument for three reasons—one, she improperly interfered with the "independent" nature of the third appraisal; two, the environmental clean-up cost she demanded as a discount was never going to be incurred; and three, in any event, the parties had long since agreed that HHM would indemnify its Limited Partner for the cost of any actual environmental clean-up.

The hypothetical cost of the clean-up was therefore not properly deducted from the fair market value for purposes of determining the option price. After that Order, the Environmental Indemnity agreement was no longer an issue, except for the fact it provides for fees and costs to the party prevailing in any litigation under it: "in the event of litigation concerning this agreement, the prevailing party shall be entitled to collect from the losing party all attorneys' fees and costs including those on appeal." Neither the Hidden Hills nor the Parkway Partnership Agreements included an attorneys' fee provision.

Amtax seeks **$443,752.50** in fees[2] (and **$169,357.68** in costs, mostly fees for expert Anderson) that it claims it incurred in litigating and prevailing on claims related to the

---

[2] Amtax initially sought $787,048.50 in fees (and the same $169,357.68 in costs). In Reply to HHM's objections, Amtax revised its requested rates downward (to a maximum of $580/hour, consistent with HHM's attorneys' top rate), and "scaled" the other attorneys' rates to that maximum. It also reduced the number of hours it claimed were spent on the environmental indemnity. *See* Dkt. #s 133 and 134. HHM argues that Amtax's segregation effort is both too late and not enough.

Environmental Indemnity, from the date the case was filed (November 14, 2017) to the date the Court sided with Amtax on the appraisal issues on summary judgment (May 2, 2019). It argues that the environmental contamination at Hidden Hills predominated in that (larger) portion of the overall litigation (nine of thirteen depositions, for example, were on the Hidden Hills portion of the case). Amtax correctly argues that it prevailed on its claim that HHM was required to indemnify it for the cost of any environmental cleanup. Amtax claims it has excised all the time Perkins Coie spent on the case, and all the time its attorneys spent on the Parkway dispute. It claims the remainder relates to the environmental indemnity.

HHM argues that Amtax improperly seeks to recover fees under the environmental indemnity agreement for work that was wholly unrelated to it (or only tangentially related to it), seeking to "shoehorn" the bulk of its fees under the environmental indemnity. It points out that while Amtax does not seek fees for Perkins Coie's work, it does claim $125,000 in fees incurred even before Amtax asserted its "environmental indemnity counterclaim." It also seeks $159,000 in expert costs under the agreement, even though it never presented expert testimony[3] on that topic. HHM argues that its review of the bills reveals that only $17,000 in fees was spent directly on the indemnification agreement and Amtax's claim under it.

The second fee dispute is minor, particularly in the context of this case. A year ago, the Court ordered that Amtax should pay the fees associated with Chris Blake's reconvened Rule 30(b)(6) deposition in the Parkway dispute [Dkt. # 51]. 334th seeks $27,054.91 in fees and costs for that deposition. Amtax argues that 334th's billing records are not detailed enough to ascertain whether all the entries are related to Blake's deposition on the Parkway dispute (recoverable) and those incurred in preparing to defend Blake's Hidden Hills deposition, taken the same day.

---

[3]

Amtax points out it already paid $7500 for the cost of the first deposition. It seeks a 25% discount to reflect fees and costs that were attributable to the Hidden Hills portion of Blake's deposition. 334th insists that it already excluded the time spent preparing and taking Blake's deposition in connection with the Hidden Hills dispute.

334th's request for $27,000 for one deposition to some extent undercuts its claim that Amtax only spent $17,000 litigating the environmental indemnity portion of the Hidden Hills dispute. But it accurately points out that Amtax had three times as many lawyers working on the case, at much higher rates, than HHM and 334th did. It seeks a steep discount of the fees related to the environmental indemnity.

**A. Attorneys' Fee Standard.**

The first step in determining reasonable fees is to calculate the lodestar figure, by taking the number of hours reasonably expended on the litigation and multiplying it by the appropriate hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court should exclude overstaffed, redundant, or unnecessary time. *Id.* at 434. The Court must also consider the extent of Plaintiffs' success, as that is a "crucial factor" in determining an appropriate award. *Id.* at 440.

After determining the lodestar figure, the Court should then determine whether to adjust the lodestar figure up or down, based on factors not subsumed in the lodestar figure. These factors[4] were adopted in this Circuit by *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70

---

[4] The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).

(9th Cir. 1975) *cert. denied*, 425 U.S. 951 (1976). The applicability of the sixth (whether the fee is fixed or contingent) and tenth (the "undesirability " of the case) *Kerr* factors is doubtful after *City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993)(the fixed or contingent nature of fee is not to be considered). Additionally, numerous courts have subsequently held that the bulk of these factors are subsumed in the lodestar calculation. *See, for example, Blum v. Stenson*, 465 U.S. 886, 898-900 (1984).

In any event, the lodestar calculation is presumptively reasonable, and adjustments (up or down) are appropriate only in rare and exceptional cases. *Id.*, *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987).

**B. Reasonable Rate.**

Amtax's attorneys (like HHM's) did excellent work on this case, as the Court noted and as Amtax reiterates. Even the revised rates Amtax seeks are high for this market (particularly for associates and paralegals), but HHM's primary objections to the fees are based on its claim that Amtax has not demonstrated that it spent the hours it seeks litigating the environmental indemnity. Indeed, Amtax downwardly revised its rate request at HHM's suggestion. Amtax's revised rates are reasonable for this case.

HHM's requested rates on the second dispute are also reasonable.

**C. Reasonable Hours.**

HHM's primary objection to Amtax's fee request is that most of the time was not spent on the environmental liability issue. Indeed, it argues that both the failure to segregate fees and the fact they are "outrageously excessive" should result in an outright denial of fees altogether. *See* for example *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 119 Wn. App. 665, 690 (2004).

HHM argues that none of the discovery related to the environmental indemnity (and that Amtax itself successfully advocated for the court to determine the effect of that indemnity as a matter of law, without reference to any extrinsic evidence). Instead, it claims, the bulk of the Hidden Hills discovery went to the propriety of Tamaro's conduct during the appraisal process, and then to whether she should be removed based on her conduct there and, globally, over the history of (both) partnership(s). It argues that very little discovery was actually aimed at the environmental indemnity issue and that the bulk of the deponents (Blake, Noble, Henderson, Hutsell, Carp and Flint) either knew nothing about the environmental indemnity or were not asked about it, at all. It points out that only 8 pages of Tamaro's 509-page deposition relate to the environmental indemnity agreement. HHM argues that Anderson's expert opinion on the environmental indemnity was almost literally that "the text of the agreement said what it said." It argues, persuasively, that the expert fees (and the attorneys' fees for preparing to depose HHM's expert, Barnes) do not relate to the environmental indemnity and are not recoverable. Finally, HHM emphasizes that Amtax overstates the level of success it achieved. Amtax's primary goal was to remove Tamaro as the general of both partnerships, and it failed on both of those claims, at summary judgement and at trial. (It did convincingly demonstrate that the third appraisal was not independent, final or binding, but the result of that was a new appraisal, not Tamaro's removal.)

Amtax responds that in Washington, a fee-shifting agreement can broadly apply to fees incurred that were not "on the contract," and that courts here routinely award fees on non-contract claims where the contract is central to the claim of the defense. *Citing Moseley v CitiMortgage, Inc.*, 2011 WL 6151414 at *3 (W.D. Wash. Dec. 12, 2011), *aff'd* 564 Fed. App's 300 (9th Cir. 2004). It argues that the case HHM commenced was always "concerned with" the

cost of the environmental contamination at Hidden Hills, and that the agreement allocating that cost to HHM was central to the resolution of the case.

As an initial matter, the Court will not award fees Amtax incurred prior to asserting its environmental indemnity counterclaim (April 30, 2018) [Dkt. # 24]. It is undeniable that some attorney effort was expended prior to the actual filing of that claim but it was not actually litigated until it was an issue in the case. Amtax's revised fee request (Column "K" of the Johnson spreadsheet, Dkt. # 134-1) includes a request for **$104,492** in fees for environmental indemnity related work during that period. The Court will deduct those fees from the requested amount.

This leaves Amtax's remaining request for **$339,260.50** in fees incurred from the date of its environmental indemnity counterclaim through the date it prevailed on that claim on summary judgment. Amtax has unilaterally and dramatically reduced its initial request, but HHM argues it has not addressed HHM's objections, or legitimate questions about how much time was actua+lly spent on the environmental indemnity portion of the Hidden Hills portion of the case.

Amtax prevailed on its arguments about fatal flaws in the appraisal process, and whether the hypothetical cost of a hypothetical clean-up of Hidden Hills should affect its value, particularly in light of the fact that the General would have to indemnify the Limited if any such cost was actually incurred. It did not prevail on its efforts to remove Tamaro as the general partner of the Hidden Hills partnership.

The Court determined on summary judgment that the third appraisal was not final, binding, or independent, because Tamaro improperly interfered with it. She convinced the appraiser to discount the fair market value by 100% of a made up clean up estimate that itself had a 50% contingency built in. The clean-up cost was speculative, as was the need for any clean

up, at all. And, even in the (very unlikely) event that some clean-up was required or performed, HHM would have had to pay for it anyway.

Amtax would have succeeded in overturning the third appraisal even without the environmental indemnity. But it cannot be fairly said that Amtax should have known that, or that the Environmental Indemnity agreement did not play any role in the summary judgment. The fact that HHM had agreed to indemnify Amtax for environmental contamination at the site played a significant role in the resolution of the Hidden Hills appraisal dispute, even if it a secondary one.

The Court is satisfied that the revised hours were actually and reasonably incurred in connection with the environmental indemnity. It will award the requested fees (but not the expert costs, discussed below) incurred in successfully arguing that the environmental indemnity agreement meant that the cost of any clean up should not be deducted from Hidden Hill's fair market value for purposes of the General Partner's purchase option. Those fees are **$339,260.50.** This is the lodestar amount for the work performed between the date of the counterclaim and the summary judgment victory. Amtax has discounted both its rates and its hours, and the Court has already broadly denied some of the requested fees. No further adjustment to this fee is warranted.

On the Blake fee dispute, the Court will discount 334th's request by the requested 25%, for the reasons articulated in Amtax's opposition. This results in a fee award of **$20,291.18** to 334th.

**D. Costs.**

Finally, Amtax argues that it was forced to retain an appraisal expert (Anderson) because HHM first retained a similar expert (Barnes) to opine that the appraised value should include a discount for the cost of cleaning up the contamination. But HHM accurately points out that Barnes never opined about the environmental indemnity (even if Anderson opined that he should

have). And Anderson himself opined only that the text of the agreement meant what it said. Amtax has not adequately explained how this $159,000 fee was reasonably incurred in litigating the environmental indemnity.

The cost of Anderson's expert opinion was not reasonably incurred for any opinion or evidence on the environmental indemnity question. Amtax itself correctly argued that extrinsic evidence was not required to glean what it meant, and the only extrinsic evidence the Court's Order even mentioned was HHM's attorneys' description of its genesis—which in the Court's view rather plainly supported Amtax's version of its import. This requested cost is **DENIED**. The remainder of the costs requested ($10,295.94) are **AWARDED**.

IT IS SO ORDERED.

Dated this 8th day of November, 2019.

Ronald B. Leighton
United States District Judge